**BEFORE THE NUCLEAR CLAIMS TRIBUNAL**

**REPUBLIC OF THE MARSHALL ISLANDS**

| | | |
|---|---|---|
| In the Matter of<br>the People of Enewetak, et al.,<br>Claimants for Compensation | ) | NCT No. 23-0902 |

## ORDER

On April 13, 2000, the Tribunal issued its DECISION AND ORDER in this claim, awarding damages in the amount of $324,949,311. In that decision, the Tribunal ordered a hearing be set for post judgment proceedings. On April 26, 2000, claimants filed a MOTION TO AMEND MEMORANDUM OF DECISION AND ORDER, requesting the inclusion of certain rehabilitation costs. The Defender of the Fund did not oppose this MOTION and on May 5, 2000, the Tribunal issued an ORDER amending its April 13 DECISION to include an additional $16.1 million for soil rehabilitation and revegetation. On May 26, 2000, a hearing was held and a briefing schedule established for examination of the outstanding issues of post-judgment interest and attorneys fees and costs. The parties filed their respective briefs in a timely manner and on June 6, 2000 filed a stipulation dealing with future loss of use, prior compensation, and prejudgment interest. At the Tribunal's request, the parties filed on July 21, 2000, a REVISED STIPULATION RE FUTURE LOSS OF USE, PRIOR COMPENSATION AND INTEREST.

Stipulation

The parties offered a REVISED STIPULATION RE FUTURE LOSS OF USE, PRIOR COMPENSATION, AND INTEREST, filed July 21, 2000 to address certain issues in the Tribunal's decision. The stipulation as to future loss of use incorporates a calculation which utilizes total of 1104.16 acres as opposed to the 1305.78 acres employed in the appraisal initially submitted to the

Tribunal. This change reflects the parties' agreement as to the proper acreage which will be denied to claimants' use in the future. The prior compensation portion of the stipulation reflects the inclusion of certain annual payments under the Section 177 Agreement ($3.25 million received by claimants in 1997, 1998, and 1999) which were not included in the calculations adopted in the Tribunal's April, 2000 DECISION. In the April 2000 DECISION, the Tribunal determined the value of the future loss of use (adjusted for Section 177 payments) to be $50,154,811. Based upon the STIPULATION, this value would change to $47,001,908.[1] The bases of the stipulation are reasonable and will be adopted.

The final portion of the STIPULATION relates to pre-judgment interest, from the date of the loss of use calculation, January 24, 1997, to the date of entry of the decision, April 13, 2000. The rate of interest agreed to by the parties was 7 percent. The amount of interest to which the parties stipulated was $47,681,122. The inclusion of interest to the date of the decision is appropriate and consistent with the methodology utilized by the parties in assessing the loss of use to claimants.

Attorneys Fees

This issue was extensively briefed by the parties in 1995. The Tribunal's ORDER of December 7, 1995 addressed the matters raised in claimant's MOTION for attorneys fees and costs filed June 19, 2000. The December 1995 ORDER allowed the Claimants to introduce evidence relating to attorneys fees incurred by the People of Enewetak in the prosecution of their claims against the U.S. for damages from the U.S. nuclear testing program in the Pacific before the U.S. Court of Claims prior to the effective date of the Compact of Free Association. Claimants have been unable to develop evidence to support this part of the claim in the time since that ORDER and the Tribunal does not believe that additional time will reasonably lead to the discovery of additional evidence supporting this aspect of the claim. The Tribunal further declines the invitation to award attorneys fees for attorneys fees before the Tribunal prior since its inception and prior to the amendment to the Nuclear Claims Tribunal Act by P.L. 1993-56,

[1]Present value of future rents ($60,387,552) less present value of future Section 177 payments ($13,385,644) as of January 1997.

which removed the authority of the Tribunal to award attorneys fees.

