**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ISMAEL JOHN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 06-289L** |
| v. | ) | |
| | ) | **Hon. Christine O.C. Miller** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

# THE UNITED STATES' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

September 18, 2006

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0238

Counsel for The United States

Of Counsel:

KATHRYN A. BLEECKER
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-6288

**TABLE OF CONTENTS**

MOTION TO DISMISS . . . . . . . . . . 1

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS . . . . . . . . . . 1

I. NATURE OF THE CASE . . . . . . . . . . 1

II. STATEMENT OF THE ISSUES . . . . . . . . . . 2

III. STATEMENT OF THE CASE . . . . . . . . . . 3

A. U.S. Control over Enewetak Atoll and the Expulsion and Return of the Enewetak People . . . . . . . . . . 3

B. Political Control over Enewetak and the Compact of Free Association . . . . . . . . . . 5

C. Prior Litigation . . . . . . . . . . 8

D. Proceedings before the Nuclear Claims Tribunal . . . . . . . . . . 9

E. The Changed Circumstances Request and Political Solution . . . . . . . . . . 10

IV. ARGUMENT . . . . . . . . . . 12

A. Introduction . . . . . . . . . . 12

B. Standard of Review . . . . . . . . . . 13

C. This Action Must Be Dismissed for Lack of Jurisdiction Pursuant to the Compact Act and Section 177 Agreement . . . . . . . . . . 14

1. Plaintiffs Cannot Meet Their Burden of Establishing the Court's Subject Matter Jurisdiction . . . . . . . . . . 15

2. Plaintiffs Are Barred by the Doctrine of Res Judicata from Relitigating this Issue . . . . . . . . . . 18

D. This Action Raises a Nonjusticiable Political Question and Must Be Dismissed . . . . . . . . . . 20

1. There Is a Textually Demonstrable Constitutional Commitment of the Issue to a Coordinate Political Department . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

2. It Would Be Impossible for the Court to Independently Resolve the Issues Without Expressing a Lack of Respect Due Coordinate Branches of Government, and Without Potentially Causing Embarrassment from Multifarious Pronouncements by Various Departments on One Question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

E. Plaintiffs' Claims Are Barred by the Statute of Limitations, 28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1. Count I, Unlawful Taking of Enewetak Atoll, Is Barred by the Applicable Statute of Limitations . . . . . . . . . . . 26

2. Plaintiffs' Breach of Implied-in-Fact Contract Claim (Count II) Is Barred by the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

3. Plaintiffs' Claims in Counts III - IV Accrued Upon the Enactment of the Compact of Free Association Act in 1986 and, Therefore, Are Untimely . . . . . . . . . . . . . . . . . 29

F. In the Alternative, Plaintiffs Fail To State a Claim in Counts III through VI upon which Relief May Be Granted . . . . . . . . . . . . . . . . . . . 32

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## TABLE OF AUTHORITIES

### CASES

Adams v. United States,
391 F.3d 1212 (Fed. Cir. 2004) . . . . . . . . . . 33

Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,
988 F.2d 1157 (Fed. Cir. 1993) . . . . . . . . . . 14

Alliance of Descendants of Texas Land Grants v. United States,
37 F.3d 1478 (Fed. Cir. 1994) . . . . . . . . . . 30, 31, 36

Am. Pelagic Fishing Co., L.P. v. United States,
379 F.3d 1363 (Fed. Cir. 2004) . . . . . . . . . . 33

Antolok v. United States,
873 F.2d 369 (D.C. Cir. 1989) . . . . . . . . . . passim

Applegate v. United States,
35 Fed.Cl. 406 (1996) . . . . . . . . . . 33

Baker v. Carr,
369 U.S. 186 (1962) . . . . . . . . . . 12, 21, 22 , 24 , 25

Banco Nacional de Cuba v. Sabbatino,
376 U.S. 398 (1964) . . . . . . . . . . 35

Blaze Constr., Inc. v. United States,
27 Fed.Cl. 646 (1993) . . . . . . . . . . 14, 32

Blue v. United States,
21 Cl.Ct. 359 (1990) . . . . . . . . . . 33

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981) . . . . . . . . . . 14, 36

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . 13

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . 31, 36

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Correlated Dev. Corp. v. United States,
556 F.2d 515(Ct. Cl. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

D.R. Smalley & Sons, Inc. v. United States,
372 F.2d 505 (Ct. Cl. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

El-Shifa Pharm. Indus. Co. v. United States,
378 F.3d 1346 (Fed. Cir. 2004), cert. denied,
125 S.Ct. 2963 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Figueroa v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 32, 36

Goodrich v. United States,
63 Fed.Cl. 477 (2005), aff'd,434 F.3d 1329
(Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Hornback v. United States,
405 F.3d 999 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

Japan Whaling Ass'n v. Am. Cetacean Soc'y,
478 U.S. 221 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Jet, Inc. v. Sewage Aeration Sys.,
223 F.3d 1360 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Juda v. United States,
13 Cl.Ct. 667 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Kabua v. United States,
546 F.2d 381 (Ct. Cl. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Klump v. United States,
38 Fed. Cl. 243 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Kroeger v. U.S. Postal Serv.,
865 F.2d 235 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Kwan v. United States,
272 F.3d 1360 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Lakewood Assocs. v. United States,
45 Fed. Cl. 320 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

MacLean v. United States,
454 F.3d 1334 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Marbury v. Madison,
5 U.S. (1 Cranch) 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Maritrans Inc. v. United States,
342 F.3d 1344 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Millen Indus. v. Coordination Council for N. Am. Affairs,
855 F.2d 879 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Montana v. United States,
440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Mother's Rest., Inc. v. Mama's Pizza, Inc.,
723 F.2d 1566 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Myers Investigative & Sec. Servs., Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Newby v. States,
57 Fed. Cl. 283 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Nitol v. United States,
13 Cl. Ct. 690 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

Nixon v. United States,
506 U.S. 224 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Oetjen v. Cent. Lumber Co.,
246 U.S. 297 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Parklane Hosiery Co. v. Shore,
439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 , 18

People of Enewetak v. United States,
864 F. 2d 134 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 15, 17, 18

Peter v. United States,
6 Cl. Ct. 768 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19, 25-28

Peter v. United States,
13 Cl. Ct. 691 (1987), aff'd sub nom. People of Enewetak v. United States, 864 F. 2d 134 (Fed. Cir. 1988), cert. denied
491 U.S. 909 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 15, 17, 19

Renne v. Geary,
501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Schneider v. Kissinger,
412 F.3d 190 (D.C. Cir. 2005), cert. denied,
126 S.Ct. 1768 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Schroder v. Bush,
263 F.3d 1169 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Steel Improvement & Forge Co. v. United States,
355 F.2d 627 (Ct. Cl. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Thomas v. Gen. Servs. Admin,
794 F.2d 661 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Truckee-Carson Irrigation Dist. v. United States,
14 Cl. Ct. 361 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Belmont,
301 U.S. 324 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Dickinson,
331 U.S. 745 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Pink,
315 U.S. 203 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 14

Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,
473 U.S. 172 (1985) . . . . . . . . . . 32

**CONSTITUTIONS**

U.S. Constitution, art. II, §§ 2 & 3 . . . . . . . . . . 23

**STATUTES**

28 U.S.C. § 1491 (2006) . . . . . . . . . . 14
28 U.S.C. § 2501 (2006) . . . . . . . . . . passim

Compact of Free Association Act of 1985 (the "Compact Act")
Pub. L. No. 99-239, 99 Stat. 1770 (1986), amended by
Pub. L. No. 108-188, 117 Stat. 2720 (2003), codified at
48 U.S.C. § 1901 et seq. (2003) . . . . . . . . . . 6
48 U.S.C. § 1903(g) (2003) . . . . . . . . . . 8, 16, 22
48 U.S.C.A. § 1921 note (West Supp. 2006) . . . . . . . . . . 12

Federal Courts Improvement Act of 1982
Pub. L. No. 97-164, 96 Stat. 27, codified at
28 U.S.C. § 171 . . . . . . . . . . 8

**RULES**

RCFC 12(b)(1) . . . . . . . . . . 1, 12, 13, 15, 18
RCFC 12(b)(6) . . . . . . . . . . 1, 13, 14, 33, 35
RCFC 12(h)(3) . . . . . . . . . . 13

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ISMAEL JOHN, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **No. 06-289 L** |
| | ) | **Hon. Christine O.C. Miller** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**THE UNITED STATES' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

**MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the United States hereby moves for an order dismissing this action in its entirety for lack of subject matter jurisdiction. In the alternative, pursuant to RCFC 12(b)(6), the United States moves to dismiss Plaintiffs' claims asserted in Counts III-VI for their failure to state a claim upon which relief can be granted.[1/] The United States submits its Memorandum in support of this Motion to Dismiss, below.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## I. NATURE OF THE CASE

This action is another in a series of actions brought by or on behalf of the citizens of the Republic of the Marshall Islands ("RMI") resulting from the United States' nuclear testing program conducted in the Marshall Islands between June 1946 and August 1958. In this action, Plaintiffs renew certain claims previously asserted against the United States in1982, in Peter v. United States, No. 461-82L (filed Sept. 15, 1982). See Ex. 1, hereto (Complaint in Peter). Specifically, Plaintiffs again allege an unlawful taking of Enewetak Atoll (Count I), and breach of an implied-in-fact contract (Count II).

[1/] The individually named Plaintiffs bring this action on their behalf and on behalf of a class consisting of the People of Enewetak. The United States reserves its right to oppose class certification, if this motion to dismiss is denied.

