# Agreement Between
# the Government of the United States and the Government of the Marshall Islands for the Implementation of Section 177 of the Compact of Free Association

DEFENDANT'S EXHIBIT 2

Agreement Between
the Government of the United States and
the Government of the Marshall Islands for
the Implementation of Section 177 of the
Compact of Free Association

TABLE OF CONTENTS

Preamble....................................................Pg. 1

Article I.....The Fund........................................Pg. 2

Article II....Distribution of Annual Proceeds..............Pg. 3

Article III...Distribution Authority.........................Pg. 7

Article IV....Claims Adjudication Process...................Pg. 8

Article V.....Tax Provisions..................................Pg. 9

Article VI....Resettlement of Bikini Atoll and
Conveyance of Property in respect to
Bikini Atoll and Enewetak Atoll..............Pg. 10

Article VII...Utilization of Lands...........................Pg. 11

Article VIII..Northern Marshall Islands
Radiological Survey...........................Pg. 11

Article IX....Changed Circumstances..........................Pg. 11

Article X.....Espousal........................................Pg. 12

Article XI....Indemnity.......................................Pg. 12

Article XII...United States Courts...........................Pg. 13

Article XIII..Administrative Provisions.....................Pg. 13

Appendix A....U.S. Public Law

Agreed Minutes..........................................A-1

## Article I

## The Fund

Section 1 - Creation

In fulfillment of its obligations under Section 177 of the Compact, the Government of the United States shall provide to the Government of the Marshall Islands, on the effective date of this Agreement, the sum of $150 million to create a fund (the Fund).

Section 2 - Management

In furtherance of the desire of the Government of the Marshall Islands to provide, in perpetuity, a means to address past, present and future consequences of the Nuclear Testing Program:

(a) The Government of the Marshall Islands shall cause the Fund to be invested with the performance goal of producing for each year of the existence of the Fund average annual proceeds of at least $18 million (Annual Proceeds) for disbursement in accordance with this Agreement.

(b) The Government of the Marshall Islands, in order to achieve the performance goal of the Fund, shall retain as trustee and manager of the Fund (Fund Manager) an United States investment management company which has demonstrated substantial experience in the administration of trusts and which has funds under management in excess of $1 billion. The Fund Manager shall make disbursements in accordance with the provisions of this Agreement to the designated recipients in the name of "The Republic of the Marshall Islands Nuclear Claims Fund".

(c) The Fund shall be invested in bonds, notes and other instruments of investment grade and of United States nationality, including both debt and equity issues, common or preferred stocks, money market funds, certificates of indebtedness and mutual funds. The Government of the United States shall impose no transaction fee or intermediary charge on the investment of the Fund in instruments of the Government of the United States.

(d) Except as may be otherwise required by this Agreement and to achieve its desire to provide a perpetual means of addressing the special needs and unique circumstances of the people of the Marshall Islands resulting from the Nuclear Testing Program, the Government of the Marshall Islands shall not permit nor shall the Fund Manager make disbursements from the Fund.

(e) For purposes of taxation only, the trust into which the Fund is placed pursuant to this Article shall be deemed to be a charitable trust under the laws of the United States and the Republic of the Marshall Islands.

## Article II

## Distribution of Annual Proceeds

The Fund Manager shall disburse Annual Proceeds in accordance with Article III of this Agreement and as follows:

### Section 1 - Health, Food, Agricultural Maintenance and Radiological Surveillance

(a) $30 million to the Government of the Marshall Islands, to be disbursed in annual amounts of $2 million for the 15-year period commencing one calendar quarter after the effective date of this Agreement. The Government of the Marshall Islands shall use these sums to obtain technical assistance, on a reimbursable basis, from the United States Public Health Service and other agencies of the Government of the United States. The Government of the United States shall provide such technical assistance including United States contractor services to assist the Government of the Marshall Islands to include, in its health-care system, health-care programs and services related to consequences of the Nuclear Testing Program and contemplated in United States Public Law 95-134 and United States Public Law 96-205. Such technical assistance shall be obtained in accordance with Section 226 of the Compact, the provisions of the Federal Programs and Services Agreement and such separate implementing agreements as may from time to time be concluded. Such technical assistance shall, at the request of the Government of the Marshall Islands, include a whole body counter and the training of its operator. The whole body counter shall be located in a suitable facility chosen and supplied by the Government of the Marshall Islands. The Technical assistance provided for in this subsection may include professional personnel services and dosimetry and bioassay services.

