**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **ISMAEL JOHN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. 06-289L** |
| v. ) | |
| ) | **Hon. Christine O.C. Miller** |
| **THE UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**

January 30, 2007

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0238

Counsel for The United States

Of Counsel:

KATHRYN A. BLEECKER
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-6288

## TABLE OF CONTENTS

I. ARGUMENT . . . . . 2

A. This Action Must Be Dismissed for Lack of Jurisdiction Pursuant to the Compact Act and Section 177 Agreement . . . . . 3

1. The Prior Litigation Could Not and Did Not Leave the Door Open for Plaintiffs to Return . . . . . 4

2. Congress Rightfully Withdrew Jurisdiction from this Court over Claims Arising From the Nuclear Testing Program . . . . . 6

B. The Plaintiffs' Arguments Highlight the Political Questions Raised in this Action, which Should Be Dismissed under the Political Question Doctrine . . . . . 11

C. Plaintiffs' Claims Also Are Barred By The Statute Of Limitations . . . . . 15

D. Plaintiffs Still Do Not Identify Any Federal Government Act that Supports their Takings Claims in Counts III through IV . . . . . 19

II. CONCLUSION . . . . . 20

## TABLE OF AUTHORITIES

### CASES

Alliance of Descendants of Texas Land Grants v. United States,
37 F.3d 1478 (Fed. Cir. 1994) . . . . . . . . . . 18, 19, 20

Anaheim Gardens v. United States,
444 F.3d 1309 (Fed. Cir. 2006) . . . . . . . . . . 18

Antolok v. United States,
873 F.2d 369 (D.C. Cir. 1989) . . . . . . . . . . 12

Baker v. Carr,
369 U.S. 186 (1962) . . . . . . . . . . 12, 13, 14

Battaglia v. General Motors Corp.,
169 F.2d 254 (2d Cir. 1948) . . . . . . . . . . 10

Bayer AG. v. Biovail Corp.,
279 F.3d 1340 (Fed. Cir. 2002) . . . . . . . . . . 8

Boling v. United States,
220 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . 17

Christianson v. Colt Indstr. Operating Corp.,
486 U.S. 800 (1988) . . . . . . . . . . 17

Dames & Moore v. Regan,
453 U.S. 654 (1981) . . . . . . . . . . 4, 5, 6

Dana v. E.S. Originals, Inc.,
342 F.3d 1320 (Fed. Cir. 2003) . . . . . . . . . . 8, 17

Feinberg v. Federal Deposit Ins. Corp.,
385 F.Supp. 1304 (D.D.C. 1974) . . . . . . . . . . 2, 7

Gelb v. Royal Globe Ins. Co.,
798 F.2d 38 (2d Cir. 1986) . . . . . . . . . . 16

Gold Bondholders Protective Council, Inc. v. United States,
676 F.2d 643 (Ct. Cl. 1982) . . . . . . . . . . 9

Goodrich v. United States,
63 Fed. Cl. 477 (2005) . . . . . . . . . . 18

Guaranty Trust Co. v. United States,
304 U.S. 126 (1938) . . . . . . . . . . 13

Gulf Power Co. v. United States,
187 F.3d 1324 (11th Cir. 1999) . . . . . . . . . . 10, 11

Hicks v. Quaker Oats Co.,
662 F.2d 1158 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hornback v. United States,
405 F.3d 999 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hughes Aircraft v. United States,
534 F.2d 889 (Ct. Cl. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

International Refugee Org. v. Republic S.S. Corp.,
189 F.2d 858 (4th Cir. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Japanese War Notes Claimants Ass'n v. United States,
373 F.2d 356 (1966), cert. denied, 389 U.S. 971 (1967) . . . . . . . . . . . . . . . . . . . . . . . . 19

John R. Sand & Gravel Co. v. United States,
457 F.3d 1345 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Juda v. United States,
13 Cl. Ct. 667 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Jung v. Ass'n Am. Med. Colleges,
339 F.Supp.2d 26 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Kwan v. United States,
272 F.3d 1360 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Langenegger v. United States,
756 F.2d 1565 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

Laycock v. United States,
230 F.2d 848 (9th Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lynch v. United States,
292 U.S. 571 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

MacLean v. United States,
454 F.3d 1334 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Maricopa County v. Valley National Bank,
318 U.S. 357 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Martin v. Henley,
452 F.2d 295 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

McNutt v. Gen. Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Mobley Constr. Co. v. United States,
68 Fed. Cl. 434 (2005) . . . . . . . . . . 15

Moran Towing & Transport. Co. v. Navigazione Libera Triestina, S.A.,
92 F.2d 37 (2d Cir. 1937) . . . . . . . . . . 17

Parklane Hosiery Co. v. Shore,
439 U.S. 322 (1979) . . . . . . . . . . 7

Perry v. United States,
294 U.S. 330 (1935) . . . . . . . . . . 9

Peter v. United States,
13 Cl. Ct. 691 (1987), aff'd, sub nom. People of Enewetak v. United States,
864 F.2d 134 (Fed. Cir. 1988), cert. denied, 491 U.S. 909 (1989) . . . . . . . . . . passim

Peter v. United States,
6 Cl. Ct. 768 (1984) . . . . . . . . . . 15, 16, 18

Plaut v. Spendthrift Farm, Inc.,
514 U.S. 211 (1995) . . . . . . . . . . 10, 11

Ramirez v. United States,
36 Fed. Cl. 467 (1996) . . . . . . . . . . 4

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 4, 15

Schillinger v. United States,
155 U.S. 163 (1894) . . . . . . . . . . 9

Soriano v. United States,
352 U.S. 270 (1957) . . . . . . . . . . 15

Stebbins v. Keystone Ins. Co.,
481 F.2d 501 (D.C. Cir. 1973) . . . . . . . . . . 16

Thurston v. United States,
232 U.S. 469 (1914) . . . . . . . . . . 4

United States v. Babcock,
250 U.S. 328 (1919) . . . . . . . . . . 9

United States v. Belmont,
301 U.S. 324 (1937) . . . . . . . . . . 12, 14

United States v. Klein,
80 U.S. 128 (1871) . . . . . . . . . . 10, 11

United States v. Pink,
315 U.S. 203 (1942) . . . . . . . . . . 12, 14

United States v. U.S. Fidelity & Guaranty Co., 309 U.S. 506 (1940) . . . . . 9

Young Eng'rs, Inc. v. United States Int'l Trade Comm'n, 721 F.2d 1305 (Fed. Cir. 1983) . . . . . 7