Post-Judgment Interest

It seems clear that were this a determination of just compensation in a taking action against a governmental body, post judgment interest would be awarded. However, as noted in the Tribunal's DECISION AND ORDER of April 13, 2000, while principles of just compensation may be referenced in determining what is necessary to make claimants whole, this is not an eminent domain proceeding. "Neither the U.S. nor RMI government is a party to this action, and consequently certain elements in a determination of just compensation are not present." (MEMORANDUM OF DECISION AND ORDER, April 13, 2000, p. 3)

The Tribunal, in making its award of damages, has evaluated the harm suffered by claimants and issued an award. The funds available for payment of that award are far short of the amount awarded. Assuming the existing compensation framework, payment of award would be made over a period of years from the annual proceeds of the Section 177 Fund. Even under the most optimistic of scenarios, with the funds currently available, full payment of the award would take over 100 years. Unlike a just compensation case where the award may be enforced against a governmental entity, the Tribunal has a limited fund and an award of interest could arguably only dilute further the funds available for payment.

An award of interest in this case could be seen to work unfairly toward personal injury award recipients to whom interest is not awarded. Because of the structure of the funding mechanism, the Tribunal is forced to make pro rated payments of awards from the annual proceeds of the Fund. If post judgment interest were to be a component of these payments, the administrative burden of constantly recalculating unpaid awards would be significant.

Nonetheless, it is clear that whatever the value of the award, it will decline over time as inflation takes its toll. In the absence of post judgment interest, claimants who receive property damage awards at different times will be unequally treated in that the value of the later awards will be greater due to the passage of time and effect of inflation. If funds were available to pay property awards upon their entry,

this would not be a problem. However, the longer it takes to make final payment, the less the actual value of the award. The absence of post judgment interest would have the effect of penalizing claimants who receive an award earlier than those who come later in the process. While it could be argued that personal injury defendants may be unfairly treated if property claimants' awards include a post judgment interest component, there are some significant differences between the personal injury awards and property damage awards.

Property taken by the government without just compensation is subject to constitutional remedies. Personal injuries by the government are not similarly protected. Recipients of personal injury awards from the Tribunal have been the beneficiaries of a statutory presumption which relieves them of the burden of proving their injury was caused in fact by exposure to radiation from the nuclear testing program. The effect of this presumption is to be over inclusive, so that some of those receiving personal injury awards have suffered from injuries which were not in fact caused by the testing program. Property damage claimants, on the other hand, have met a heavier burden of proof in relating their damage to the effects of the testing program. Arguably the absence of post judgment interest is the price of the presumption.

The Defender of the Fund correctly notes that there is no specific statutory authority for including post judgment interest in the award. However, the Nuclear Claims Tribunal Act provides:

> In determining the proper award of compensation, the Tribunal or the Special Tribunal, whichever is the decision maker, shall, in accordance with Section 2 of the Section 177 Agreement, take into account the validity of the claim, any prior compensation made as a result of such claim and such other factors as it may deem appropriate.[2]

In the case of property damage claims, the Tribunal deems the inclusion of post judgment interest to be appropriate in the following manner. It will be applied to the loss of use and restoration portions of the award, but not the hardship portion of the award. The hardship damages, although arguably consequences of the damage to property, are more in the nature of personal injuries and not subject to the same considerations as those damages which are more closely related to a just compensation claim.

---

[2] 42 MIRC §112.

The possible inequities of post judgment interest between personal injury and property damage claimants will be addressed through the payment schedule. The total loss of use damages for past and future loss of use amount to $244,000,000,[3] while the total cost of restoration is $107,810,000.[4]

ORDER

1. The REVISED STIPULATION is accepted and the Tribunal's April 13, 2000 DECISION is AMENDED to reflect future loss of use damages of $47,001,908 rather than $50,154,811 and the addition of prejudgment interest in the amount of $47,681,122.

2. Claimants' MOTION for attorneys fees is DENIED.

3. Claimants' MOTION for post judgment interest is GRANTED as follows: interest in the amount of 7% per year is awarded on the loss of use damages of $244,000,000 and on restoration damages of $107,810,000.

Dated this 3rd day of August , 2000.

/s/Oscar de Brum

Oscar de Brum
CHAIRMAN

/s/Gregory J. Danz

Gregory J. Danz
MEMBER

/s/James Plasman

James Plasman
MEMBER

---

[3] REVISED STIPULATION RE FUTURE LOSS OF USE, PRIOR COMPENSATION, AND INTEREST, filed July 21, 2000, Table 7A-2.

[4] This includes the $91,710,000 awarded in the April 13, 2000 DECISION, and the $16,100,000 from the Tribunal's May 5, 2000 ORDER, amending the April 13 DECISION.