Plaintiffs also assert new claims in this action based upon the alleged failure or refusal by the United States to adequately fund the RMI's Nuclear Claims Tribunal, which was established pursuant to agreements between the United States and RMI. Plaintiffs do not allege that the United States has failed to pay all that it agreed to pay but, rather, that the amount agreed upon by the two governments in 1986 proved insufficient to permit the Tribunal to "fully compensate" Plaintiffs on a $385.9 million award that the Tribunal granted to them. Based upon this theory of liability, Plaintiffs specifically allege an unlawful taking of their just compensation claim (Count III), and an unlawful taking of their breach of implied contract claim (Count IV). Plaintiffs also allege that the agreements, themselves, between the United States and RMI constitute a taking of the Enewetak Atoll (Count V) and a breach of fiduciary duties created by an implied-in-fact contract (Count VI). Plaintiffs seek $384,247,017.00, which is the amount awarded by the Nuclear Claims Tribunal to Plaintiffs, less amounts paid by the Tribunal to date.[2/]

## II. STATEMENT OF THE ISSUES

1. Whether Plaintiffs are bound by the prior holdings of the United States Claims Court and the Court of Appeals for the Federal Circuit that Congress has withdrawn jurisdiction from courts in the United States over claims, such as brought here, that arise from or are related to the United States' nuclear testing program, requiring dismissal of this action.

2. Whether, in addition, Plaintiffs' claims raise a nonjusticiable political question and, therefore, should be dismissed.

3. Whether Plaintiffs' claims are barred by the six-year statute of limitations contained in 28 U.S.C. § 2501 and, therefore, should be dismissed.

4. Whether Plaintiffs' claims in Counts III through VI should be dismissed because Plaintiffs fail to state a claim upon which relief may be granted, as they fail to allege any act by the federal government, since 1986, that has deprived them of any property interest (Counts III-

---

[2/] Plaintiffs demand this same monetary award in each Count asserted in their Complaint. See Am. Compl. ¶¶ 180, 198, 204, 208, 212, 216.

V), and they fail to allege any post-1986 facts that support their allegation of an implied-in-fact contract that could potentially give rise to any fiduciary duty owed to Plaintiffs by the United States (Count VI).

## III. STATEMENT OF THE CASE[3/]

### A. U.S. Control over Enewetak Atoll and the Expulsion and Return of the Enewetak People

Enewetak Atoll is one of 29 atolls and 5 islands comprising the Marshall Islands, which are located north of the equator in the central Pacific Ocean. Am. Compl. ¶ 17, Ex. A. Enewetak Atoll consists of approximately 40 islands with a combined land area of approximately 2.75 square miles. Id. ¶ 39, Ex. B. The two largest islands are Enewetak Island, in the southeast quadrant of the atoll, which has a land area of 321.86 acres, and Enjebi Island, on the north rim, which consists of 290.58 acres. Id. The islands of the atoll enclose a lagoon area of approximately 388 square miles. Id.

During World War II, Japan made Enewetak Atoll a strategic base, fortifying the atoll and constructing an airfield on Enjebi. Am. Compl. ¶ 43. Several thousand Japanese military personnel occupied the atoll. Id. In February 1944, United States troops captured Enewetak Atoll from Japan, placing the atoll under the control of the U.S. military. Id. ¶¶ 20, 44.

After the war, on July 18, 1947, the United States entered into an agreement with the United Nations under which Micronesia (comprised of the Marshall, Caroline and Mariana Islands) became a United Nations strategic trust territory administered by the United States. Am. Compl. ¶¶ 18, 21. That same day, President Truman terminated the military government of the Trust Territory and delegated civilian administration of the Trust Territory to the Secretary of the Navy. Id. ¶ 25.

Just one month before transferring control over the Trust Territory to the Secretary of the

[3/] The following facts are derived from Plaintiffs' Amended Complaint and are not disputed for the purposes of this motion, only. Should this motion be denied, Defendant reserves the right to controvert any fact asserted in the amended complaint.

Navy, in June 1947, President Truman authorized planning for Operation Sandstone, a series of nuclear tests designed to develop a new series of weapons. Am. Compl. ¶ 51. On December 1, 1947, Enewetak Atoll was chosen to be the site for those tests. Id. At that time, approximately 145 people resided on the Atoll. See Am. Compl., Ex. C at 2.

On November 25, 1947, President Truman issued a Directive to the Secretary of Defense for the removal of the Enewetak people from Enewetak Atoll "preliminary to the carrying out of tests of atomic weapons early in 1948, and in accordance with the enclosed memorandum addressed to the president by the Chairman of the Atomic Energy Commission." Am. Compl. ¶ 52, Ex. C.

The United States decided to remove the Enewetak people to Ujelang Atoll, which was uninhabited at the beginning of December 1947. Am. Compl. ¶ 55. In December 1947, the United States' Governor of the Marshall Islands, Captain Vest, informed the Enewetak people that they would have to leave Enewetak Atoll. See id. ¶ 56. Captain Vest communicated to the Enewetak people that the use of Enewetak for atomic weapons testing would be temporary and that the Enewetak people would be able to return to their homeland within 3 to 10 years. Id. The entire population of Enewetak Atoll subsequently boarded a U.S. Navy vessel and arrived at Ujelang Atoll on December 21, 1947. Id. ¶ 57.

The United States exclusively used and occupied Enewetak Atoll from 1947 to 1980 for a variety of purposes including nuclear weapons testing (April 1948 to August 1958), among other ballistic tests. Am. Compl. ¶¶ 76-77. During this period, the Enewetak people were not permitted to return to Enewetak Atoll. Am. Compl. ¶ 76.

As a result of the nuclear testing program and subsequent tests, five islands in the atoll were completely or partially destroyed ("vaporized"). Am. Compl. ¶ 85. The remaining islands on the north half of the atoll, where the nuclear testing and other experiments occurred, were damaged. Id. The islands of Enjebi and Runit were contaminated with radioactivity, and the atoll's lagoon was damaged. Id.

In October 1973, the United States Atomic Energy Commission published a radiation survey of the atoll which proposed a plan for a nuclear cleanup operation. Am. Compl. ¶ 90. From 1972 until 1977, the United States studied and planned for the radiological cleanup and rehabilitation programs. Id. From May 1977 to April 1980, the United States cleaned up portions of Enewetak Atoll. Id. ¶¶ 91-92.

In October 1980, the Enewetak people returned to Enewetak Atoll although, despite the cleanup efforts, they have been able to resettle only the southern portion of the atoll. Id. The northern islands, including the island of Enjebi, remain off limits because of concerns due to residual radioactivity. Id. ¶¶ 92-93.

### B. Political Control over Enewetak and the Compact of Free Association

At various times during the late 1940s and 1950s, when the United States controlled Enewetak, the Secretary of the Navy and the Secretary of the Interior were responsible for administering the Trust Territory. See Am. Compl. ¶ 25. Ultimately, in 1962, the Secretary of the Interior became the responsible administrator pursuant to Executive Order No. 11,021. Id. The Secretary of the Interior had supervisory authority over a High Commissioner of the Trust Territory, who had executive authority over the Government of the Trust Territory. Id. ¶27. The High Commissioner was appointed by the President with the advice and consent of the United States Senate. Id.

By 1978, the Trust Territory fragmented politically into four governmental entities: The Northern Mariana Islands, Palau, the Marshall Islands, and the Federated States of Micronesia. Am. Compl. ¶ 33. The Secretary of the Interior established procedures for the Marshall Islands, Palau, and the Federated States of Micronesia to develop local constitutions. Id. ¶ 34. The Marshall Islands adopted a constitution by plebiscite on May 1, 1979 and formed a local government, which the Secretary of the Interior recognized. Id. Under this local governmental structure, the Marshall Islands exercised powers of self-government, but the U.S. High Commissioner maintained veto power over enactments of the Marshall Islands legislature. Id.

Nevertheless, the Republic of the Marshall Islands, which includes Enewetak Atoll, became a self-governed, freely associated, state. See Am. Compl. ¶¶ 7, 34, 38.

The Marshall Islands negotiated a new political relationship with the United States, and initialed a Compact of Free Association ("Compact") in 1980. Am. Compl. ¶ 37. The final version of the Compact was signed on June 25, 1983 and the Marshall Islanders approved it by a plebiscite in September 1983.[4] Id. ¶ 38. The Preamble to the Compact makes clear that the "approval of the entry of their respective Governments into [the Compact] by the peoples of the Trust Territory of the Pacific Islands constitutes an exercise of their sovereign right to self-determination." See Compact Act, Preamble, 99 Stat. at 1801-02. The Compact further recognizes, in Section 111, that "[t]he peoples of the Marshall Islands and the Federated States of Micronesia, acting through the Governments established under their respective Constitutions, are self-governing." Id., § 111, 99 Stat. at 1801.

Section 177(b) of the Compact provides that the United States and the Marshall Islands would negotiate a separate agreement for the "just and adequate settlement of all [personal injury and property damage] claims" resulting from the U.S. nuclear testing program. See Am. Compl. ¶ 108 (quoting Compact Act §177 (b)). Pursuant to § 177(b), the governments negotiated the "Agreement Between the Government of the United States and the Government of the Marshall Islands for the Implementation of Section 177 of the Compact of Free Association" ("Section 177 Agreement"). Id. ¶ 109; see also Ex. 2, attached hereto (Section 177 Agreement). This agreement established a $150 million trust fund (the "Trust Fund"), the income from which was earmarked, in part, for distribution to the people of atolls affected by the nuclear testing. Am. Compl. ¶ 110. Of that amount, $48.75 million was earmarked for distribution to the Enewetak people in quarterly amounts of $812,000 for 15 years. See Ex. 2, art. II, § 3. The Agreed

[4] The Compact was enacted into U.S. law by the Compact of Free Association Act of 1985, Pub. L. No. 99-239, tit. II, § 201, 99 Stat. 1770, 1800-36 (1986) (codified at 48 U.S.C. § 1901 et seq.) ("Compact Act"). By proclamation dated November 3, 1986, the President declared the Compact to be in effect. See Am. Compl. ¶ 38.