(b) Annual disbursements specified in this Section are in addition to the funds referred to in Sections 211(a)(3), 216(a)(2) and 221(b) of the Compact, which may also be expended by the Government of the Marshall Islands to provide its citizens with health-care programs and services elated to consequences of the Nuclear Testing Program.

(c) The Government of the Marshall Islands may dedicate any part of the annual disbursements specified in this Section to the

financing, including matching financing, of other related health-care and research programs and services of the Government of the United States which are otherwise available to the Government of the Marshall Islands.

(d) At the request of the Government of the Marshall Islands, the Government of the United States shall provide technical assistance, programs and services, on a reimbursable basis, to continue the planting and agricultural maintenance program on Enewetak and to continue the food programs of the Bikini people and the Enewetak people for as long as such technical assistance, programs and services may be required. Such technical assistance, programs and services shall be obtained in accordance with Section 226 of the Compact, the provisions of the Federal Programs and Services Agreement and such separate implementing agreements as may from time to time be concluded.

(e) $3 million to the Government of the Marshall Islands for the purpose of conducting medical surveillance and radiological monitoring activities, to be disbursed in average annual amounts of $1 million for the three-year period commencing on the effective date of this Agreement. The results of such medical surveillance and radiological monitoring activities shall be filed with the Claims Tribunal referred to in Article IV of this Agreement.

Section 2 - People of Bikini

$75 million to the Bikini Distribution Authority referred to in Article III of this Agreement, in payment of claims arising out of the Nuclear Testing Program for loss or damage to property and person of the people of Bikini, to be disbursed in quarterly amounts of $1.25 million for the 15-year period commencing one calendar quarter after the effective date of this Agreement, and which shall be distributed, placed in trust or otherwise invested as the Bikini Distribution Authority may determine consistent with this Agreement.

Section 3 - People of Enewetak

$48.75 million to the Enewetak Distribution Authority referred to in Article III of this Agreement, in payment of claims arising out of the Nuclear Testing Program for loss or damage to property and person of the people of Enewetak, to be disbursed in quarterly amounts of $812,500 for the 15-year period commencing one calendar quarter after the effective date of this Agreement, and which shall be distributed, placed in trust or otherwise invested as the Enewetak Distribution Authority may determine consistent with this Agreement.

Section 4 - People of Rongelap

$37.5 million to the Rongelap Distribution Authority referred to in Article III of this Agreement, in payment of claims arising out of the Nuclear Testing Program for loss or damage to property and person of the people of Rongelap, to be disbursed in quarterly amounts of $625,000 for the 15-year period commencing one calendar quarter after the effective date of this Agreement, and which shall be distributed, placed in trust or otherwise invested as the Rongelap Distribution Authority may determine consistent with this Agreement.

Section 5 - People of Utrik

$22.5 million to the Utrik Distribution Authority referred to in Article III of this Agreement, in payment of claims arising out of the Nuclear Testing Program for loss or damage to property and person of the people of Utrik, to be disbursed in quarterly amounts of $375,000 for the 15-year period commencing one calendar quarter after the effective date of this Agreement, and which shall be distributed, placed in trust or otherwise invested as the Utrik Distribution Authority may determine consistent with this Agreement.

Section 6 - Claims Adjudication Funds

(a) $500,000 to the Government of the Marshall Islands to provide for the establishment of the Claims Tribunal, to be disbursed prior to the first anniversary of the effective date of this Agreement.

(b) $500,000 annually to the Claims Tribunal during the term of its existence for its operation, to be disbursed in quarterly amounts of $125,000 commencing one calendar quarter after the first anniversary of the effective date of this Agreement.

(c) $45.75 million to be made available to the Claims Tribunal as necessary for whole or partial payment of monetary awards made by the Claims Tribunal pursuant to Article IV of this Agreement, to be disbursed in annual amounts of up to $2.25 million for the 3-year period commencing on the effective date of this Agreement, and in annual amounts of up to $3.25 million for the 12-year period commencing on the third anniversary of the effective date of this Agreement.