**CONSTITUTIONS**

United States Constitution, art II, §§ 2 and 3 . . . . . 12

**STATUTES**

25 U.S.C. § 2501 . . . . . 3, 6, 14
28 U.S.C. § 1502 . . . . . 6
28 U.S.C. § 2501 . . . . . 16, 17, 20, 21

Compact of Free Association Act of 1985 (“Compact Act”), Pub. L. No. 99-239, 99 Stat. 1770 (1986) . . . . . 1

**RULES**

RCFC 12(b)(6) . . . . . 1

**OTHER AUTHORITIES**

47 American Jurisprudence 2d (Judgments) (2006) . . . . . 16

Restatement (Second) of Judgments (1982) . . . . . 7, 17

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ISMAEL JOHN, et al.,**<br>**Plaintiffs,**<br>v.<br>**THE UNITED STATES,**<br>**Defendant.** | **No. 06-289 L**<br>**Hon. Christine O.C. Miller** |

**DEFENDANT'S REPLY BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, United States, hereby submits its reply brief in support of its motion to dismiss. Plaintiffs, all of whom are citizens or nationals of the Republic of the Marshall Islands (RMI), seek compensation for alleged takings and breach of an implied-in-fact contract arising out of the United States' nuclear testing program conducted in the Marshall Islands during the late 1940s and 1950s. In its opening brief, the United States demonstrated that Plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction. Congress, through its enactment of the Compact of Free Association Act of 1985 ("Compact Act"), Pub. L. No. 99-239, 99 Stat. 1770 (1986), expressly withdrew jurisdiction from this Court to hear claims arising from the United States' nuclear testing program. The United States made clear in its opening brief that this case also presents a non-justiciable political question, providing an additional ground to dismiss. Furthermore, Plaintiffs' claims are barred by the statute of limitations. The United States further demonstrated, in the alternative, that Plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6).

In their opposition, Plaintiffs contend that the jurisdiction-limiting provision of the Compact Act and Section 177 Agreement, which it incorporates by reference, was conditioned upon a valid settlement and release of their claims; and that their claims were not validly released and, therefore, Congress could not validly withdraw jurisdiction from this Court. Plaintiffs argue

that this Court retained jurisdiction to consider whether Plaintiffs have been accorded just compensation through proceedings held in an alternative forum in the RMI. Plaintiffs also argue that these contentions do not present a political question. They further contend that the courts' prior dismissal of their claims for lack of jurisdiction based upon Congress' withdrawal of jurisdiction presents no bar from relitigating the same claims and issues. Plaintiffs finally argue that they are not barred by the statute of limitations because they were required to exhaust administrative remedies before returning to this Court; and that the Amended Complaint states causes of action upon which relief can be granted.

As shown below, Plaintiffs' resurrected arguments were considered and rejected in prior litigation, merely raise nonjusticiable political questions, and are otherwise without merit. The Amended Complaint, therefore, should be dismissed in its entirety.

## I. ARGUMENT

Pursuant to the Compact Act and the "Section 177 Agreement,"[1/] Congress withdrew jurisdiction from all courts in the United States to hear claims arising from the nuclear testing program. See Section 177 Agreement, art. XII. When Congress withdraws jurisdiction, the Court's inquiry is limited to deciding whether the claims in question are of the type which Congress removed from judicial review. Feinberg v. Federal Deposit Ins. Corp., 385 F.Supp. 1304, 1306 (D.D.C. 1974). It cannot be genuinely disputed that the Plaintiffs' claims arise from, or are related to, the United States' nuclear testing program conducted in the Marshall Islands. See Def.'s Mot. Dismiss at 17-18. Accordingly, this Court does not have jurisdiction, and the complaint must be dismissed.

Congress' explicit withdrawal of jurisdiction from all United States courts includes this Court's jurisdiction under the Tucker Act. See Juda v. United States, 13 Cl. Ct. 667, 690 (1987);

---

[1/] The "Agreement Between the Government of the United States and the Government of the Marshall Islands for the Implementation of Section 177 of the Compact of Free Association," referred to herein as the "Section 177 Agreement" was attached as Ex. 2 to Def.'s Mot. Dismiss.

Peter v. United States, 13 Cl. Ct. 691, 692 (1987) (dismissing for lack of jurisdiction and adopting the court's decision in Juda), aff'd sub nom People of Enewetak v. United States, 864 F.2d 134 (Fed. Cir. 1988), cert. denied 491 U.S. 909 (1989). Plaintiffs point to no subsequent action of Congress restoring this Court's jurisdiction. It has been conclusively decided, therefore, that the Court of Federal Claims does not have jurisdiction. On this basis alone, this action must be dismissed in its entirety. As the Compact Act and the Section 177 Agreement make clear, whether the people of the Marshall Islands, including the Plaintiffs in this action, may obtain additional compensation lies with Congress.[2/]

**A. This Action Must Be Dismissed for Lack of Jurisdiction Pursuant to the Compact Act and Section 177 Agreement**

To combat the plain effect of the Compact Act and the Section 177 Agreement, Plaintiffs attack Congress' authority to withdraw jurisdiction. See Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss at 10-28 (hereinafter, "Pls.' Br."). Plaintiffs place great weight on mere dicta in Juda, arguing that the prior litigation left the door open for future litigation. See Pls.' Br. at 10-13; Juda, 13 Cl. Ct. at 689. As discussed further below, however, only Congress, not the court, may confer jurisdiction. Plaintiffs rely heavily upon Dames & Moore, but that case is of no avail for Plaintiffs.