Minutes to the Section 177 Agreement makes clear that the Enewetak government council, acting as the Distribution Authority, was to create a Enewetak Claims Trust Fund the corpus of which could be invaded only to a maximum of three percent (3%). See Ex. 2, Agreed Minutes at A-2. Also, the Section 177 Agreement allocated $45.75 million of income from the $150 million Trust Fund for disbursement over a 15-year period as monetary awards by the Nuclear Claims Tribunal. See Am. Compl. ¶ 110; see also Ex. 2, art. II, § 6.

Significantly, in exchange for the Trust Fund monies, Article X, § 1, of the Section 177 Agreement, entitled "Espousal," extinguishes all claims of Marshall Islanders related to the U.S. nuclear testing program. It provides:

> This Agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program, and which are against the United States, its agents, employees, contractors and citizens and nationals, and of all claims for equitable or any other relief in connection with such claims including any of those claims which may be pending or which may be filed in any court or other judicial or administrative forum, including the courts of the Marshall Islands and the courts of the United States and its political subdivisions.

Ex. 2 at 12.

Article XII of the Section 177 Agreement, entitled "United States Courts," provides:

> All claims described in Articles X and XI of this Agreement shall be terminated. **No court of the United States shall have jurisdiction to entertain such claims**, and any such claims pending in the courts of the United States shall be dismissed.

Id. at 13 (emphasis added). Article XI of the Agreement provides that the Marshall Islands shall indemnify and hold harmless the United States for any liability it may incur on Article X claims, up to $150 million. Id. at 12-13.

The Compact Act incorporates the Section 177 Agreement by reference, and reiterates the intent of Congress to achieve a "full and final settlement of all claims described in Articles X and XI of the Section 177 Agreement, and that any such claims be terminated and barred . . . ." See

Compact Act, 99 Stat. at 1782 (codified at 48 U.S.C. § 1903(g) (2003)).

### C. Prior Litigation

On September 15, 1982, the Plaintiffs in this case filed a Complaint in the Court of Claims seeking, inter alia, compensation from the United States for an alleged temporary taking of their Atoll, and compensation for an alleged breach of an implied-in-fact contract.[5] See Am. Compl. ¶ 101 (citing Peter v. United States, Docket No. 461-82L). In 1981 two other groups of Marshall Islanders sought compensation from the United States for damages relating to the nuclear testing program, including the people of Bikini Atoll (Juda v. United States, Docket No. 172-81L) and the peoples of other Northern Marshall atolls and islands directly downwind from the test sites (twelve cases consolidated under the lead case Nitol v. United States, Docket No. 453-81L). Id. ¶ 102.

In the Enewetak case, Peter v. United States, the Claims Court held that the takings claims were barred by the six-year statute of limitations, but initially allowed the claims for the alleged breach of an implied-in-fact contract to go forward. Peter v. United States, 6 Cl. Ct. 768 (1984). Plaintiffs appealed from the decision to dismiss their takings claims. Am. Compl. ¶ 105.

Meanwhile, the Compact and the Section 177 Agreement went into effect and the court directed the parties in the Juda, Peter and Nitol cases to submit briefs on whether Congress had withdrawn the consent of the United States to be sued in the Claims Court. See Am. Compl. ¶ 107, 114. In a November 10, 1987 decision in Juda, the court dismissed the complaint on the ground that Article XII of the Section 177 Agreement amends the Tucker Act, thus withdrawing the United States' consent to be sued for these claims. Am. Compl. ¶¶ 114-15; see also Juda v. United States, 13 Cl. Ct. 667, 689-90 (1987). Based upon the holding in Juda, the court also dismissed Peter and Nitol. Am. Compl. ¶ 114; see also Peter v. United States, 13 Cl. Ct. 691

[5] Pursuant to the Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, Ch. 7, § 105(a), 96 Stat. 27 (codified at 28 U.S.C. § 171), the Court of Claims was reconstituted as the United States Claims Court (now the Court of Federal Claims), and its appellate body, the United States Court of Appeals for the Federal Circuit.

(1987), aff'd sub nom. People of Enewetak, 864 F.2d 134, 137 (Fed. Cir. 1988), cert. denied 491 U.S. 909 (1989); Nitol v. United States, 13 Cl. Ct. 690 (1987).

The people of Enewetak (the plaintiffs in Peter) along with other Marshall Islanders (the plaintiffs in Nitol) appealed from the Claims Court decision to dismiss for lack of jurisdiction. Am. Compl. ¶ 116; see also People of Enewetak, 864 F. 2d at 135. The people of Bikini (the plaintiffs in Juda) also appealed the Claims Court decision but, while their appeal was pending, they voluntarily dismissed their case as part of a $90 million settlement with the United States. See Am. Compl. ¶ 116.

The Court of Appeals for the Federal Circuit affirmed, concluding that

> pursuant to Article XII of the section 177 Agreement, the consent of the United States to be sued in the Claims Court, on appellants' claims arising from the nuclear testing program conducted by the United States in the Marshall Islands, had been withdrawn in conjunction with the establishment of an alternative tribunal to provide just compensation.

Am. Compl. ¶ 119; see also People of Enewetak, 864 F.2d at 136.

**D. Proceedings before the Nuclear Claims Tribunal**

On July16, 1990, the plaintiffs in the instant action filed a class action in the Nuclear Claims Tribunal (hereinafter "Tribunal" or "NCT"), which was established by the Republic of the Marshall Islands to determine the nature and extent of the damages resulting from the nuclear testing program and to award compensation from the $150 million Trust Fund. See Am. Compl. ¶¶ 110, 122. Specifically, the Tribunal was established in 1987 by the RMI's Nuclear Claims Tribunal Act, pursuant to the Section 177 Agreement. Id. ¶ 123. In their class action before the Tribunal, Plaintiffs sought damages "for (a) loss of use of their atoll, (b) restoration costs for a radiological cleanup of their atoll, and (c) consequential and hardship damages suffered by the Enewetak people." Id. ¶ 122.

On April 13, 2000, the Tribunal issued a Memorandum of Decision and Order (the "NCT's Enewetak Decision") regarding the class action property damage claims of the People of

Enewetak. See Am. Compl. ¶ 128, Ex. E. The Tribunal awarded $107,810,000 for the restoration and cleanup of Enewetak. See Am. Compl. ¶ 135. For loss of use of the atoll from 1947 to October 1980, the Tribunal determined that "[t]he value of past lost use, adjusted for prior compensation, is $149,000,000." See id. ¶ 141 (quoting NCT's Enewetak Decision at 10-11). For future loss of use of Enewetak, the Tribunal awarded the islanders $50,154,811. Id. ¶ 142 (citing NCT's Enewetak Decision at 12).[6] The Tribunal amended its Enewetak Decision on August 3, 2000 to add $47.7 million for prejudgment interest from the date of valuation (January 24, 1997) to the date of the award (April 13, 2000). Id. ¶ 143. The amendment further awarded post judgment interest accumulating at the rate of 7% per year on the net loss of use damages of $244 million and restoration damages of $107,810,000. Id. ¶ 143, Ex. G (August 3, 2000 Order amending the NCT's April 13, 2000 Enewetak Decision). The Tribunal also awarded compensation for hardships endured while the Enewetak people were residing on Ujelang Atoll, amounting to an additional award of $34,084,500. Id. ¶ 145 (citing NCT's Enewetak Decision at 32-33). This resulted in a net total award by the Tribunal of $385,894,500, plus interest at the rate of 7% per annum. Am. Compl. ¶ 146.

The Tribunal has exhausted the funds earmarked for judgments in the Section 177 Agreement by making payments in excess of $80 million. See Am. Compl. ¶¶ 149, 151. Allegedly, less than $1.8 million remains of the original $150 million Trust Fund. Id. ¶ 151.

**E. The Changed Circumstances Request and Political Solution**

Article IX of the Section 177 Agreement (the "Changed Circumstances Clause") provides that

> If loss or damage to property and person of the citizens of the Marshall Islands, resulting from the Nuclear Testing Program, arises or is discovered after the effective date of this Agreement, and such injuries were not and could not reasonably have been

[6] The Tribunal subsequently reduced the award for future loss of use to $47,001,908 in its August 3, 2000 Order, which is attached as Ex. G to the Complaint.

> identified as of the effective date of this Agreement [November 3, 1986], and if such injuries render the provisions of this Agreement manifestly inadequate, the Government of the Marshall Islands may request that the Government of the United States provide for such injuries by submitting a request to the Congress of the United States for its consideration. It is the understood that this Article does not commit the Congress of the United States to authorize and appropriate funds.

See Am. Compl. ¶¶ 38, 156; see also Ex. 2 at 11-12.

On September 11, 2000, the Marshall Islands presented to the U.S. Congress a "Petition Presented to the Congress of the United States of America Regarding Changed Circumstances Arising from U.S. Nuclear Testing in the Marshall Islands" ("Changed Circumstances Request"). Am. Compl. ¶ 163. The Changed Circumstances Request was resubmitted on November 14, 2001. Id. In its Changed Circumstances Request, the Marshall Islands requested that the awards granted by the Tribunal to the Enewetak people be paid by the United States through an appropriation by Congress, because of changed circumstances and because the Tribunal did not then have the funds to pay the awards. See id. ¶¶ 163-64.