Section 7 - Other Disbursements

(a) In the event that Annual Proceeds are not sufficient to meet the disbursement schedules set forth in Sections 1 through 6 of this Article, disbursements shall be made from the Fund on an annual basis to supplement Annual Proceeds in the amount of the difference.

(b) All monetary awards made by the Claims Tribunal pursuant to Article IV of this Agreement shall be paid on an annual pro-rata basis from available funds until all such awards are paid in full. If, in any year, the annual amount made available pursuant to subsection 6(c) of this Article is not exhausted, the amount not required for that year shall remain in the Fund and shall be made available for disbursement in payment of monetary awards made by the Claims Tribunal in subsequent years.

(c) Commencing on the fifteenth anniversary of the effective date of this Agreement, not less than 75 percent of Annual Proceeds shall be available for disbursement in whole or partial payment of monetary awards made by the Claims Tribunal.

(d) Any Annual Proceeds which are not required for the disbursements set forth in Sections 1 through 6 and subsection 7(b) and 7(c) of this Article shall either be made a part of the Fund or be used by the Government of the Marshall Islands for other programs and services for the people of the Marshall Islands as their unique needs and circumstances resulting from the Nuclear Testing Program may require, including continuation of the technical assistance referred to in Section 1 of this Article, the operation of the Claims Tribunal, the survey and analysis of the radiological status of the Marshall Islands, and distributions to local government councils so that they may establish and maintain programs and services for their people as their unique needs and circumstances resulting from the Nuclear Testing Program may require.

Section 8 - Bikini, Enewetak, Rongelap and Utrik Trusts

In order to provide an additional long-term means to address consequences of the Nuclear Testing Program, the people of Bikini, Enewetak, Rongelap and Utrik shall each for their own benefit provide for the establishment of a trust funded with all or a portion of the Annual Proceeds they shall receive under this Agreement. Each trust shall be designed to provide a perpetual source of income for its respective recipients, and shall be developed in consultation with the Government of the Marshall Islands. The understandings reached shall, in consultation with

the Government of the United States, be appended to this Agreement as Agreed Minutes. The establishment of each trust in accordance with the applicable Agreed Minute is a condition to disbursement of Annual Proceeds by the Fund Manager to the respective distribution authorities.

## Article III

## Distribution Authority

### Section 1 - Designated Distribution Authorities

The local government council for Bikini/Kili, Enewetak/Ujelang, Rongelap and Utrik shall be the distribution authority for the people of Bikini, Enewetak, Rongelap and Utrik, respectively. Each distribution authority shall, as set forth in this Agreement, receive and distribute, invest, or otherwise expend Annual Proceeds.

### Section 2 - Additional Distribution Authorities

The Claims Tribunal may, from time to time, establish additional distribution authorities as it deems appropriate and necessary to carry out the intent of this Agreement.

### Section 3 - Disbursements and Recordation

(a) Distribution, investment and other expenditure of Annual Proceeds by a distribution authority shall be made in accordance with customary law and traditional practice of the Marshall Islands, the Constitution of the Republic of the Marshall Islands, and this Agreement.

(b) A distribution authority may assign its right to receive sums provided under this Agreement, provided that the assignment is consistent with this Agreement and provided that the distribution authority indemnifies and holds harmless the Fund Manager, the Government of the Marshall Islands and the Government of the United States for any claims arising from the assignment.

(c) Each distribution authority shall, for purposes of notification to the public and all interested parties regarding its determination and actions, deposit with the Claims Tribunal an accounting of its annual disbursements, within 120 days after the end of each Marshall Islands fiscal year. Such accounting shall include a list of the names of all individuals receiving payments and the amounts received, and state the amounts disbursed for every other purpose.