Plaintiffs re-assert, here, the argument previously rejected in Juda that the jurisdiction-stripping Article XII of the Section 177 Agreement falls, because Article X, espousal, is invalid. See Juda, 13 Cl. Ct. at 684-86. Moreover, Congress conferred limited jurisdiction on this Court

---

[2/] The Plaintiffs' arguments are based entirely upon the unsupported premise that the compensation received through the Republic of the Marshall Island's Nuclear Claim's Tribunal ("NCT") is manifestly inadequate. But the Compact Act and Section 177 Agreement provided a comprehensive settlement program, of which the awards through the NCT is only a part. See, e.g., Section 177 Agreement, art. II, § 3 (allocating an additional $48.75 million to the people of Enewetak); see also Compact Act, § 103(f) (making clear that the $48.75 million allocation is in addition to the amounts to be awarded through the NCT pursuant to Article IV of the Section 177 Agreement). Plaintiffs fail to mention the substantial amounts paid by the United States under this comprehensive compensation program. Regardless, the Court need not immerse itself into the quagmire of determining the adequacy of the NCT's award, because it does not have jurisdiction.

under the Tucker Act and, through the Compact Act, exercised its prerogative to withdraw that jurisdiction. None of the cases cited by Plaintiffs change this result.

**1. The Prior Litigation Could Not and Did Not Leave the Door Open for Plaintiffs to Return**

The United States Claims Court and Federal Circuit did not, and could not, leave the door open for the Plaintiffs to return to this Court. In the prior litigation, in Juda, the Claims Court merely concluded that it need not deal with an unripe issue. Juda 13 Cl. Ct. at 689. Nowhere does the Claims Court state in Juda that it has jurisdiction to review, in the future, the adequacy of the compensation ultimately received by the Plaintiffs pursuant to the Compact and Section 177 Agreement. In People of Enewetak, the Federal Circuit could not agree with the Plaintiffs "that the Claims Court committed legal error in its ruling." 864 F.2d at 136. That the Federal Circuit was unpersuaded that intervention was appropriate at that time "on the mere speculation that the alternative remedy may prove to be inadequate," does not mean that judicial intervention would be appropriate at any time in the future.

This Court may "take cognizance only of those [claims] which by the terms of some act of Congress are committed to it." Ramirez v. United States, 36 Fed. Cl. 467, 471 (1996) (quoting Thurston v. United States, 232 U.S. 469, 476 (1914)) (alteration as in original). Plaintiffs bear the burden of establishing that this Court has subject matter jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Accordingly, in light of Congress' express withdrawal of jurisdiction from courts in the United States to entertain claims arising out of the nuclear testing program in the Marshall Islands (see People of Enewetak, 864 F.2d at 136), Plaintiffs must identify a subsequent Act of Congress committing such claims to this Court. Plaintiffs, however, fail to identify any Act of Congress re-conferring jurisdiction in this Court. Consequently, the Court may not entertain Plaintiffs' claims.

Moreover, contrary to the Plaintiffs' suggestion otherwise, neither the Claims Court in Juda nor the Federal Circuit in People of Enewetak discuss, or rely upon, Dames & Moore v.

Regan, 453 U.S. 654 (1981). See Pls.' Br. at 11; see also Juda, 13 Cl. Ct. at 689 (noting, but not discussing, plaintiffs' citation to Dames & Moore); People of Enewetak, 864 F.2d at 136 (same). Dames & Moore did not guide the prior decisions and has no application, here.

In Dames & Moore, the dispute before the Supreme Court involved "various Executive Orders and regulations by which the President nullified attachments and liens on Iranian assets in the United States, directed that these assets be transferred to Iran, and suspended claims against Iran that may be presented to an International Claims Tribunal." 453 U.S. at 660. No treaty or Act of Congress was involved. Rather, the Executive Orders and regulations implemented an Executive Agreement between the United States and Iran that was embodied in two Declarations of the Democratic and Popular Republic of Algeria. Id. at 660, 664. That Agreement stated the intent of the United States and Iran "to terminate all litigation as between the Government of each party and the nationals of the other, and to bring about the settlement and termination of all such claims through binding arbitration." Id. at 665 (internal quotation marks omitted).

Dames & Moore, which possessed a judgment against the Atomic Energy Organization of Iran for breach of contract (id. at 663-66), brought an action against the United States and Secretary of the Treasury in District Court "seeking to prevent enforcement of the Executive Orders and Treasury Department regulations implementing the Agreement with Iran." Id. at 666-67. Dames & Moore argued that the President and Secretary of the Treasury went beyond their statutory and constitutional powers, but the District Court dismissed its complaint for failure to state a claim upon which relief could be granted, and the Supreme Court affirmed. Id. at 667, 690.

After rejecting Dames & Moore's arguments and finding that the President had authority to settle claims of U.S. nationals against Iran under the long-standing practice of claim settlement by executive agreement (id. at 680-88), the Court turned its attention to Dames & Moore's "contention that the suspension of claims, if authorized, would constitute a taking of property in violation of the Fifth Amendment to the United States Constitution in the absence of just

compensation." Id. at 688. Although the question of whether the suspension of claims constitutes a taking was not ripe for review, the Court addressed "whether petitioner will have a remedy at law in the Court of Claims under the Tucker Act . . . in such an event." Id. at 689 (citation omitted). At issue was whether the "treaty exception" to the jurisdiction of the Court of Claims, 28 U.S.C. § 1502, "might preclude the Court of Claims from exercising jurisdiction over any takings claim the petitioner might bring."[3/] The Solicitor General conceded at oral argument that the criteria for applying § 1502 would not be met.[4/] Dames & Moore, 453 U.S. at 689; see also Tr. Oral Arg., 1981 U.S. Trans Lexis 60 at *41 (1981). The Supreme Court agreed with the Government's view. Dames & Moore, 453 U.S. at 689 (citing, inter alia, Hughes Aircraft v. United States, 534 F.2d 889 (Ct. Cl. 1976)). Dames & Moore, therefore, does not stand for the proposition suggested by Plaintiffs that a judicial remedy must be provided to determine just compensation for a taking to avoid some "grave constitutional question." See Pls.' Br. at 13.

Accordingly, there is no support for Plaintiffs' argument that the prior litigation left the door open for their takings claims. Dames & Moore is inapposite. Because Plaintiffs fail to identify any Act of Congress re-conferring jurisdiction upon this Court subsequent to the enactment of the Compact Act, this action must be dismissed in its entirety.