In March 2002, the Senate Energy and Natural Resources Committee and House Resources Committee requested that the Administration evaluate the Changed Circumstances Request. See Am. Compl. ¶ 165. In January 2005, the Administration sent a "Report Evaluating the Request of the Government of the Republic of the Marshall Islands presented to the Congress of the United States of America," concluding that the RMI's request does not qualify as changed circumstances within the meaning of Article IX and, therefore, finding no legal basis to consider additional payments under the Section 177(c) Agreement. Id. ¶ 166.

The Changed Circumstances Request still is pending before Congress. See Am. Compl. ¶ 168. On July 19, 2005, the House Committee on Resources and the House Committee on International Relations Subcommittee on Asia and the Pacific held a joint hearing on the Marshall Islands nuclear legacy and the Changed Circumstances Request. See id. ¶ 167. The Senate also held a hearing. See id.

Meanwhile, the governments of the United States and RMI negotiated amendments to the

Compact of Free Association. See Pub. L. No. 108-188, 117 Stat. 2720 (2003) (codified at 48 U.S.C.A. § 1921 note (West Supp. 2006)). The amended Compact provides, among other things:

> The Compact, as amended, makes no changes to, and has no effect upon, Section 177 of the Compact, nor does the Compact, as amended, change or affect the separate agreement referred to in Section 177 of the Compact including Articles IX and X of that separate agreement, and measures taken by the parties thereunder.

Id., tit. I, art. VII, § 177.

## IV. ARGUMENT

### A. Introduction

This action must be dismissed in its entirety for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). As the Claims Court and the Federal Circuit have held, the Compact Act, the Compact of Free Association and the related Section 177 Agreement make clear that the United States has withdrawn subject matter jurisdiction from all courts in the United States over all claims, past, present and future, arising out of or in any way related to the nuclear testing program. See People of Enewetak, 864 F.2d at 136-37 (adopting the Claims Court's reasoning in Juda 13 C1. Ct. 667 (1987)); see also Peter, 13 Cl. Ct. 691-92 (following Juda). Because Plaintiffs' claims arise out of or are related to the nuclear testing program, this action must be dismissed for lack of subject matter jurisdiction. Indeed, Plaintiff are barred by the doctrine of res judicata from even rearguing whether the Court has jurisdiction. In light of Congress' withdrawal of jurisdiction from the Court of Federal Claims (and all other courts) to hear claims arising out of the nuclear testing program, the Court need not consider any additional arguments prior to dismissing this action. Additional grounds for dismissal exist, however.

This action also must be dismissed under the political question doctrine, because it calls into question the propriety of international agreements between the United States and another sovereign nation, the Republic of the Marshall Islands. Because there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department," this action must be dismissed. See Baker v. Carr, 369 U.S. 186, 217 (1962). Plaintiffs' remedy–if

any remedy is due from the United States–is within the sole discretion of Congress, as contemplated by the agreements between the United States and the RMI.

Moreover, this action must be dismissed because it was not filed within the six-year statute of limitations under 28 U.S.C. § 2501. All actions by the United States alleged by Plaintiffs in their Amended Complaint accrued more than six years prior to April 12, 2006, the date on which Plaintiffs brought this action and, therefore, their claims are time-barred.

Finally, and in the alternative, Plaintiffs fail to state a claim in Counts III through VI upon which relief may be granted, further warranting dismissal of those claims pursuant to Rule 12(b)(6).

Accordingly, as discussed below, several grounds exist for dismissing this action in its entirety, with prejudice.

**B. Standard of Review**

When deciding a motion to dismiss based on lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), the court must assume that all undisputed facts alleged in the Complaint are true and must draw all reasonable inferences in the non-movant's favor. Newby v. United States, 57 Fed. Cl. 283, 290 (2003). Where, as here, the court lacks jurisdiction over the subject matter of the complaint, the correct remedy is dismissal of the action. "[U]nder [Court of Federal Claims] Rule 12(h)(3), this court is mandated to. . . dismiss the action '[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter . . . ." Truckee-Carson Irrigation Dist. v. United States, 14 Cl. Ct. 361, 368 (1988) (emphasis as in original). When considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the Court may consider matters outside the pleadings. Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993); see also Juda v. United States, 13 Cl.Ct. 667, 670 (1987) (a motion for lack of subject matter jurisdiction under Rule 12(b)(1) "is not converted to a motion for summary judgment when the court considers matters outside the pleadings").

This Court also has the authority to dismiss a complaint for failure to state a claim

pursuant to RCFC 12(b)(6). A complaint should be dismissed for failure to state a claim where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Maniere v. United States, 31 Fed. Cl. 410, 419 (1994) (quoting Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993)). While "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff[,] . . . conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Figueroa v. United States, 57 Fed. Cl. 488, 497 (2003) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)) (internal quotation marks and other citations omitted). Additionally, "[l]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Figueroa, 57 Fed.Cl. at 497 (quoting Blaze Constr., Inc. v. United States, 27 Fed.Cl. 646, 650 (1993)) (internal quotation marks omitted).

For purposes of this motion only, the facts are not in dispute. Rather, the motion is based upon the facts as alleged in Plaintiffs' Complaint.

### C. This Action Must Be Dismissed for Lack of Jurisdiction Pursuant to the Compact Act and Section 177 Agreement

The United States is immune from suit unless it consents by waiving its sovereign immunity. See United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). The Tucker Act grants subject matter jurisdiction in the Court of Federal Claims over claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." See 28 U.S.C. § 1491. "The burden of establishing the court's subject matter jurisdiction rests with the party seeking to invoke it, as federal courts are presumed to lack jurisdiction unless the record affirmatively indicates to the contrary." Goodrich v. United States, 63 Fed.Cl. 477, 479 (2005)

(citing Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed.Cir. 2002); and Renne v. Geary, 501 U.S. 312, 316 (1991)), aff'd, 434 F.3d 1329 (Fed. Cir. 2006). The Plaintiffs cannot meet their burden here, because Congress has withdrawn jurisdiction over their claims from all courts of the United States. This action, therefore, must be dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

Moreover, Plaintiffs are bound by the Courts' prior rulings and are barred by the doctrine of res judicata from relitigating this issue. This action, therefore, should be dismissed forthwith. Under the doctrine of res judicata, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.5 (1979). Res judicata applies to final judgments involving jurisdiction and statutes of limitation. Hornback v. United States, 405 F.3d 999, 1002 (Fed. Cir. 2005). Because, as discussed below, the criteria for applying the doctrine of res judicata are met here, Plaintiffs cannot re-litigate whether the Court has jurisdiction over their claims .

**1. Plaintiffs Cannot Meet Their Burden of Establishing the Court's Subject Matter Jurisdiction.**

As Plaintiffs acknowledge in their Complaint, the court previously decided that it does not have jurisdiction over any claims arising from the nuclear testing program conducted in the Marshall Islands, pursuant to the Compact Act and the Section 177 Agreement. See Am. Compl. ¶¶ 114-115; see also Juda, 13 Cl.Ct. at 689 (1987); Peter, 13 Cl. Ct. at 691 (1987); Nitol, 13 Cl.Ct. at 690 (1987). The Federal Circuit agreed, adopting the Claims Court's analysis in Juda, supra. See People of Enewetak, 864 F.2d at 136-37.[7]

The Court in Juda found that "[t]he RMI and the United States unquestionably intended that the Section 177 Agreement would be a complete settlement of all claims arising from the

[7] Other courts that have considered the issue also have held that the Compact Act and Section 177 Agreement withdraw from courts in the United States jurisdiction over claims arising from the nuclear testing program. See Antolok v. United States, 873 F.2d 369, 373-79 (D.C. Cir. 1989) (affirming District Court's decision to dismiss for lack of jurisdiction an action brought by residents of the Marshall Islands arising out of the nuclear testing program).

nuclear testing program." Juda, 13 Cl.Ct. at 684. In so finding, the Juda court cited paragraph (1) of Section 103(g) of the Compact Act (codified at 48 U.S.C. § 1903(g)), which plainly expresses the intent of Congress that the Section 177 Agreement constitute "a full and final settlement of all claims." Id. The Juda court further was persuaded by Article X of the Section 177 Agreement, which states, in pertinent part:

> ESPOUSAL, Section 1 - Full Settlement of All Claims. This Agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program, and which are against the United States . . . including any of those claims which may be pending [in any forum], including the courts of the Marshall Islands and the courts of the United States and its political subdivisions.

Juda, 13 Cl. Ct. at 675; see also Ex. 2 at 12. Because the Section 177 Agreement is a defined term in Section 103(g) of the Compact Act, and Section 177 of the Compact incorporates by reference the Section 177 Agreement, "[i]t is clear that the Section 177 Agreement and Articles X and XII of that Agreement have the force and effect of law." Juda, 13 Cl.Ct. at 683.

The court further made clear in Juda that the Compact Act and the Section 177 Agreement withdraw jurisdiction from the United States courts over claims arising from or related to the nuclear testing program. Juda, 13 Cl. Ct. at 683-90. First, Section 103(g) of the Compact Act states that all claims described in Articles X and XI of the Section 177 Agreement shall be "terminated **and barred** except insofar as provided for in the Section 177 Agreement."[8/] Juda, 13 Cl.Ct. at 675 (emphasis added). Additionally, Article XII of the Section 177 Agreement provides:

> All claims described in Articles X and XI of this Agreement shall be terminated. **No court of the United States shall have jurisdiction to entertain such claims**, and any such claims

---

[8/] The claims described in Articles X and XI of the Section 177 Agreement include "all claims, past, present and future of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program, and which are against the United States . . . ." See Ex. 2 at 12-13.