## Article IV

### Claims Adjudication Process

In furtherance of the desire of the Government of the Marshall Islands to provide an additional long-term means for compensating claims resulting from the Nuclear Testing Program:

Section 1 - Establishment and Operation of the Claims Tribunal

(a) The Government of the Marshall Islands, prior to the first anniversary of the effective date of this Agreement, shall establish a Claims Tribunal, in accordance with its constitutional processes and this Agreement. The Claims Tribunal shall have jurisdiction to render final determination upon all claims past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based on, arise out of, or are in any way related to the Nuclear Testing Program, and disputes arising from distributions under Articles II and III of this Agreement. This section confers in the Claims Tribunal no jurisdiction over the United States, its agents, employees, contractors, citizens or nationals with respect to claims of the Government, citizens or nationals of the Marshall Islands arising out of the Nuclear Testing Program.

(b) In the exercise of its jurisdiction, the Claims Tribunal shall be independent of the legislative and executive powers of the Government of the Marshall Islands.

(c) The Claims Tribunal shall have power to issue writs and other processes, make rules and orders and promulgate other procedural regulations, not inconsistent with the laws of the Marshall Islands and this Agreement, as may be required. Such power shall include the authority to make orders for the attendance of witnesses with or without documents, and to make orders for the disposal of exhibits.

(d) Members of the Claims Tribunal shall be persons qualified by education, experience and character to discharge judicial office, shall hold office during good behavior for a set term of at least three years, and shall be appointed pursuant to procedures adopted by the Government of the Marshall Islands in accordance with its constitutional processes.

(e) A member of the Claims Tribunal may be removed from office only pursuant to procedures adopted by the Government of the Marshall Islands in accordance with its constitutional processes and only on the ground of clear failure or inability faithfully to discharge the duties of such office or for the commission of treason, bribery, or other high crimes or abuses inconsistent with the authority of his office.

(f) No member of the Claims Tribunal shall take part in the decision of a claim as to which he has a conflict of interest or the appearance of a conflict of interest.

(g) The compensation of a Claims Tribunal member shall not be changed during his term of office.

Section 2 - Awards and Costs of the Claims Adjudication Process

In making any award, the Claims Tribunal shall take into account the validity of the claim, any prior compensation made as a result of such claim and such other factors as it may deem appropriate. Costs of proceedings before the Claims Tribunal shall be a charge on Annual Proceeds, subject to determination of the Claims Tribunal, the laws of the Marshall Islands and distributions made under Sections 1 through 6 of Article II of this Agreement. Such costs shall also include the cost of defending the Fund.

Section 3 - Governing Law

In determining any legal issue, the Claims Tribunal may have reference to the laws of the Marshall Islands, including traditional law, to international law and, in the absence of domestic or international law, to the laws of the United States.

Article V

Tax Provisions

Section 1 - Exemption from United States Taxation

The sums provided for in Articles I and II of this Agreement, and any earnings derived therefrom, shall not be subject to any form of taxation by the United States or its political subdivisions to the extent that those sums and any earnings derived therefrom remain intact in an institution in the United States. Distribution of those sums and any earnings derived therefrom to individuals or other entities shall not be a transaction taxable by the Government of the United States, but, after distribution, the earnings of such distributed funds shall not be entitled to the tax exemption provided in this Section.

Section 2 - Exemption from Marshall Islands Taxation

The sums provided for in Articles I and II of this Agreement and any distribution of those sums shall not be subject to taxation by the Government of the Marshall Islands, but, after dis-

tribution to individuals or other entities, the earnings of such distributed funds shall not be entitled to the tax exemption provided in this Section.

Section 3 - Other Exemptions

The exemptions provided pursuant to Sections 1 and 2 of this Article are without prejudice to any exemptions otherwise applicable.

Article VI

Resettlement of Bikini Atoll and Conveyance of Property in respect to Bikini Atoll and Enewetak Atoll

Section 1 - Resettlement

The Government of the United States reaffirms its commitment to provide funds for the resettlement of Bikini Atoll by the people of Bikini at a time which cannot now be determined.