**2. Congress Rightfully Withdrew Jurisdiction from this Court over Claims Arising From the Nuclear Testing Program**

The question now before the Court is not so broad as Plaintiffs argue. Plaintiffs would have this Court address the question of whether Congress constitutionally may withdraw

[3/] The "treaty exception" states: "Except as otherwise provided by Act of Congress, the United States Court of Federal Claims shall not have jurisdiction of any claim against the United States growing out of or dependent upon any treaty entered into with foreign nations." 28 U.S.C. § 1502 (2004).

[4/] "The test under § 1502 is whether plaintiff's claim could conceivably exist independently of, or separate and apart from, the subject treaty, or whether, on the contrary, it derives its existence so exclusively and substantially from certain express terms or provisions thereof, that consideration of the claim would necessitate our construction of the treaty itself." Hughes Aircraft, 534 F.2d at 903. The operative phrase in the statute, "growing out of or dependent upon," is narrowly interpreted. Id.

jurisdiction from all courts over takings and implied contract claims against the United States. Pls.' Br. at 16-19. Rather, the question is whether the Compact Act and Section 177 Agreement withdrew jurisdiction from this Court over Plaintiffs' claims, which arise from the nuclear testing program. See Feinberg, 385 F.Supp. at 1306 (when Congress withdraws jurisdiction, the court's inquiry is limited to deciding whether the claims in question are of the type which Congress removed from judicial review). But Peter and Juda previously answered that question in the affirmative. Peter v. United States, 13 Cl. Ct. 691, 692 (1987) (dismissing for lack of jurisdiction and adopting the court's decision in Juda); see also People of Enewetak, 864 F.2d at 136-37. The people of Enewetak should not be permitted to relitigate this issue. Furthermore, there is no need to consider whether the Compact Act unconstitutionally eliminates all jurisdiction from all courts, as Plaintiffs suggest. Pls.' Br. at 13-19. Nevertheless, if considered by the Court, Plaintiffs' arguments are without merit and should be rejected.

First, as demonstrated in the United States' motion to dismiss, Plaintiffs are barred by the doctrine of res judicata from relitigating the validity and effect of the jurisdiction-withdrawing provision of the Compact Act and Section 177 Agreement. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979) ("a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action"); Young Eng'rs, Inc. v. United States Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983)(final judgment on a claim extinguishes "'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose'") (quoting Restatement (Second) of Judgments § 24 (1982)). Res judicata applies to final judgments involving jurisdiction. Hornback v. United States, 405 F.3d 999, 1002 (Fed. Cir. 2005) (plaintiff barred by res judicata from relitigating whether the statute of limitations withdrew the court's jurisdiction). Accordingly, Plaintiffs should not be permitted to relitigate whether the Compact Act and Section 177 Agreement withdrew jurisdiction from this Court–that question has been answered affirmatively, with finality, in Peter.

Moreover, the Claims Court specifically addressed many of the same issues and arguments that Plaintiffs raise here. Accordingly, Plaintiffs also are collaterally estopped from rearguing those issues decided against them in Peter, and affirmed by the Court of Appeals in People of Enewetak. Plainly, that the Compact Act and Section 177 Agreement withdrew jurisdiction from this Court to entertain Plaintiffs' takings claims was litigated in Peter, satisfying the criteria for applying collateral estoppel: that (1) the issue is identical to the one involved in the prior proceedings; (2) the issue was actually litigated; (3) the Courts' findings were a critical and necessary part of the judgment; and (4) plaintiffs had a full and fair opportunity to litigate the issue. Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed. Cir. 2003); Bayer AG. v. Biovail Corp., 279 F.3d 1340, 1345 (Fed. Cir. 2002). As is clear from the United States' citations to the Claims Court's rulings, the Court has rejected plaintiffs' arguments on many of the same issues raised in their opposition to the pending motion to dismiss. Plaintiffs should not be permitted to repeatedly litigate the same issues in this suit.

For instance, Plaintiffs' argument that Congress insisted that articles XII and X of the Section 177 Agreement "stand or fall together" was considered and rejected by the court in Juda. See Pls.' Br. at 13-14; Juda,13 Cl. Ct. at 683-85. The court in Juda recognized that a prior version of the Compact Act "explicitly provided that Article XII would not prevent judicial resolution of the claims, if a court of competent jurisdiction determined that the [espousal] provisions of Article X are invalid . . . ." Juda, 13 Cl. Ct. at 684 (internal quotation marks omitted). But that language was rejected in favor of the version enacted by Congress, which makes clear in § 103(g)(2) of the Compact Act that Article XII of the Section 177 Agreement is a "clarification of the effect of paragraph (1) of Section 103(g) and of Article X." Juda, 13 Cl. Ct. at 685 (internal quotation marks omitted). The Compact Act § 103(g)(2) thus makes clear that Article XII withdraws jurisdiction from United States courts solely with respect to claims against

the United States[5/] arising from the nuclear testing program conducted in the Marshall Islands. Withdrawal of jurisdiction pursuant to Article XII, therefore, does not stand or fall with the espousal of claims under Article X of the Section 177 Agreement. See Juda, 13 Cl. Ct. at 683-85. Nonetheless, Plaintiffs should not be permitted to relitigate this issue.

Moreover, "[i]n an unbroken line of decisions, it has been held that Congress may withdraw its consent to sue the Government at any time." Gold Bondholders Protective Council, Inc. v. United States, 676 F.2d 643, 646 (Ct. Cl. 1982) (citing Schillinger v. United States, 155 U.S. 163 (1894); Lynch v. United States, 292 U.S. 571 (1934); United States v. U.S. Fidelity & Guaranty Co., 309 U.S. 506 (1940); Maricopa County v. Valley Nat'l Bank, 318 U.S. 357 (1943); Laycock v. United States, 230 F.2d 848 (9th Cir. 1956)); see also United States v. Babcock, 250 U.S. 328, 331 (1919) (the United States "is under no obligation to provide a remedy through the courts"); Juda, 13 Cl. Ct. at 689-90 (citing Gold Bondholders with approval, and rejecting plaintiffs' criticism of this decision);. In Gold Bondholders, the plaintiff argued that the Government's repudiation "of its agreement to redeem its bond in gold constitutes a taking of its property right," in violation of the Fifth Amendment. Gold Bondholders, 676 F.2d at 646. The court rejected this argument, finding that while "[r]ights against the United States arising out of a contract with it are protected by the Fifth Amendment . . . [the] consent to sue the United States is a privilege accorded; not the grant of a property right protected by the Fifth Amendment." Id. at 646-47 (quoting Lynch v. United States, 292 U.S. 571, 579-81) (internal quotation marks and citation omitted). Contrary to Plaintiffs' argument, Congress may withdraw the right to sue the United States in the federal courts even for constitutionally protected rights.