> pending in the courts of the United States shall be dismissed.

Juda, 13 Cl. Ct. at 675 (emphasis added); see also Ex. 2 at 13. As the court in Juda found:

> Article XII of the Section 177 Agreement does three things: (1) all claims related to the nuclear testing program "shall be terminated,"; (2) no court of the United States "shall have jurisdiction to entertain" claims relating to the nuclear testing program; and (3) any such claims pending in the courts of the United States "shall be dismissed."

Juda, 13 Cl. Ct. at 686. By its terms, Article XII "applies to all courts of the United States," including this Court. Id. at 689. Accordingly, as the court held in Juda:

> The consent of the United States to be sued in the Claims Court on plaintiffs' takings claims and breach of contract claims that arise from the United States' nuclear testing program in the Marshall Islands has been withdrawn.

Id. at 690; see also Peter, 13 Cl. Ct. at 691-92 (adopting the analysis and holdings of Juda in the takings and breach of implied contract action brought by the people of Enewetak); People of Enewetak, 864 F.2d at 137.

There can be no genuine dispute that the claims asserted in this action arise out of or are related to the nuclear testing program. As Plaintiffs allege in their Complaint, the people of Enewetak were removed from the atoll in 1947 so that the United States could conduct tests of nuclear weapons. See Am. Compl. ¶¶ 51-51, 55-57, Ex. C. As Plaintiffs further allege, "between April 1948 and August 1958, Enewetak Atoll was the site of 43 atomic and thermonuclear (hydrogen) bomb tests." Am. Compl. ¶ 77. During this period, the nuclear weapons tests wholly or partially "vaporized" five islands in the atoll. Id. ¶ 85. These tests resulted in radiation contamination preventing the people of Enewetak from resettling the northern portion of the atoll. Id. ¶¶ 92-93. Moreover, the Plaintiffs seek damages measured by the award granted by the Nuclear Claims Tribunal, which was established to implement the Section 177 Agreement. See Am. Compl. ¶¶ 122-23, 180, 198, 204, 208, 212, 216. Significantly, Plaintiffs incorporate by reference into their Amended Complaint the Nuclear Claims Tribunal's April 13, 2000 Decision, and attached it as an exhibit to their Amended

Complaint. Id. ¶ 128, Ex. E.

The NCT's Enewetak Decision further makes clear that Plaintiffs' claims arise out of or are related to the nuclear testing program. Indeed, the Tribunal states in the first sentence of its Memorandum of Decision that "the People of Enewetak filed this class action claim with the Marshall Islands Nuclear Claims Tribunal, for damages to land resulting from[,] or arising out of, the Nuclear Testing Program conducted by the United States between 1946 and 1958." See NCT's Enewetak Decision at 1. The damages awarded include loss of use of the five islands that were "vaporized" by the nuclear weapons tests. Id. at 9; see also Am. Compl. ¶ 85. And over $107 million was awarded by the Tribunal for the radiological cleanup of the atoll. See NCT's Enewetak Decision at 12-24; see also Am. Compl. Ex. F (May 5, 2000 Order awarding $16.1 million "as part of the radiological cleanup"). Accordingly, there can be no genuine dispute that the claims asserted by the Plaintiffs in this action arise from the United States' nuclear testing program at Enewetak.

Consequently, as held by the Federal Circuit in People of Enewetak, the Section 177 Agreement withdraws this Court's jurisdiction to hear Plaintiffs claims that arise out of or are related to the nuclear testing program. People of Enewetak, 864 F.2d at 135-37. This action, therefore, must be dismissed in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**2. Plaintiffs Are Barred by the Doctrine of Res Judicata from Relitigating this Issue.**

Moreover, Plaintiffs are barred by the doctrine of res judicata from relitigating this issue, as they are bound by the court's prior rulings. Under the doctrine of res judicata, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Res judicata applies to final judgments involving jurisdiction and statutes of limitations. Hornback v. United States, 405 F.3d 999, 1002 (Fed. Cir. 2005). A second suit will be barred by the doctrine of res judicata if: "(1) there is identity of parties (or their privies); (2) there has been an earlier

final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000). Because each of these criteria is met here, Plaintiffs cannot re-litigate whether this Court has jurisdiction over their claims pursuant to the doctrine of res judicata.

a. Identity of the Parties. As was Peter v. United States, No. 461-82L, this case also was brought by the named Plaintiffs on their behalf and on behalf of a proposed class consisting of "all persons recognized as members of the Enewetak people by traditional law and custom," including all living members of the Enewetak community who were evacuated from the atoll in 1947, all of their descendants, and all others who are recognized "by traditional law and custom" as members of the Enewetak people. (Am. Compl. ¶ 14; see also Peter, 6 Cl. Ct. at 769.) Indeed, 12 of the 17 named Plaintiffs in this action were named in the complaint filed in Peter. Compare Am. Compl. at 1 with Ex. 1 at 1-3 (Complaint in Peter, No. 461-82L (filed Sept. 15, 1982)).[9] This criterion, therefore, is met.

b. Final Judgment on the Merits. As discussed above, when dismissing the prior litigation brought by the Enewetak people for lack of subject matter jurisdiction, the court specifically held that

> Article XII of the Section 177 Agreement by necessary implication amends the Tucker Act. The consent of the United States to be sued in the Claims Court on plaintiffs' [claims] that arise from the United States' nuclear testing program in the Marshall Islands has been withdrawn.

Juda, 13 Cl. Ct. at 690; see also Peter, 13 Cl. Ct. at 692. Accordingly, that this Court lacks subject matter jurisdiction has already been decided, with finality.

c. Same Set of Transactional Facts. Unquestionably, as in Peter, the claims asserted in this action arise out of, or are related to, the United States' nuclear testing program at Enewetak.

Consequently, Plaintiffs are barred by the doctrine of res judicata from re-arguing this

[9] Specifically, plaintiffs Ismael John, Jackson Ading, James Gideon, Kunio Joseph, Harry Jackson, Boaz David, Sam Levai, David Obet, Ebel Joseph, Geroge Yoshitaro, Neptali Peter, and Moses Abraham also were named plaintiffs in Peter.

issue. The Court, therefore, must dismiss this action without further argument.

**D. This Action Raises a Nonjusticiable Political Question and Must Be Dismissed**

This action raises a nonjusticiable political question and should be dismissed because Plaintiffs' remedy, if any remedy is due from the United States, is within the discretion of the U.S. Congress, and not the courts.[10] Indeed, on September 11, 2000, pursuant to Article IX of the Section 177 Agreement, the Marshall Islands submitted to Congress a "Petition Presented to the Congress of the United States of America Regarding Changed Circumstances Arising from U.S. Nuclear Testing in the Marshall Islands." See Am. Compl. ¶ 163. That request remains pending. See Am. Compl. ¶¶ 167-68. Accordingly, because this action challenges the adequacy of the Section 177 Agreement, raising a political question, it must be dismissed.

This action is a direct assault upon the Compact and its related Section 177 Agreement, which were intended by both the Republic of the Marshall Islands and the United States to "constitute[] the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program, and which are against the United . . . ." See Ex. 2 at 12 (Section 177 Agreement, art. X). Plaintiffs allege that, by paying personal injury claims, the Tribunal exhausted the $45.75 million earmarked for it in the Section 177 Agreement. See Am. Compl. ¶ 151. According to Plaintiffs, the "$150 million trust fund established pursuant to the [Section] 177 Agreement is virtually exhausted . . . [and] is now less than $1.8 million." (Id.) Thus, Plaintiffs challenge the Section 177 Agreement because, in their view, the "$150 million settlement amount proved to be manifestly inadequate to provide the just compensation as determined by the Tribunal." See Am. Compl. ¶ 201.

Plaintiffs claim that, because the settlement fund allegedly was not sufficient to pay their

---

[10] As discussed infra, Part IV.F., Plaintiffs may have a claim against their own Government regarding the adequacy of the $150 million settlement fund. See Antolok v. United States, 873 F.2d 369, 392 (D.C. Cir. 1989) (Wald, C.J., concurring in the judgment).

claims, the United States now is obligated to pay $384 million more than the amount agreed upon in the Section 177 Agreement. See Am. Compl. ¶¶ 146, 203-04. The basic tenet underlying Plaintiffs' claims in this action, therefore, is that the $150 million settlement fund established under the Section 177 Agreement proved, in their view, inadequate. Otherwise, they would not have brought this action against the United States. The political question raised, therefore, is the propriety of the terms agreed upon by the United States and the Republic of the Marshall Islands in the Compact and Section 177 Agreement.

Because this action challenges the propriety of agreements entered into by the two sovereign governments, it should be dismissed pursuant to the political question doctrine. The United States Supreme Court has long recognized that certain political decisions are committed to the political branches of government, to the exclusion of the judiciary. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 164 (1803). "The conduct of the foreign relations of our government is committed by the Constitution to the executive and the legislative-'the political'-departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." Oetjen v. Cent. Lumber Co., 246 U.S. 297, 302 (1918). Plaintiffs' attack upon the Compact and Section 177 Agreement–agreements that were negotiated and executed by the Executive Branch and approved by Congress–calls into question the conduct of U.S. foreign relations. Consequently, this action raises a nonjusticiable political question and should be dismissed.