Section 2 - Bikini Sunken Vessels and Cable

Pursuant to Section 234 of the Compact, any rights, title and interest the Government of the United States may have to sunken vessels and cable situated in the Bikini lagoon as of the effective date of this Agreement is transferred to the Government of the Marshall Islands without reimbursement or transfer of funds. It is understood that unexpended ordnance and oil remains within the hulls of such sunken vessels, and that salvage or any other use of these vessels could be hazardous. By acceptance of such right, title and interest, the Government of the Marshall Islands shall hold harmless the Government of the United States from loss, damage and liability associated with such vessels, ordnance, oil and cable, including any loss, damage and liability that may result from salvage operations or other activity that the Government of the Marshall Islands or the people of Bikini take or cause to be taken concerning such vessels or cable. The Government of the Marshall Islands shall transfer, in accordance with its constitutional processes, title to such vessels and cable to the people of Bikini.

Section 3 - Enewetak Cable

Pursuant to Section 234 of the Compact, any right, title and interest the Government of the United States may have to cable situtated in the Enewetak lagoon as of the effective date of this Agreement shall vest in the Government of the Marshall Islands without reimbursement or transfer of funds. By acceptance of

such right, title and interest, the Government of the Marshall Islands shall hold harmless the Government of the United States from loss, damage and liability associated with such cable and shall transfer, in accordance with its constitutional process, title to such cable to the people of Enewetak.

Article VII

Utilization of Lands

The Government of the United States is relieved of and has no responsibility for, and the Government of the Marshall Islands, consistent with its constitutional processes, shall have and exercise responsibility for, controlling the utilization of areas in the Marshall Islands affected by the Nuclear Testing Program. Assistance to the Government of the Marshall Islands from the Government of the United States in respect to the exercise of such responsibility by the Government of the Marshall Islands is set forth in full in this Agreement.

Article VIII

Northern Marshall Islands Radiological Survey

The Government of the United States has concluded that:

(a) The Northern Marshall Islands Radiological Survey and related environmental studies conducted by the Government of the United States represent the best effort of that Government accurately to evaluate and describe radiological conditions in the Marshall Islands; and

(b) The Northern Marshall Islands Radiological survey and related environmental studies have been made available to the Government of the Marshall Islands and can be used for the evaluation of the food chain and environment and estimating radiation-related health consequences of residing in the Northern Marshall Islands after 1978.

Article IX

Changed Circumstances

If loss or damage to property and person of the citizens of the Marshall Islands, resulting from the Nuclear Testing Program, arises or is discovered after the effective date of this Agreement, and such injuries were not and could not reasonably have

been identified as of the effective date of this Agreement, and if such injuries render the provisions of this Agreement manifestly inadequate, the Government of the Marshall Islands may request that the Government of the United States provide for such injuries by submitting such a request to the Congress of the United States for its consideration. It is understood that this Article does not commit the Congress of the United States to authorize and appropriate funds.

Article X

Espousal

Section 1 - Full Settlement of All Claims

This Agreement constitutes the full settlement of all claims, past, present and future, of the Government, citizens and nationals of the Marshall Islands which are based upon, arise out of, or are in any way related to the Nuclear Testing Program, and which are against the United States, its agents, employees, contractors and citizens and nationals, and of all claims for equitable or any other relief in connection with such claims including any of those claims which may be pending or which may be filed in any court or other judicial or administrative forum, including the courts of the Marshall Islands and the courts of the United States and its political subdivisions.

Section 2 - Termination of Legal Proceedings

The Government of the Marshall Islands shall terminate any legal proceedings in the courts of the Marshall Islands against the United States, its agents, employees, contractors and citizens and nationals, involving claims of the Government, citizens and nationals of the Marshall Islands, arising out of the Nuclear Testing Program and shall nullify all attachments or any judgments attained relating to such proceedings.

Article XI

Indemnity

Subject to Article IX, and in consideration for the payment of the amounts set forth in this Agreement, the Government of the Marshall Islands, on behalf of itself and its citizens and nationals, shall indemnify and hold harmless the United States, its agents, employees, contractors and citizens and nationals, from all claims set forth in Article X of this Agreement, and all

actions or proceedings which may hereafter be asserted or brought by or on behalf of the Government of the Marshall Islands, its citizens and nationals, in any court or other judicial forum based on, arising out of or in any way related to the Nuclear Testing Program. The amount of such indemnification shall not, in the aggregate, exceed $150 million, and the Government of the Marshall Islands shall use or cause the Fund, or other sums available to it, to be used as necessary to cover or satisfy the indemnification set forth in this Article.