As the Supreme Court has observed, "[w]hile the Congress is under no duty to provide remedies through the courts, the contractual obligation [of the United States] still exists, and, despite infirmities of procedure, remains binding upon the conscience of the sovereign." Perry v.

---

[5/] This includes "agents, employees, contractors and citizens and nationals" of the United States. See Section 177 Agreement, art. X, § 1.

United States, 294 U.S. 330, 354 (1935) (citing Lynch, 292 U.S. at 580, 581). Plaintiffs here are attempting to convert the United States' obligation to compensate the people of the Marshall Islands under the Compact Act and Section 177 Agreement – an obligation that the Plaintiffs do not allege was unfulfilled – into an obligation to provide a judicial remedy, which does not exist. If changed circumstances warranted additional compensation, the Section 177 Agreement provides that the Government of the Marshall Islands may request that the Government of the United States provide for the unforeseen property damage or injuries. See Section 177 Agreement, art. IX. Accordingly, consistent with Supreme Court precedent, the question of whether Plaintiffs now may receive additional funds from the United States properly lies within the discretion of Congress, through a request from the Republic of the Marshall Islands, and not through piecemeal litigation brought by RMI citizens or nationals against the United States in court.

The cases relied upon by the Plaintiffs in support of their argument that Congress may not withdraw jurisdiction from United States courts are of no avail. Indeed, in Juda, the Claims Court previously distinguished several of the cases Plaintiffs rely upon again, here. See Juda, 13 Cl. Ct. at 687-88 (distinguishing United States v. Klein, 80 U.S. 128 (1871) and Battaglia v. General Motors Corp., 169 F.2d 254 (2d Cir. 1948)). The court's analysis in Juda is equally applicable here and need not be repeated. In further support of their argument, Plaintiffs cite only three decisions rendered after Juda and People of Enewetak were decided, namely, Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995), Gulf Power Co. v. United States, 187 F.3d 1324 (11th Cir. 1999), and Jung v. Ass'n Am. Med. Colleges, 339 F.Supp.2d 26 (D.D.C. 2004). These decisions, however, are not on point.

In Plaut, the issue before the Court was whether "§ 27A(b) of the Securities Exchange Act of 1934, to the extent that it requires federal courts to reopen final judgments in private civil action under § 10(b) of the Act, contravenes the Constitution's separation of powers or the Due Process Clause of the Fifth Amendment." Plaut, 514 U.S. at 213. The Court found it

unconstitutional because it applied retroactively, requiring courts to reopen and reconsider final judgments. Id. at 225. Whether the Compact Act applies retroactively is not an issue, here, so Plaut provides absolutely no guidance.

In Gulf Power, the question was whether the Pole Attachment Act was facially unconstitutional because it allegedly took the electric utilities' property without an adequate process for securing just compensation. Gulf Power, 187 F.3d at 1326. Although, the Gulf Power court agreed that the Act effected a taking, it rejected plaintiffs' remaining contentions, concluding that there is "no constitutional problem with a process that employs an administrative body, such as the FCC, to determine just compensation in the first instance." Id. at 1333. The context of the issues in Gulf Power is entirely different from that here, as that case does not involve an agreement between the United States and a foreign government (see id. at 1326), so the political questions that arise here were not in play in that case.

Finally, Plaintiffs citation of Jung is of no avail as that case dealt with the question of whether the court must entertain renewed motions to dismiss in light of an amendment to the antitrust laws, which was enacted after the court had already denied certain defendants' motions to dismiss. Jung 339 F.Supp.2d at 31. The court rejected Plaintiffs' constitutional argument, based upon Klein, supra, finding that the "amendment to [the] applicable antitrust law does not... prescribe a different finding, conclusion or result in the outcome of [the case before it] or any other particular antitrust case." Jung. at 41-42. Here, like the legislation at issue in Jung, the Compact Act does not prescribe the result of any particular case, and "therefore does not run afoul of Klein." Id. at 42. Accordingly, Jung provides no support for Plaintiffs' arguments.

**B. The Plaintiffs' Arguments Highlight the Political Questions Raised in this Action, which Should Be Dismissed under the Political Question Doctrine**

Plaintiffs argue that the government of the Marshall Islands did not represent their interests when negotiating and entering into the Compact of Free Association and Section 177 Agreement. Pls.' Br. at 21-26. According to Plaintiffs, the Compact and Section 177 Agreement

were not the product of arms-length negotiations (Pls.' Br. at 23), and the government of the Marshall Islands lacked authority to act on behalf of the Marshallese, including the people of Enewetak. Pls.' Br. at 25. Plaintiffs' arguments make clear that this action is a direct assault upon the Compact and its related Section 177 Agreement, and raises a nonjusticiable political question. See Baker v. Carr, 369 U.S. 186, 210 (1962) (nonjusticiability of a political question is primarily a function of the separation of powers); see also Def.'s Mot. Dismiss at 20-25.

Plaintiffs' attack upon the Compact and Section 177 Agreement calls into question the negotiations leading up to the Compact and Section 177 Agreement, a function "within the sole authority of the Executive." Kwan v. United States, 272 F.3d 1360, 1364 (Fed. Cir. 2001). As Judge Sentelle found in Antolok, referring to the same Compact at issue here, "the decision of the political branches expressed in the Compact negotiated and entered by the Executive and approved by the Legislative Branch is within the area of foreign relations committed by the Constitution to the political branches." Antolok, 873 F.2d 369, 381 (D.C. Cir. 1989). The Constitution does not contemplate the participation of the judicial branch in the making of international agreements or the recognition of foreign governments. Id. (citing United States Constitution, art. II, §§ 2 and 3); see also United States v. Belmont, 301 U.S. 324, 330 (1937); United States v. Pink, 315 U.S. 203, 229 (1942) (the power to recognize the Soviet government necessarily implies in the President the "[p]ower to remove such obstacles to full recognition as settlement of claims . . . the delicate problems of foreign relations requires no less"). This action, therefore, should be dismissed under the political question doctrine because there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department."[6/] Baker, 369 U.S. at 217.