"The nonjusticiability of a political question is primarily a function of the separation of powers." Baker v. Carr, 369 U.S. 186, 210 (1962). The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986). The factors to consider when determining whether the political question doctrine bars jurisdiction include:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker, 369 U.S. at 217. The Court need only find that one factor is present to conclude that the political question doctrine applies. See El-Shifa Pharm. Indus. Co. v. United States, 378 F.3d 1346, 1362 (Fed. Cir. 2004) (citing Baker, 369 U.S. at 217), cert. denied, 125 S.Ct. 2963 (2005); see also Schneider v. Kissinger, 412 F.3d 190, 194 (D.C. Cir. 2005), cert. denied, 126 S.Ct. 1768 (2006).

**1. There Is a Textually Demonstrable Constitutional Commitment of the Issue to a Coordinate Political Department.**

There is a textually demonstrable constitutional commitment of the issue to Congress and the Executive Branch. Plaintiffs' attack upon the Compact and Section 177 Agreement calls into question the conduct of foreign relations by the United States. This type of government-to-government negotiations are "within the sole authority of the Executive." Kwan v. United States, 272 F.3d 1360, 1364 (Fed. Cir. 2001). Indeed, this Baker factor provided an alternative ground to dismiss another action brought by residents of the Marshall Islands who allegedly were injured by the nuclear testing program. See Antolok v. United States, 873 F.2d 369, 379-84 (D.C. Cir. 1989).

In Antolok, approximately 3,000 residents of the northern Marshall Islands downwind from the nuclear test sites sought damages for personal injuries and death resulting from their exposure to radiation. Id. at 372. As in this case, the plaintiffs in Antolok also alleged that "the amount of the settlement–$150 million–is inadequate in comparison to the injuries that they have suffered." Id. at 392. The District Court dismissed the action for lack of subject matter jurisdiction based upon Section 103(g)(1) of the Compact Act and Articles X and XII of the

Section 177 Agreement, and the Circuit Court affirmed. Id. at 372-79. In affirming, Judge Sentelle concluded that the political question doctrine also would bar plaintiffs' claims. Antolok, 873 F.2d at 379-84 (opinion of Sentelle, J.).[11/]

Judge Sentelle determined that "the decision of the political branches expressed in the Compact negotiated and entered by the Executive and approved by the Legislative Branch is within the area of foreign relations committed by the Constitution to the political branches." Id. at 381. Citing the U.S. Constitution, art. II, §§ 2 and 3, Judge Sentelle observed that "nowhere does the Constitution contemplate the participation by the third, non-political branch, that is the Judiciary, in any fashion in the making of international agreements or the recognition of foreign governments." Id. Judge Sentelle concluded, therefore, "that this is one of those areas of foreign relations textually committed to the political branches to the exclusion of the Judiciary." Id.; see also United States v. Belmont, 301 U.S. 324, 330 (1937) (only "the Executive had authority to speak as the . . . organ of the [United States] government," when settling claims arising out of the Soviet Union's nationalization of the insurance industry and recognizing the U.S.S.R. government); United States v. Pink, 315 U.S. 203, 229 (1942) (the power to recognize the Soviet government necessarily implies in the President the "[p]ower to remove such obstacles to full recognition as settlement of claims . . . the delicate problems of foreign relations requires no less").

By entertaining the Plaintiffs' challenge to the Compact and Section 177 Agreement, this Court necessarily would invade the sphere of the Executive and Legislative branches "to make the determination that they were wrong, and it is against that very invasion that the political question doctrine protects the political realm from judicial invasion." Antolok, 837 F.2d at 383. This action, therefore, should be dismissed under the political question doctrine because there is

---

[11/] Chief Judge Wald and Circuit Judge Starr did not join in Circuit Judge Sentelle's opinion on the political question doctrine. However, Chief Judge Wald, in her opinion concurring in the judgment, wrote that she also would have found that the court did not have jurisdiction to hear claims challenging the adequacy of the settlement fund established pursuant to the Section 177 Agreement, as discussed infra Part IV.F. See Antolok, 873 F.2d at 392–93.

"a textually demonstrable constitutional commitment of the issue to a coordinate political department." Baker, 369 U.S. at 217.

**2. It Would Be Impossible for the Court to Independently Resolve the Issues Without Expressing a Lack of Respect Due Coordinate Branches of Government, and Without Potentially Causing Embarrassment from Multifarious Pronouncements by Various Departments on One Question.**

This action also should be dismissed because it would be impossible to resolve the issues raised without showing a lack of respect due both the Executive and Legislative branches of government (the fourth Baker factor). Additionally, this action potentially would cause embarrassment from multifarious pronouncements by various departments of government on one question (the sixth Baker factor). See Baker, 369 U.S. at 217; see also Schroder v. Bush, 263 F.3d 1169, 1174-75 (10th Cir. 2001) (applying the political question doctrine where "multifarious pronouncements by various departments" of government would lead to confusion and disarray, were the court to make policy decisions in a subject area devoid of judicially discoverable standards). These factors are particularly applicable in this case, because Article IX of the Section 177 Agreement provides an avenue for presenting a request to Congress for its consideration. Indeed, the RMI has availed itself of that avenue.

Allowing this action to go forward would express disrespect for both the Legislative and Executive branches of government. It would signal to Congress this Court's belief that Congress will not appropriately act upon the Marshall Islands' changed circumstances request. Moreover, allowing this action to go forward would express disrespect for the prior Administration and Congress that negotiated, entered into, and enacted the Compact, the Section 177 Agreement, and the Compact Act. The fourth Baker factor, therefore, mandates dismissal.

Moreover, permitting this action to go forward would create a significant risk of "multifarious pronouncements by various departments" of government on one question, because the Marshall Islands' Changed Circumstances Request remains pending before Congress. Thus, this Court may render a decision that directly conflicts with Congress' disposition of the Changed Circumstances Request, causing confusion, embarrassment, and more litigation. This action,

therefore, should be dismissed pursuant to the sixth Baker factor. See Baker, 369 U.S. at 217; see also Nixon v. United States, 506 U.S. 224, 252-53 (1993) (Souter, J., concurring in the judgment) (action seeking declaratory judgment that the Senate unconstitutionally failed to give a full evidentiary hearing in impeachment proceedings was properly dismissed under the political question doctrine because of the "potentiality of embarrassment from multifarious pronouncements by various departments on one question," among other factors (quoting Baker, 369 U.S. at 217)).

Because the proprietary of international agreements, such as the Compact and Section 177 Agreement that Plaintiffs challenge, falls within the discretion of Congress and the Executive Branch, this action raises a political question and must be dismissed. Moreover, if not dismissed, it would be impossible to decide the issues presented without showing a lack of respect for both Congress and the Executive Branch, and there is a real risk of causing embarrassment from multifarious decisions.

**E. Plaintiffs' Claims Are Barred by the Statute of Limitations, 28 U.S.C. § 2501**

This action also should be dismissed because Plaintiffs' claims are barred by the six-year statute of limitations. See 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."); see also Peter, 6 Cl. Ct. at 773-75 (1984) (dismissing takings claim brought by residents or former residents of Enewetak Atoll based on running of statute of limitations). "In the Court of Federal Claims, the statute of limitations 'is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.'" MacLean v. United States, 454 F.3d 1334, 1336 (Fed. Cir. 2006) (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir.1988)).

**1. Count I, Unlawful Taking of Enewetak Atoll, Is Barred by the Applicable Statute of Limitations.**

Plaintiffs assert in Count I that the United States totally or partially took the Enewetak Atoll from December 1947 to October 1980, and continues to deprive Plaintiffs of certain islands in the atoll. See Am. Compl. ¶¶ 171-176. This count asserts the same takings claim that the Enewetak plaintiffs brought against the United States in the Court of Claims in 1982. Compare Am. Compl. ¶¶ 171-78 with Ex. 1 ¶¶ 72-80 (Count I in Peter). The Claims Court previously dismissed this same takings claim because it was untimely filed in 1982, and it should be dismissed again on the same ground.

The Claims Court held in 1984, when dismissing Plaintiffs' takings claim, that "[f]or purposes of application of the statute of limitations, in a claim for just compensation for a taking, August 22, 1958, must be the 'taking date' of Enewetak Atoll . . . ." Peter, 6 Cl. Ct. at 775 (citing generally United States v. Dickinson, 331 U.S. 745 (1947)). On that date, "the President announced a suspension of further atmospheric testing of nuclear weapons." Id. at 771, 775. The court in Peter concluded, therefore, that "[b]y that date, the consequences [of the nuclear testing program] were manifest and the harm to plaintiffs' property had occurred." Id. at 775. Thus, Plaintiffs' claim alleging a taking of the Enewetak Atoll should have been brought by August 22, 1964. By 1982, when the prior litigation was filed, this claim was filed 18 years beyond the running of the statute of limitations, and in 2006 it was filed 42 years late. Count I, therefore, must be dismissed as untimely pursuant to 28 U.S.C. § 2501.

Moreover, Plaintiffs should be collaterally estopped from relitigating the date upon which their taking claim accrued. It is a bed-rock principle that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (citations omitted). Collateral estoppel, or issue preclusion, "operate[s] to prevent the relitigation of a claim or issue that has already had its

day in court." Lakewood Assocs. v. United States, 45 Fed. Cl. 320, 335 (1999). Simply put, "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 153-54.

As the Federal Circuit has recognized, collateral estoppel applies where:

> (I) the issue previously adjudicated is identical with that now presented, (ii) that issue was "actually litigated" in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action.

Kroeger v. U.S. Postal Serv., 865 F.2d 235, 239 (Fed. Cir. 1988) (quoting Thomas v. Gen. Servs. Admin., 794 F.2d 661, 664 (Fed. Cir. 1986)); accord Mother's Rest., Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983); see also Klump v. United States, 38 Fed. Cl. 243, 247 (1997) (finding that issues resolved by an administrative court estopped plaintiff from relitigating those issues before the Court of Federal Claims). In the instant case, these four requirements are met, barring Plaintiffs from relitigating when their taking claim accrued.