Article XII

United States Courts

All claims described in Articles X and XI of this Agreement shall be terminated. No court of the United States shall have jurisdiction to entertain such claims, and any such claims pending in the courts of the United States shall be dismissed.

Article XIII

Administrative Provisions

Section 1 - Effective Date

This Agreement shall come into effect simultaneously with the Compact in accordance with Section 177 of the Compact.

Section 2 - Implementation

The Government of the Marshall Islands shall take all necessary steps, of a general or particular character, to ensure the conformity of its laws, regulations and administrative procedures with the provisions of this Agreement and the implementation of this Agreement in accordance with its terms.

Section 3 - Consultation

(a) The Government of the United States and the Government of the Marshall Islands shall consult at the request of either of them on matters relating to the provisions of this Agreement.

(b) The Government of the Marshall Islands may, from time to time, request from the Government of the United States assistance of an advisory nature with respect to the implementation of this Agreement, including the investment of the Fund in instruments of the Government of the United States and the establishment and operation of the Claims Tribunal. Such advisory assis-

tance shall be provided in accordance with the provisions of Section 226 of the Compact.

Section 4 - Amendment

This Agreement may be amended at any time by mutual consent of the Government of the United States and the Government of the Marshall Islands.

Section 5 - Duration

This Agreement shall remain in full force and effect until terminated or otherwise amended by mutual consent.

Section 6 - Definitions

(a) The Definition of Terms set forth in Article VI of Title Four of the Compact is incorporated in this Agreement.

(b) The term "citizens and nationals" of the Marshall Islands or the United States, as the case may be, includes:

(1) a natural person who is a citizen of the Marshall Islands or the United States, and

(2) a corporation or other legal entity which is organized under the laws of the Marshall Islands or the United States or any of its states or territories, the District of Columbia or the Commonwealth of Puerto Rico.

Agreement Between
the Government of the United States and
the Government of the Marshall Islands for
the Implementation of Section 177 of the
Compact of Free Association

Appendix A

To benefit and assist the people of the Marshall Islands with respect to consequences of the Nuclear Testing Program, the Government of the United States has provided assistance pursuant to the following statutes:

U.S. Public Law

| | |
|---|---|
| 88-485 | 95-465 |
| 94-34 | 96-126 |
| 94-367 | 96-205 |
| 95-26 | 96-514 |
| 95-74 | 96-597 |
| 95-134 | 97-100 |
| 95-348 | 97-257 |

Agreement Between
the Government of the United States and
the Government of the Marshall Islands for
the Implementation of Section 177 of the
Compact of Free Association

IN WITNESS WHEREOF, the undersigned, duly authorized, have signed this agreement which shall come into effect in accordance with its terms between the Government of the United States and the Government of the Marshall Islands.

DONE at Majuro, Marshall Islands, this 25th day of June, one thousand, nine hundred eighty-three.

FOR THE GOVERNMENT

OF

THE MARSHALL ISLANDS

- - - - -

FOR THE GOVERNMENT

OF

THE UNITED STATES OF AMERICA

A-1

AGREED MINUTES

Article II - Distribution of Annual Proceeds, People of Bikini: It is the understanding of the Government of the United States and the Government of the Marshall Islands that:

(a) The people of Bikini, acting through their local government council (the Bikini Distribution Authority), shall create the Bikini Claims Trust Fund (Bikini Fund), and shall appoint as trustee and manager of the Bikini Fund (Bikini Fund Manager) a United States investment manager with substantial experience in the administration of trusts and with funds under management in excess of $250 million. The Bikini Fund shall be invested in accordance with the guidelines set forth in Article I, Section 2(c) of this Agreement. The Bikini Fund shall provide for:

(1) invasion of corpus only in the event of an unforeseen natural disaster or other similar circumstance making it necessary to distribute corpus in order to prevent hardship to the people of Bikini;

(2) maximum invasion of three percent of corpus; and

(3) invasion of corpus no more frequently than once every three years.

(b) The Bikini Fund Manager shall be the designated recipient of the sums referred to in Article II, Section 2 of this Agreement.