---

[6/] Plaintiffs suggest that when negotiating the Compact and Section 177 Agreement, the United States took "advantage of its superior knowledge or superior bargaining power." Pls.' Br. at 23-24. Such a statement validates the United States' concern that this action cannot be resolved without showing a lack of respect for both the Executive and Legislative branches of government, warranting dismissal under the fourth Baker factor for applying the political question doctrine.

Just as the Plaintiffs argue here (Pls.' Br. at 25-28), the plaintiffs in Juda asked that court to "determine the capacity of the RMI under international law to espouse claims of its citizens prior to giving effect to Article XII of the Section 177 Agreement." Juda, 13 Cl. Ct. at 684. The plaintiffs in Juda similarly argued that the government of the Marshall Islands lacked sovereignty, rendering invalid the Marshall Islands' espousal in Article X of the Section 177 Agreement, under the doctrine of continuity of nationality. Id. at 686; see also Pls.' Br. at 26- 27. The Claims Court was not persuaded, finding "[t]he facts of these cases, however, do not accord with the rationale for the [continuity of nationality] doctrine." Juda, 13 Cl. Ct. at 686. The Juda court concluded that it need not determine at what stage in the trusteeship process the RMI had capacity to espouse the claims of its people who were inhabitants prior to its creation, because "Article XII [terminating jurisdiction] is not made contingent upon a judicial determination of the validity of espousal in Article X." Id. This Court similarly need not delve into such political questions involving the capacity of the government of the Marshall Islands to espouse claims.

The United States has, under the terms of the Compact, recognized the Marshall Islands government as having authority to conduct its own foreign relations, including claims settlement. Thus, Plaintiffs challenge not only the settlement authority of the government of the Marshall Islands, but also the United States' authority to recognize a particular foreign government as having the capacity to act. Such questions involving the recognition of foreign governments "so strongly defies judicial treatment that without executive recognition a foreign state has been called 'a republic of whose existence we know nothing.'" Baker v. Carr, 369 U.S. at 212. As the Supreme Court has recognized:

> What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. Objections to its determination as well as to the underlying policy are to be addressed to it and not to the courts.

Guaranty Trust Co. v. United States, 304 U.S. 126, 137-38 (1938). Courts will "not stop to inquire what the 'actual[']  authority of those diplomatic representatives may have been." Id. at

139. Moreover, the Supreme Court has expressly held that the power to recognize a foreign sovereign necessarily includes the power to negotiate and settle claims of nationals, and a diplomatic agreement accomplishing those ends conclusively binds the courts. United States v. Pink, 315 U.S. 203, 222-23, 229-30 (1942); United States v. Belmont, 301 U.S. 324, 330 (1937). As noted above, there is a "textually demonstrable constitutional commitment of the issue" to Congress and the Executive Branch, satisfying the first Baker factor in determining that a case involves a nonjusticiable political question. Baker v. Carr, 369 U.S. at 217; see also Def.'s Mot. Dismiss at 20-28.

To award Plaintiffs the relief they are seeking the Court would first need to find that the espousal provisions of the Compact and the Section 177 Agreement are invalid.[7/] As the Claims Court recognized, "the Compact Act, the Compact, and the Section 177 Agreement constitute a redefinition of the legal relationship between the United States and the people of the Marshall Islands. This relationship is defined by the domestic law of the two governments." Juda, 13 Cl. Ct. at 683. Plaintiffs' efforts to have the Court invalidate these agreements entered into by the governments of Marshall Islands and the United States presents a nonjusticiable political question that is beyond the Court's authority to adjudicate. Therefore, for this additional reason, Plaintiffs' amended complaint should be dismissed.

---

[7/] Plaintiffs' reliance upon Langenegger v. United States, 756 F.2d 1565 (Fed. Cir. 1985), is misplaced. In that case, the Federal Circuit found that the claim of United States citizens alleging that the United States was responsible for the expropriation of their property in El Salvador pursuant to that country's agrarian reform program, was justiciable as a takings claim against the United States, but plaintiffs had to first show that El Salvador, where the land was located, would not provide a forum to hear their claim. Id. at 1572-73. The case did not involve any government-to-government negotiations. The court specifically found that resolution of the claims did not require judicial determination of El Salvador's sovereignty or the appropriateness of its actions, or question the Executive's authority to undertake the action. Id. at 1569. Unlike Plaintiffs' claims here, the question in Langenegger was "of narrow focus, requiring no second-guessing of the executive branch or detailed inquiry into the ulterior motives of the two governments." Id. at 1570.

### C. Plaintiffs' Claims Also Are Barred By The Statute Of Limitations

As demonstrated in the United States' opening brief, the Court also should dismiss this case because Plaintiffs' claims are barred by the six-year statute of limitations, 28 U.S.C. § 2501. See Soriano v. United States, 352 U.S. 270, 276 (1957) (the statute of limitations is a "condition" upon the sovereign's consent to suit); John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1355 (Fed. Cir. 2006) (Section 2501 creates a jurisdictional prerequisite to the Court of Federal Claims' jurisdiction). The statute of limitations 'is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.'" MacLean v. United States, 454 F.3d 1334, 1336 (Fed. Cir. 2006) (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)). Plaintiffs bear the burden of showing that the statute of limitations does not bar the court's subject matter jurisdiction. See Mobley Constr. Co. v. United States, 68 Fed. Cl. 434, 436-37 (2005) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988)). Plaintiffs fail to meet their burden, warranting dismissal on statute of limitations grounds.

Certainly, Counts I and II are time barred as they are the same claims that the Plaintiffs asserted in Peter in 1982. See Def.' Mot. Dismiss at 25-29. Disregarding, for now, the fact that the court in Peter found untimely the Plaintiffs' takings claim asserted in Count I when filed in 1982 (Peter, 6 Cl. Ct. 768, 773-75 (1984)), if Plaintiffs' takings and implied contract claims were ripe when filed in 1982, they had long expired by the time Plaintiffs brought them again in 2006. Plaintiffs argue that Congress intended to provide just compensation without regard to any limitations period. Pls.' Br. at 38. While true that the Compact Act and Section 177 Agreement "provide, in perpetuity, a means to address past, present and future consequences, including the resolution of individual claims, arising from the United States nuclear testing program in the Marshall Islands," it is also true that Congress expressly withdrew jurisdiction from United States courts over such claims. People of Enewetak, 864 F.2d at 136-37; see also Section 177 Agreement, art. XII. Plaintiffs' argument illogically suggests that Congress would impliedly toll

the statute of limitations on one hand, and simultaneously expressly withdraw jurisdiction with the other. There has not been any change in the relevant law. Plaintiffs' argument that Congress intended to toll the statute of limitations of 28 U.S.C. § 2501, therefore, lacks merit.