First, in Peter the Claims Court previously held that Plaintiffs' taking claim accrued in 1958. Peter, 6 Cl. Ct. at 775. "By that date, the consequences were manifest and the harm to plaintiffs' property had occurred." Id. Second, this issue plainly was "actually litigated," as the Plaintiffs argued that their taking claim did not accrue until 1980 "when the Enewetak people were permitted to return to the atoll."[12/] Peter, 6 Cl. Ct. at 774. On the other hand, the United States argued that their taking claim accrued, "if at all, either in December 1947 when the removal substantially disturbed the people's use and enjoyment of the atoll, or on June 20, 1957, with the execution of the Use and Occupancy Agreement, [which] . . . gave the United States the right to use the atoll indefinitely. . . ." Id. The court considered but rejected both arguments,

---

[12/] Of course, even if Plaintiffs could argue that their claim accrued in 1980, as they did in Peter, the instant action still would be long time-barred.

finding, as noted above, that the Plaintiffs' taking claim accrued in 1958. Peter, 6 Cl. Ct. at 775.

Third, resolution of the date of accrual patently is necessary to determine whether a claim is barred by the statute of limitations under 28 U.S.C. § 2501, which begins to run when the "claim first accrues." Finally, as in this case, the Plaintiffs in Peter brought that action on their own behalf and on behalf of a purported class consisting of the people of Enewetak. See Am. Compl. ¶¶ 13-14; see also Peter, 6 Cl. Ct. at 769. As noted above, 12 of the 17 named Plaintiffs in this action were named in the complaint filed in Peter. See note 9, supra. Plaintiffs, therefore, were fully represented in Peter.

Accordingly, because all four requirements for collateral estoppel are met, Plaintiffs should be estopped from relitigating when their taking claim accrued. That claim accrued in 1958, and is barred by the six-year statute of limitations.

**2. Plaintiffs' Breach of Implied-in-Fact Contract Claim (Count II) Is Barred by the Statute of Limitations.**

In Count II, Plaintiffs allege that the United States "breached and continues to breach" an implied-in-fact contract with the Enewetak people by failing "to supply needed food, shelter, and other supplies during their residence on Ujelang . . . by failing to return Enewetak Atoll to them in its original condition or to compensate [Plaintiffs] for the damages to its economy and for various kinds of long-term and permanent physical and radiological damage . . . ." Am. Compl. ¶ 196; see also Peter, 6 Cl. Ct. at 776. Plaintiffs assert in this action the same breach of implied-in-fact contract claim that they asserted in 1982. Cf. Am. Compl. ¶¶ 182-97 with Ex. 1 ¶¶ 82-96 (Count II in Peter). While the Claims Court found that the Plaintiffs timely asserted their breach of implied-in-fact contract claim in 1982, certainly it was untimely when filed again in 2006, 24 years later.

It is beyond dispute that the Plaintiffs' breach of implied-in-fact contract claim had matured by the time they filed their initial Complaint in 1982. Most likely, it had ripened some time before then, because a "claim on an implied contract with the United States is held to accrue

'when it can be definitely ascertained and set up, when all that is required of him by the terms of the contract has been fulfilled by the contractor.'" Kabua v. United States, 546 F.2d 381, 384 (Ct. Cl. 1976) (quoting Steel Improvement & Forge Co. v. United States, 355 F.2d 627, 630 (Ct. Cl. 1966). As with an express contract, a cause of action accrues on an implied contract when the plaintiff has "completely performed its obligations under the contract." Steel Improvement, 355 F.2d at 630. Arguably, the Enewetak people performed their obligations under any implied contract, and their implied-in-fact contract claim accrued, in December 1947, when they agreed to be removed from Enewetak to Ujelang. See Am. Compl. ¶ 188. Nevertheless, assuming for the purposes of this motion that Plaintiffs implied-in-fact contract claim accrued on September 15, 1982, when they first brought this claim in Peter, then it expired by September 15, 1988.

Accordingly, Plaintiffs brought their breach of implied-in-fact contract claim nearly 18 years beyond the running of the statute of limitation, and it should be dismissed pursuant to 28 U.S.C. § 2501.

**3. Plaintiffs' Claims in Counts III - VI Accrued Upon the Enactment of the Compact of Free Association Act in 1986 and, Therefore, Are Untimely.**

In Counts III and IV, Plaintiffs allege that the United States took their taking and implied contract claims by failing to adequately fund the Nuclear Claims tribunal so it could pay Plaintiffs' awards. See Am. Compl. ¶¶ 200-03, 206-07. In support of these Counts, Plaintiffs allege that, in Section 177(a) of the Compact, the United States accepted responsibility for compensating the citizens of the Marshall Islands for damages arising out of the nuclear testing program.[13/] See Am. Compl. ¶¶ 108, 200. Pursuant to the Compact and the subsidiary Section 177 Agreement, the United States agreed to pay $150 million to settle all claims arising from the nuclear testing program. See id. ¶¶ 108-110, 200-201. Plaintiffs, therefore, are attacking in these Counts the United States' decision to enter into the Compact and Section 177 Agreement, which

[13/] Count IV in Plaintiffs' Amended Complaint formerly was combined with Count III in their initial Complaint. Thus, the factual allegations asserted in Count III are incorporated by reference and apply in Count IV.

were approved by Congress in the Compact of Free Association Act on January 14, 1986, and became effective by a Presidential proclamation dated November 3, 1986. See Am. Compl. ¶ 38. Plaintiffs identify no other United States government action in Counts III and IV.

In Counts V and VI, Plaintiffs allege that "[t]he Compact agreements constitute a taking of Enewetak Atoll . . .," and "[t]he Compact agreements constitute breaches of fiduciary obligations . . . ." See Am. Compl. ¶¶ 210, 214. As are Counts III and IV, Counts V and VI plainly are based upon the U.S. government's 1986 decision to enter into the Compact agreements.

Because the U.S. government action complained of by Plaintiffs in Counts III through VI became effective on November 3, 1986, these claims are untimely and should be dismissed. See Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478 (Fed. Cir. 1994). In Alliance, the United States and Mexico had entered into an agreement in 1941 providing for the final settlement of claims of both Mexicans and Texans for land along the border between these countries. See Alliance, 37 F.3d at 1480. "Under the 1941 Treaty, Mexico and the United States released one another from all liability from land grant claims. . . ." Id. The United States and Mexico reciprocally cancelled and declared "satisfied all claims, of whatsoever nature, of nationals of each country against the Government of the other . . . ." Id. While the United States satisfied the claims of its citizens, "Mexico ha[d] not satisfied the claims of its nationals." Id. In 1989, Mexico determined that it would not compensate claimants under the 1941 Treaty. Id. at 1481. Heirs and descendants of the original Mexican grantees then brought suit in 1990 against the United States in the Court of Federal Claims, alleging a taking of their Texas land grant claims. Id. The Court of Federal Claims granted the United States' motion for summary judgment, finding that the claimants did not satisfy the statute of limitations, and the Federal Circuit affirmed. Alliance, 37 F.3d at 1481, 1483.

In Alliance, the claimants alleged that the United States took their "property interest in a legal cause of action." Id. at 1481. The Federal Circuit held that the plaintiffs' claims accrued in

April 1942, the effective date of the Treaty that by its terms released the United States from all claims from Mexican citizens. Id. at 1482. Although Mexico declined to pay compensation on the plaintiffs' claims in 1989, that "event . . . does not affect the accrual date of claimants' claim." Id. Noting that the Fifth Amendment requires that the United States, not a foreign sovereign, commit the taking action, the Alliance court found that United States' ratification of the 1941 Treaty extinguishing all claims of Mexican nationals "alone satisfies the axiomatic requirement that the United States itself must undertake specific action alleged to take private property." Id. Mexico's decision to forgo payment "created no liability for the United States." Id.

Here, Plaintiffs' claims asserted in Counts III through VI accrued no later than November 3, 1986, when the President declared the Compact to be in effect (see note 4, supra), and they expired six years later on November 3, 1992. By November 3, 1986, any claims arising out of the nuclear testing program that Plaintiffs may have had against the United States were extinguished. Like in Alliance, this "action alone satisfies the axiomatic requirement that the United States itself must undertake specific action alleged to take private property." Alliance, 37 F.3d at 1482. Plaintiffs fail to identify in their complaint any subsequent action by the United States that could create liability. Accordingly, Plaintiffs' claims in Counts III through VI expired on November 3, 1992, and should be dismissed under 28 U.S.C. § 2501.[14/]

---

[14/] To circumvent the statute of limitations, Plaintiffs may argue that the United States continued to breach an implied-in-fact contract. However, any implied-in-fact contract that may have existed between the United States and the people of Enewetak was terminated in 1986 by the Compact agreements. As the Federal Circuit explained in Alliance when rejecting the plaintiffs' implied-in-fact contract argument in that case, "[a]n implied-in-fact contract with the Government requires: (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance." Alliance, 37 F3d at 1483 (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)). Because the "Treaty itself explicitly exempted the United States from 'any and all liability' for these claims," the Alliance court found no evidence of an implied-in-fact contract with the Mexican claimants. Id. Similarly, because the Compact and Section 177 Agreement explicitly settle all claims against the United States, "past, present and future," that are "based upon, arise out of, or are in any way related to the Nuclear Testing Program," there plainly is no "mutuality of intent to contract" with the people of Enewetak. Ex. 2 at 12 (Section 177 Agreement art. X). Plaintiffs, therefore, cannot credibly argue that the United States continued to breach any implied-in-fact contract.