(c) The Bikini Fund Manager shall distribute $600,000 of the quarterly amounts of $1.25 million set forth in Article II, Section 2 of this Agreement to the Bikini Distribution Authority, which shall disburse said sums in accordance with Articles II and III of this Agreement. The Bikini Fund Manager shall place the remaining $650,000 of such quarterly amounts in trust in the corpus of the Bikini Fund.

(d) The Bikini Fund Manager shall reinvest 65 to 85 percent of income earned by the Bikini Fund for the 15-year period commencing one calendar quarter after the first anniversary of the effective date of this Agreement, and shall reinvest 30 to 85 percent of income earned by the Bikini Fund for the period beginning one calendar quarter after the fifteenth anniversary of the effective date of this Agreement.

Article II - Distribution of Annual Proceeds, People of Enewetak: It is the understanding of the Government of the United States and the Government of the Marshall Islands that:

(a) The people of Enewetak, acting through their local government council (the Enewetak Distribution Authority), may elect to assign the payments specified in Article II, Section 3, of this Agreement to a financial institution in the United States in return for an equivalent sum representing the present value of such payments. For the purpose of this Agreed Minute, it is assumed that the equivalent sum payment will amount to $25 million or more. Such amount shall be distributed as follows:

(1) $10 million for the payment of claims arising out of the Nuclear Testing Program;

(2) $10 million from which the Enewetak Distribution Authority shall create the Enewetak Claims Trust Fund (Enewetak Fund), and shall appoint as trustee and manager of the Enewetak Fund (Enewetak Fund Manager) a United States investment manager with substantial experience in the administration of trusts and with funds under management in excess of $250 million. The Enewetak Fund shall be invested in accordance with the guidelines set forth in Article I, Section 2(c) of this Agreement. The Enewetak Fund Manager shall be the designated recipient of the sums referred to in Article II, Section 3 of this Agreement. Twenty to thirty percent of the income derived from the Enewetak Fund shall be added to the corpus of the Enewetak Fund each year, and the remainder distributed to those persons who are qualified, by traditional law and custom, to share in the payment for the claims arising out of the Nuclear Testing Program in accordance with a formula established by the Enewetak Distribution Authority consistent with this Agreement. The Enewetak Fund shall provide for:

i. invasion of corpus only in the event of an unforeseen natural disaster or other similar circumstance making it necessary to distribute corpus in order to prevent hardship to the people of Enewetak;

ii. maximum invasion of three percent of corpus; and

iii. invasion of corpus no more frequently than once every three years.

(3) $5 million to establish a trust, the income of which shall be used to continue the agricultural maintenance and food supplement programs now administered by the Government of the United States. The agricultural maintenance and food supplement trust shall continue until such time as the food supplement program is no longer necessary to ensure an adequate supply of food for the residents of Enewetak. In making this determination, the Enewetak Distribution Authority shall take into account the production of local foods, the availability of food from Ujelang, and the ability of members of the community to obtain imported foodstuffs. At that time, the Enewetak Distribution Authority may reduce or terminate the agricultural maintenance and food supplement program and use the principal and accumulated income for the payment of claims, as an addition to the Enewetak Fund, or for such other community purposes as the Enewetak Distribution Authority shall determine.

(b) In the event that the Enewetak Distribution Authority elects not to assign the payments for an equivalent sum payment as set forth in this Agreed Minute, then the payments provided for in Article II, Section 3 of this Agreement shall be paid to the people of Enewetak in the same manner, and invested and distributed in the same manner and in the same proportions, as the payments set forth in Article II, Section 2 of this Agreement.

<u>Article II - Distribution of Annual Proceeds, People of Rongelap</u>: (to be determined in consultation with the people of Rongelap in accordance with Section 8 of Article II of this Agreement).

<u>Article II - Distribution of Annual Proceeds, People of Utrik</u>: (to be determined in consultation with the people of Utrik in accordance with Section 8 of Article II of this Agreement).

<u>Article II - Distribution of Annual Proceeds</u>: All trusts created by the Distribution Authorities shall be established so as to provide a perpetual source of income for eligible recipients provided, however, that the creation of such trusts shall be consistent with the Rule Against Perpetuities.