The Peter court previously held that Plaintiffs' takings claim – the same claim asserted in Count I of their pending Complaint – accrued by 1958 and, therefore, was untimely when filed in 1982. It is beyond argument that if that claim was late in 1982, it is even later when filed in 2006. In Peter, the Plaintiffs argued that their takings claim did not accrue "until April 1980, when the Enewetak people were permitted to return to the atoll." Peter, 6 Cl. Ct. at 774. In Count I, here, they allege that the "taking continued as a mater of law until October 1980, when defendant permitted the people of Enewetak to return and resettle their atoll." Am. Compl. ¶ 171. Accepting, arguendo, the 1980 accrual date as Plaintiffs contend, their takings claim in Count I would be late by twenty years. As a matter of law, the takings claim asserted in Count I was not timely filed and should be dismissed.

Nevertheless, the Court should give preclusive effect to the prior decision in Peter, 6 Cl. Ct. at 773-75. The United States shows in its opening brief and above that the criteria warranting application of collateral estoppel are met in this case. See Def.'s Mot. Dismiss at 26-28. Plaintiffs argue, however, that the court's decision in Peter was not final and should not be given preclusive effect.[8/] Pls.' Br. at 40-41. But a judgment is valid and binding until modified, set

---

[8/] Plaintiffs reliance upon Gelb v. Royal Globe Ins. Co., 798 F.2d 38 (2d Cir. 1986), and the cases cited therein, is misplaced. In Gelb, the Second Circuit previously upheld plaintiff's criminal conviction on three counts of mail fraud that rested "exclusively on the allegation that Gelb had falsely denied to [the defendant] that he had caused the fire," but the court "did not review the issue on which they were appealed." Gelb, 798 F.2d at 40. The Second Circuit described this as an "anomalous disposition" that "vitally affects the [issue of] collateral estoppel." Id. The decision in Peter, however, is not an anomaly and should be given preclusive effect. The remaining cases cited by Plaintiffs are also distinguishable: Hicks v. Quaker Oats Co., 662 F.2d 1158, 1168-73 (5th Cir. 1981) (holding that the "alternative ground" rule of collateral estoppel should not be applied offensively in this case); Stebbins v. Keystone Ins. Co., 481 F.2d 501, 506-09 (D.C. Cir. 1973)(collateral estoppel does not bar "a new cause of action, rooted in a different instance of alleged discrimination"); Martin v. Henley, 452 F.2d 295, 300-02 (9th Cir. 1971) (finding res judicata and collateral estoppel do not apply in a bankruptcy action given the "unusual circumstances of this case"); International Refugee Org. v. Republic S.S. Corp., 189 F.2d 858, 862 (4th Cir. 1951) (estoppel would not apply because the issue had not been

aside or reversed. See 47 Am. Jur.2d (Judgments) § 532; see also Dana, 342 F.3d at 1323 (for issue preclusion, a "final judgment includes any prior adjudication of an issue. . .that is determined to be sufficiently firm to be accorded conclusive effect") (quoting Restatement (Second) of Judgments § 13 (1982)). Peter has not been set aside, modified or reversed and, therefore, remains binding. Accordingly, whether by collateral estoppel or on the pleadings, Count I should be dismissed as untimely filed.

Plaintiffs attempt to save Count II by arguing that the court in Juda specifically "held plaintiffs' claims unripe," and that "plaintiffs could return to Court after the alternative procedure 'has run its course' should the compensation provided be inadequate." Pls.' Br. at 42. The court in Juda did not make either holding. While the court in Juda recognized that Congress has not abolished Plaintiffs' claims (Juda, 13 Cl.Ct. at 688), it did not hold that Plaintiffs' takings or implied-in-fact contract claims were unripe – that issue was not before the court.[9/] See Juda, 13 Cl. Ct. at 670 (identifying the issues before it, including "[w]hether Congress had withdrawn the consent of the United States to be sued in the United States Claims Court on plaintiffs' claims"). As discussed above, the Compact Act does not impliedly toll the statute of limitations. Nor could the Court waive the statute of limitations, which is jurisdictional. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817-18 (1988).[10/] Count II, therefore, should be dismissed

---

previously ruled upon by either the District Court of Court of Appeals); and Moran Towing & Transport. Co. v. Navigazione Libera Triestina, S.A., 92 F.2d 37, 40 (2d Cir. 1937) (no preclusive effect given to lower state court judgment in subsequent federal action, as state appellate court decided matter on a different ground and remitted action back to trial court directing entry of judgment).

[9/] In Juda and Peter, the plaintiffs had not amended their respective complaints to allege a taking of their takings and breach of implied-in-fact contract claims, so the ripeness of such claims could not have been before the court. See Juda, 13 Cl. Ct. at 687 (identifying pending claims); Peter, 13 Cl. Ct. at 692 (same).

[10/] Plaintiffs make a half-hearted argument that their implied-in-fact contract claims are continuing and therefore the statute of limitations has not run. Pls.' Br. at 42 n.28. But the "continuing claims doctrine . . . does not apply in cases where a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach." Boling v. United States, 220 F.3d 1365, 1373 (Fed. Cir. 2000). For example, a new takings claim does not arise under the continuing claim doctrine each time a

pursuant to 28 U.S.C. § 2501.