Plaintiffs erroneously allege in Counts V and VI that their claims did not accrue until January 24, 2005, when the Administration submitted a "Report Evaluating the Request of the Government of the Republic of the Marshall Islands presented to Congress of the United States." See Am. Compl. ¶¶ 166, 211, 215. First, the Court should give no weight to this legal conclusion asserted in the complaint, because "legal conclusions, deductions, or opinions couched as factual allegations [in a complaint] are not given a presumption of truthfulness." Figueroa, 57 Fed.Cl. at 497 (quoting Blaze Constr., Inc. v. United States, 27 Fed.Cl. 646, 650 (1993)) (internal quotation marks omitted). Second, that January 24, 2005 report was prepared upon the request of the Senate Energy and Natural Resources Committee and House Resources Committee, and is not a final government decision. See Am. Compl. ¶¶ 165-68. Otherwise, there would have been no need for the hearing held subsequently on July 19, 2005, regarding the Marshall Island's Changed Circumstances Request (see Am. Compl. ¶ 167), and the Request would not continue to remain pending before Congress.

Indeed, under Plaintiffs' theory of claim accrual, their claims in Counts V and VI actually would not be ripe, because there has been no final government decision on the Marshall Island's Changed Circumstances Request. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-94 (1985) (a claim that a government regulation effects a taking of property is not ripe until the government agency implementing the regulation has reached a final decision on the application of the regulation to the property at issue). To the contrary, Plaintiffs' claims accrued when the Compact Act took effect on November 3, 1986, and they expired on November 3, 1992.

Because Plaintiffs' claims asserted in Counts III through VI expired in 1992, they were untimely filed and should be dismissed under 28 U.S.C. § 2501.

### F. In the Alternative, Plaintiffs Fail To State a Claim in Counts III through VI upon which Relief May Be Granted

As discussed above in Part IV.E.3., Plaintiffs' allegations in Counts III through VI hinge upon the United States' entry into the Compact agreements twenty years ago, in 1986. Plaintiffs,

however, fail to allege in their takings claims (Counts III-V) the occurrence of any federal Government act since 1986 that has deprived them of any property interest. Moreover, in Count VI, Plaintiffs fail to allege any facts that have occurred since 1986 that could potentially support their claim that the United States breached fiduciary duties arising from an implied-in-fact contract. Counts III through VI, therefore, also should be dismissed pursuant to RCFC 12(b)(6), because they fail to state a claim upon which relief may be granted.

The Federal Circuit has developed a two-part test to determine whether a taking has occurred. See Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citing Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003). First, "the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment." Am. Pelagic, 379 F.3d at 1372; see also Adams v. United States, 391 F.3d 1212, 1218 (Fed. Cir. 2004). If the court identifies a valid property interest, then "the court must determine whether the **governmental action** at issue amounted to a compensable taking of that property interest." Am. Pelagic, 379 F.3d at 1372 (emphasis added); see also Adams, 391 F.3d at 1218. Any takings claim against the United States must be based upon acts of the Federal Government. See Applegate v. United States, 35 Fed.Cl. 406, 422 (1996); see also Blue v. United States, 21 Cl.Ct. 359, 362-63 (1990); Correlated Dev. Corp. v. United States, 556 F.2d 515, 522-25 (Ct. Cl. 1977); D.R. Smalley & Sons, Inc. v. United States, 372 F.2d 505, 507 (Ct. Cl. 1967) (citing Horowitz v. United States, 267 U.S. 458, 461 (1925)). For the purposes of this motion only, the United States assumes that the Plaintiffs allege a cognizable property interest that would satisfy the first prong of this two-part test. The Plaintiffs, however, fail to allege in Counts III through V any Federal Government action that deprived them of any property interest.

In D.R. Smalley, the Court of Claims refused to hold the United States liable for a taking where it funded a highway construction project, approved the plans, and inspected and approved the work. D.R. Smalley, 372 F.2d at 507-08. The plaintiff in D.R. Smalley, a contractor, allegedly lost money on the project in Ohio because the State failed to timely obtain rights-of-

way, remove obstructions, and required plaintiff to perform work under adverse conditions. Id. at 506. Plaintiff alleged that the State was an agent of the federal government and that the United States, therefore, was liable for depriving it of its property without just compensation, among other claims. D.R. Smalley. 372 F.2d at 507-08. The Court of Claims rejected the plaintiff's argument that the State was an agent of the United States, finding that the federal government's sovereign acts, including funding the highway project and ensuring compliance with government standards, did not make the state its agent. Id. Unable to attribute the acts of the State of Ohio to the United States, plaintiff failed to

> allege a single affirmative act on the part of [the United States] that deprived it of any of its property nor that interfered with or disturbed its property rights in any way. Without such allegations, plaintiff cannot recover damages from the [United States on a takings theory].

Smalley, 372 F.2d at 508; see also Correlated Dev. Corp., 556 F.2d at 523 (United States not liable for a taking where it provided funds for housing project).

Moreover, in her concurring opinion in Antolok, Chief Judge Wald of the D.C. Circuit agreed with the majority that the "court is precluded from inquiring into the adequacy of the settlement." Antolok, 873 F.2d at 392. She noted that, "under the Compact it is the Marshall Islands Government that must protect the interests of its residents." Id. Therefore, "any dispute as to the adequacy of the settlement must be recognized as in substance a dispute between the plaintiffs and their own government." Id. United States courts would not have jurisdiction over such disputes, because they "lack[] the authority to inquire into the adequacy of another government's representation of its own people, and because the United States Government cannot in any event be held responsible for another government's failings." Id. Chief Judge Wald could find no basis for the court to "scrutinize international agreements and inquire into the adequacy of the consideration given to foreign states." Antolok, 873 F.2d at 392-93. Chief Judge Wald concluded by noting that any inquiry into the adequacy of the settlement reached in the Section 177 Agreement would require the court to try the lawsuit, defeating the whole point

of the espousal.[15] Antolok, 873 F.2d at 393.

As discussed above in Part IV.E.3., in an apparent attempt to circumvent the six-year statute of limitations, Plaintiffs allege that the government refused to fund the Nuclear Claims Tribunal in a January 2005 report submitted to Congress. See Am. Compl. ¶ 211. However, as noted above, that report merely was an evaluation by the Administration that Congress requested in connection with its consideration of the RMI's Changed Circumstances Request under Article IX of the Section 177 Agreement. The January 2005 report, therefore, falls far short of an affirmative federal act that deprives Plaintiffs of any property interest. Other than entering into the bi-lateral agreements with the Republic of the Marshall Islands in 1986, Plaintiffs fail to identify any affirmative act by the United States that could result in a taking.

Plaintiffs, here, cannot avoid the fact that their own government agreed to the amounts specified in the Compact agreements. See Am. Compl. ¶ 109. As Chief Judge Wald makes clear, if Plaintiffs have any viable claim, it is against their own government. Because Plaintiffs fail to identify any affirmative act by the United States that could result in a taking, Counts III through V should be dismissed pursuant to Rule 12(b)(6).

As discussed above in Part IV.E.3., any implied-in-fact contract that may have existed between the United States and the people of Enewetak was terminated in 1986 by the Compact agreements. Because Plaintiffs fail to allege any facts that potentially support the finding of the formation, and breach, of a post-1986 implied-in-fact contract between the United States and Plaintiffs, Count VI also should be dismissed pursuant to Rule 12(b)(6).

---

[15] Without identifying it, Chief Judge Wald apparently is referring to the "act of state" doctrine, which counsels that United States courts "will not sit in judgment on the acts . . . of another [country] done within its own territory." See Antolok, 873 F.2d at 384 n.11 (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 416 (1964) (internal quotation marks omitted). The act of state doctrine, like the political question doctrine, "is grounded in concerns that application of customary principles of law to judge the acts of a foreign sovereign might frustrate the conduct of foreign relations by the political branches of government." Id. (quoting Millen Indus. v. Coordination Council for N. Am. Affairs, 855 F.2d 879, 882 (D.C. Cir. 1988) (internal quotation marks omitted). If this Court determines that Plaintiffs' action calls into question the actions of the RMI, the act of state doctrine provides another basis to dismiss this action.

"An implied-in-fact contract with the Government requires: (1) mutuality of intent to contract; (2) consideration; and (3) lack of ambiguity in offer and acceptance." Alliance, 37 F3d at 1483 (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)). Plaintiffs do not assert any post-1986 facts that show the existence of any of these elements of an implied-in-fact contract. While "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff[,] . . . conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Figueroa, 57 Fed. Cl. at 497 (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)) (internal quotation marks and other citations omitted). Because Plaintiffs fail to allege any facts that support their claim that the United States breached a fiduciary duty created by an implied-in-fact contract, Count VI should be dismissed.

## V. CONCLUSION

Because the United States has withdrawn subject matter jurisdiction from all courts in the United States over all claims, past, present and future, arising out of or in any way related to the nuclear testing program in the Marshall Islands, this action must be dismissed. Additionally, this action must be dismissed under the political question doctrine, because it calls into question the propriety of the agreement between the United States and the Republic of the Marshall Islands resolving all claims in any way related to the nuclear testing program. This suit also must be dismissed because it was not timely filed under 28 U.S.C. § 2501. Finally, and in the alternative, Counts III through VI also must be dismissed because they fail to state a claim upon which relief may be granted.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

s/ Bruce K. Trauben
BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel.: (202) 305-0238
Fax: (202) 305-0267/0506
E-mail: bruce.trauben@usdoj.gov

Attorney for Defendant

Of Counsel:

KATHRYN A. BLEECKER
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-6288

Dated: September 18, 2006
//352523.1