Plaintiffs allege in Counts III and IV that the United States has taken their takings and implied-in-fact contract claims, respectively, by failing to fund the NCT. See Am. Compl. ¶¶ 201-03, 206-07. These claims derive from Plaintiffs' takings and implied-in-fact contract claims asserted in Counts I and II. However it stands to reason that if Plaintiffs' takings and implied-in-fact contract claims have long-since expired, that their derivative claims also have expired. Plaintiffs plainly are trying to salvage their untimely physical takings claims arising from the nuclear testing program by recasting them into the mold of a regulatory takings action, arising from the Compact Act.[11/] Their reliance upon decisions in regulatory takings cases, such as Anaheim Gardens v. United States, 444 F.3d 1309 (Fed. Cir. 2006), therefore, is misplaced.

Nevertheless, Plaintiffs' argument that their claims asserted in Counts III through VI were unknowable and, therefore, did not accrue until the NCT's August 3, 2000 decision, is untenable. Alliance of Descendants is directly on-point. Alliance of Descendants of Texas Land Grants v. United States, 37 F.3d 1478, 1480-82 (Fed. Cir. 1994). The plaintiffs in Alliance of Descendants, similarly argued that their claims were "inherently unknowable" until 1984, when the U.S. District Court for the District of Columbia dismissed their class action for lack of subject matter jurisdiction. Id. The 1941 treaty between the United States and Mexico at issue in Alliance of Descendants reciprocally renounced and declared satisfied all claims of nationals of each country against the Government of the other. Id. at 1480. The court soundly rejected plaintiffs' contention that their claims against the United States were inherently unknowable,

---

horse is allowed to drink water from plaintiff's property, or with each quantum of erosional damage. Id. at 1373-74. Here, plaintiffs' implied-in-fact contract claims certainly accrued no later than 1982, when Plaintiffs first brought that claim. See Def.'s Mot. Dismiss at 28-29. Moreover, Plaintiffs do not identify any affirmative governmental act that occurred within the six-year statute of limitations period prior to filing this suit that could possibly extend the limitations period for their implied-in-fact contract claim.

[11/] See Peter, 6 Cl. Ct. at 775 (describing the total or partial destruction of certain islands by nuclear explosions). See also Goodrich v. United States, 63 Fed. Cl. 477, 480 (2005) (distinguishing a physical taking–government encroachment–from a regulatory taking arising from a public program adjusting the benefits and burdens of economic life).

stating that "the explicit terms of the 1941 Treaty extinguished claimants' legal rights against the United States." Id. at 1483. The Alliance of Descendants court concluded:

> Moreover, the 1941 Treaty did not create an "alternative remedy" in United States courts in the event Mexico did not compensate its citizens. Rather the Treaty expressly extinguished Mexican claims against the United States.

Id. The Federal Circuit, therefore, affirmed the Court of Federal Claims' decision that the claims were not "inherently unknowable." Id. Plaintiffs' assertion here that their claims were unknowable is of no avail–Alliance of Descendants is directly on-point. Finally, contrary to their argument, the court in Juda and People of Enewetak did not deem their claims unripe, but that it was premature to facially attack on constitutional grounds the Section 177 Agreement. See People of Enewetak, 864 F.2d at 136 (citing Juda, 13 Cl. Ct. at 689).

Similarly, Plaintiffs' argument that the statute of limitations should be equitably tolled is unavailing. Even if 28 U.S.C. § 2501 were subject to equitable tolling – which it is not – Plaintiffs cannot show that it is available here. To toll the statute of limitations, "a claimant must show either that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was inherently unknowable at the accrual date." Alliance of Descendants, 37 F.3d at 1482 (quoting Japanese War Notes Claimants Ass'n v. United States, 373 F.2d 356, 359 (1966), cert. denied, 389 U.S. 971 (1967)) (internal quotation marks omitted). As discussed above, the Plaintiffs' claims were not inherently unknowable, and Plaintiffs fail to allege that the United States concealed any of its actions that prevented them from discovering the existence of their claims. Equitable tolling does not apply in this case.

### D. Plaintiffs Still Do Not Identify Any Federal Government Act that Supports their Takings Claims in Counts III through VI

The crux of the United States' argument that Plaintiffs' takings claims asserted in Counts III through VI should be dismissed for failing to state a claim upon which relief may be granted is that they do not allege any federal governmental action that deprived them of any property interest. See Def.'s Mot. Dismiss at 32-36. In their opposition papers, Plaintiffs still do not

identify any federal governmental action within the six-year period leading up to the filing of their suit that deprived them of any property interest. The last federal government action complained of by the Plaintiffs is that the United States entered into the Compact Agreements in 1986. See, e.g., Pls.' Br. at 48 ("By this litigation, plaintiffs contend that the Compact Agreements themselves constitute a breach of an implied-in-fact contract."). Such allegations do not support their claims. Moreover, actions by the RMI and the RMI's Nuclear Claims Tribunal do not support claims against the United States. See Alliance of Descendants, 37 F.3d at 1482 ("The language of the Fifth Amendment itself requires that the United States, not a foreign sovereign commit the taking action.") (citing Langenegger v. United States, 756 F.2d 1565, 1572 (Fed. Cir. 1985)).

Instead of identifying any federal governmental action that occurred within the six-year period prior to filing suit, Plaintiffs assert that the 1986 Compact was a self-serving act by the United States, providing the "Marshallese with the dubious status of 'free association' and an alternative claims procedure that was woefully underfunded." Pls.' Br. at 49. Plaintiffs ignore the 1983 plebiscite whereby the Compact Agreements were approved. See Juda, 13 Cl. Ct. at 673. Plaintiffs attempt to dissociate themselves from the jurisdiction of the Marshall Islands, insisting that the "Compact is between the United States and the government of the Marshall Islands, not the people of Enewetak . . . ." Plaintiffs' assertions do not support their claims, but merely highlight the political questions raised in this litigation, as discussed above and in the United States' opening brief.

## II. CONCLUSION

For the foregoing reasons and those proved in our motion to dismiss, we respectfully request that the Court dismiss Plaintiffs' complaint, in its entirety, for lack of subject matter jurisdiction. In the alternative, we request that the Court dismiss the complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Matthew J. McKeown
Acting Assistant Attorney General
Environment & Natural Resources Division

s/ Bruce K. Trauben
BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel.: (202) 305-0238
Fax: (202) 305-0267/0506
E-mail: bruce.trauben@usdoj.gov

Attorney for Defendant

Of Counsel:

KATHRYN A. BLEECKER
Assistant Director
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-6288

Dated: January 30, 2007
//372052.1