# Attachment 2

# CONSOLIDATED BRIEF OF APPELLEE THE UNITED STATES

IN THE

# United States Court Of Appeals

## FOR THE FEDERAL CIRCUIT

No. 88-1206, -1207, -1208

PEOPLE OF BIKINI, ENEWETAK, RONGELAP, UTIRIK and OTHER MARSHALL ISLANDS ATOLLS,

*Plaintiffs-Appellants,*

v.

THE UNITED STATES,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES CLAIMS COURT

HONORABLE KENNETH R. HARKINS

ROGER J. MARZULLA
*Assistant Attorney General*
JACQUES B. GELIN
GARY B. RANDALL
JOHN T. STAHR
*Attorneys, Department of Justice*
*Land & Natural Resources Division*
*Washington, D.C. 20530*
*(202) [illegible]*

OF COUNSEL:

HOWARD L. HILLS
*United States Department of State*
*Washington, D.C.*

[illegible]

# INDEX


| | Page |
|---|---|
| Statement of Related Cases | viii |
| Opinions below | 1 |
| Issues presented | 1 |
| Statement of the case | 2 |
| A. Introduction | 2 |
| B. Proceedings below | 3 |
| Statement of facts | 5 |
| A. The nuclear testing program | 5 |
| B. The United Nations trusteeship agreement | 6 |
| C. The Compact of Free Association | 8 |
| D. The Section 177 agreement | 9 |
| E. Approval of the Compact by the Marshall Islands and United States | 10 |
| Summary of argument | 12 |
| **Argument:** | |
| I. A challenge to settlement terms negotiated as an integral part of diplomatic recognition raisers a nonjusticiable political question | 14 |
| A. These appeals challenge foreign policy decisions that are beyond the scope of the judiciary | 16 |
| B. Foreign policy decisions as to diplomatic recognition and claims settlement are committed to the political branches | 16 |
| C. To grant the relief sought in these cases would dismantle the settlement, create international uncertainty as to the Marshall Islands' authority to conduct sovereign acts, and undermine United States foreign policy | 23 |
| II. The withdrawal of the United States' consent to suit does not depend on judicial approval of Marshall Islands espousal | 26 |

A. Section 103(g) on its face does not condition Article XII on judicial review of espousal . . . . . . . . . . . . . . . . . . . . 27
B. Congress rejected the very provision appellants ask this Court to add to the Compact Act . . . . . . . . . . . . . . . . . . . . 29
III. The Compact's claims settlement meets Fifth Amendment requirements . . . . . . . . . . . 32
A. The claims settlement creates a comprehensive, permanent means of resolving all past, present and future nuclear testing claims . . . . . . . . . . . . . . . . . . . . 33
B. Congress, in ratifying the Compact, properly withdrew Tucker Act consent to suit . 38
C. The Section 177 agreement provides an alternative method of compensation which must be allowed to operate as intended to address all claims . . . . . . . 43
IV. The Republic of the Marshall Islands has validly espoused and settled its nationals' claims . . . . . . . . . . . . . . . . . . . 46
A. The espousal meets requirements of the rule of continuous nationality . . . . . . 46
B. Trust territory residents are not United States citizens . . . . . . . . . . . . . . . . 50
C. The United States breached no fiduciary relationship . . . . . . . . . . . . . . . . . . 53
V. Citizens of the Marshall Islands may not invoke the just compensation clause . . . . . . . . . . 55
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . 61
Certificate of service . . . . . . . . . . . . . . . . . . . . . . 62

## CITATIONS

*Cases*:

*Aradanas v. Hogan*, 155 F.Supp. 546 . . . . . . . . . . 52
*American Ins. Co. v. Canter*, 26 U.S. (1 Pet.) 511 . . . 41

*Ampex Corp. v. United States*, 620 F.2d 853 . . . . . . . 31
*Antolok v. Brookhaven National Laboratories*, No. CV 822364 (Antolok II) . . . . . . . . . . . . . . . . . . *passim*
*Antolok v. United States*, No. 852471 (Antolok I) . . . 15, 21
*Baker v. Carr*, 369 U.S. 211 . . . . . . . . . . . . . . . . *passim*
*Balzac v. Puerto Rico*, 258 U.S. 298 . . . . . . . . . . . 59
*Battaglia v. General Mortors Corp.*, 169 F.2d 254, cert. denied 335 U.S. 887 . . . . . . . . . . . . . . . . . 41
*Blanchette v. Connecticut General Ins. Corp.*, 419 U.S. 102 . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44
*Callas v. United States*, 253 F.2d 838, cert. denied, 357 U.S. 936 . . . . . . . . . . . . . . . . . . . . . . 52
*Cardenas v. Smith*, 733 F.2d 909 . . . . . . . . . . . . . 60
*Cherokee Nation v. Georgia*, 5 Pet. 1 . . . . . . . . . . . 54
*Cherokee Nation v. Southern Kansas RR. Co.*, 135 U.S. 641 . . . . . . . . . . . . . . . . . . . . . . . . . . 43
*Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103 . . . . . . . . . . . . . . 16
*Commonwealth of the Northern Mariana Islands v. Atalig*, 723 F.2d 682, cert. denied, 476 U.S. 1244 . . . . . . . . . . . . . . . . . . . . . . . 59
*Dames & Moore v. Regan*, 453 U.S. 654 . . . . . . . . *passim*
*Dickey v. Greene*, 729 F.2d 957 . . . . . . . . . . . . . 37
*Dorr v. United States*, 195 U.S. 138 . . . . . . . . . . . 59
*Downes v. Bidwell*, 182 U.S. 244 . . . . . . . . . . . . 59
*Ex Parte McCardle*, 74 U.S. (7 Wall.) 506 . . . . . . . 41
*First English Evangelical Lutheran Church v. County of Los Angeles*, 107 S.Ct. 2378 . . . . . . . . . . . 42
*Fleming v. United States*, 352 F.2d 533 . . . . . . . . . 60
*Gale v. Andrus*, 643 F.2d 826 . . . . . . . . . . . . . . . 52, 56
*Gemsco v. Walling*, 324 U.S. 244 . . . . . . . . . . . . . 31
*General Electric. Co. v. United States*, 610 F.2d 730 . 31
*Gibbes v. Zimmerman*, 290 U.S. 326 . . . . . . . . . . . 40
*Gold Bondholders Protective Council v. United States*, 676 F.2d 643, cert. denied 459 U.S. 968 . . . . . *passim*

*Goldwater v. Carter*, 444 U.S. 996 . . . . . . . . . . . 16
*Guaranty Trust Co. v. United States*, 304 U.S. 126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21
*Hammond v. United States*, 786 F.2d 8 . . . . . . . . . 36
*Harisiades v. Shaughnessy*, 342 U.S. 580 . . . . . . . . 17
*Hughes Aircraft Co. v. United States*, 534 F.2d 889 . . 53
*In re Aircrash in Bali, Indonesia on April 22, 1974*, 684 F.2d 1301 . . . . . . . . . . . . . . . . . . . . . . 60
*In re GHB Energy Corp.*, 791 F.2d 1200 . . . . . . . . 37
*International Medical Prosthetics Research Associates, Inc. v. Gore Enterprise Holding, Inc.*, 787 F.2d 572 . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Johnson v. Eisentrager*, 339 U.S. 763 . . . . . . . . . . 17
*Juda v. United States*, 6 Cl. Ct. 441 . . . . . . . . . . . 1, 3
*Juda v. United States*, 13 Cl. Ct. 667 . . . . . . . . . . passim
*Kabua, Kabua v. United States*, 546 F.2d 381, cert. denied, 434 U.S. 821 . . . . . . . . . . . . . . . . . 53
*Langenegger v. United States*, 756 F.2d 1565, cert. denied, 474 U.S. 824 . . . . . . . . . . . . . . . . . 22
*Lynch v. United States*, 292 U.S. 571 . . . . . . . . . . 38,39,40,46
*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 . . . . . . 16
*Maricopa County v. Valley National Bank of Phoenix*, 318 U.S. 357 . . . . . . . . . . . . . . . . . . . . 40
*McComish v. Commissioner of Internal Revenue*, 580 F.2d 1323 . . . . . . . . . . . . . . . . . . . . . . 52
*Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759 . 54
*Nitol v. United States*, 7 Cl. Ct. 405 . . . . . . . . . . . 4
*Nitol v. United States*, 13 Cl. Ct. 690 . . . . . . . . . . *passim*
*Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 . . . . . . . . . . . . . . . . . . . . . . . . 40
*Ozanic v. United States*, 188 F.2d 228 . . . . . . . . . 20
*Peter v. United States*, 6 Cl. Ct. 768 . . . . . . . . . . *passim*
*Peter v. United States*, 13 Cl. Ct. 691 . . . . . . . . . . 1,3
*Porter v. United States*, 496 F.2d 583, cert. denied, 420 U.S. 1004 . . . . . . . . . . . . . . . . . . . . . . *passim*

*Ramirez v. Weinberger, 745 F.2d 1500, vacated on other grounds sub nom Weinberger v. Ramirez,* 471 U.S. 1113 . . . . . . . . . . . . . . . . . . . . 22
Ruckelshaus v. Monsanto, 467 U.S. 986 . . . . . . . 36,43,44,45
*Seery v. United States*, 127 F. Supp. 601 . . . . . . . . . 60
*Schillinger v. United States*, 155 U.S. 163 . . . . . . . . 40
*Shanghai Power Co. v. United States*, 4 Ct. Cl. 237, aff'd without opinion, 765 F.2d 159 (Fed. Cir.), cert. denied, 474 U.S. 909 . . . . . . . . . . . . . . *passim*
*Shelton v. Sill*, 49 U.S. (8 How.) 440 . . . . . . . . . . 41
*Turney v. United States*, 115 F. Supp. 457 . . . . . . . 60
*United States v. Belmont*, 301 U.S. 324 . . . . . . . . . . *passim*
*United States v. Curtiss/Wright Corp.*, 299 U.S. 304 . . . 20
*United States v. James*, 106 S.Ct. 3116 . . . . . . . . . 31
*United States v. Klein*, 80 U.S. (13 Wall.) 128 . . . . . . 41
*United States v. Pink*, 315 U.S. 203 . . . . . . . . . . . *passim*
*United States v. Sioux Nation of Indians*, 448 U.S. 371 . . . . . . . . . . . . . . . . . . . . . . . 38
*United States v. Sioux Nation of Indians*, 601 F.2d 1157 38
*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 . . . . . . . . . . . . . . . . . . . . . . . 36
*Webster v. Doe*, S.Ct. No. 86-1294 . . . . . . . . . . . 41

**Statutes:**

Atomic Energy Act of 1946, Pub. L. 79585, Ch. 724, 60 Stat. 755 *et seq.* . . . . . . . . . . . . . . . . . . . 5
Compact of Free Association Act of 1985, Pub. L. No. 99239, 99 Stat. 1770 . . . . . . . . . . . . . . . *passim*
Federal Tort Claims Act . . . . . . . . . . . . . . . . . . 21
Fisherman's Protective Act, 22 U.S.C. 1971 . . . . . . 54
Magnuson Act, 16 U.S.C. 1801 . . . . . . . . . . . . . . 54
National Security Act, 61 Stat. 498, Section 102(c) . 41
Nitijela Res. No. 62 N.D.2 . . . . . . . . . . . . . . . . 32
Trusteeship Agreement for the Former Japanese Mandated Islands, 61 Stat. 3301, T.I.A.S. No. 1665 (1947) . . . . . . . . . . . . . . . . . . . . . . 6

Tucker Act, 28 U.S.C. 1491(a) . . . . . . . . . . . . . . *passim*
United Nations Charter . . . . . . . . . . . . . . . . . . *passim*
United States Constitution, 5th Amendment . . . . . *passim*
Vienna Convention on Consular Relations, Article 8, 21 UST 77, TIAS No. 6820, 596 UNTS 261 . . . 54
28 U.S.C. 172 . . . . . . . . . . . . . . . . . . . . . . . 41
28 U.S.C. 1502 . . . . . . . . . . . . . . . . . . . . . . *passim*
48 U.S.C. 1681 . . . . . . . . . . . . . . . . . . . . . . 58
48 U.S.C. 1681n. . . . . . . . . . . . . . . . . . . . . . 7
48 U.S.C. 1682-1687 . . . . . . . . . . . . . . . . . . . 58
Convenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America,Pub. L. No. 94241, 90 Stat. 263 . . . . . . . . . . . . . . . . . 7

**Miscellaneous:**

131 Cong. Rec. E3588 (July 29, 1985) . . . . . . . . . 27
131 Cong. Rec. H11836 (Dec. 11, 1985) . . . . . . . . 31
131 Cong. Rec. H11838 (Dec. 11, 1985) . . . . . . . . 23
131 Cong. Rec. S17651 (Dec. 13, 1985) . . . . . . . . 31
132 Cong. Rec. E66E67, Jan. 23, 1986 . . . . . . . . . 31
S. Rep. No. 275, 97th Cong., 1st Sess. 7 (1981), reprinted in 1982 U.S. Code Cong. & Ad. News 11 . . . . . . . . . . . . . . . . . . . . . . . 41
Secretarial Order No. 2876, 29 Fed. Reg. 1855 . . . . . 7
Secretarial Order No. 2918, 34 Fed. Reg. 157 . . . . 7

**Secondary Authorities:**

Hills, Compact of Free Association for Micronesia: Constitutional and International Law Issues, 18 Int'l Law 583 . . . . . . . . . . . . . . . . . . . . 24
Cowen, *The United States Court of Claims: A History*, Section One 1855-1887, 216 Ct.Cl. 1 (1978) . . . . . . . . . . . . . . . . . . . . . . . 42
Crawford, *The Creation of States in International Law* at 26-27 (1970) . . . . . . . . . . . . . . . . . . . . 18

D. O'Connell, 2 International Law 1120, (2d ed. 1970) . . . . . . . . . . . . . . . . . . . . . . 49

I. Brownlie, *Principles of Public International Law*, 481-482 (3rd ed. 1979) . . . . . . . . . . . . . . . . 46, 48

I.G. Schwarzenberger, *International Law* 592595 (3rd ed. 1957) . . . . . . . . . . . . . . . . . . . . . . 49

Kelso, *Espousal: Its Use in International Law*, 1 Ariz. J. of Internat'l and Comp. Law 233 (1982) . . . 46

L. Henkin, Foreign Affairs and the Constitution 262 (1972) . . . . . . . . . . . . . . . . . . . . . . . . 46

8 M. Whiteman Digest of International Law at 1233 . . . . . . . . . . . . . . . . . . . . . . . . . 49

McDougal and Lans, Treaties and Congressional Executive and Presidential Agreements: Interchangeable Instruments of National Policy, 54 Yale L.J. (1945) 181 . . . . . . . . . . . . . . . . . . . 57

P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *The Federal Courts and the Federal System* 382 (2d ed. 1973) . . . . . . . . . . . . . . . . . . . . . . . . 42

1 R. Lillich and B. Weston, *International Claims: Their Settlement by Lump Sum Agreements* (1975) . . . . . . . . . . . . . . . . . . . . . . . . 49

116 *Recueil des Cours*, 181 (1965) . . . . . . . . . . . 48

Restatement (Second) of the Foreign Relations Law of the United States § 94(1), at 303 (1965) . . . 18

## STATEMENT OF RELATED CASES

*Prior appeals.* No other appeals in or from the same civil action or proceedings in the Claims Court have previously been before this Court or any other appellate court.

*Related cases.* By order dated March 28, 1988, this Court consolidated three appeals from final judgments issued by the Claims Court on November 12, 1987, dismissing plaintiffs' complaints. See Order, March 28, 1988, consolidating *People of Bikini v. United States*, No. 88-1206; *Nitol, et al. v. United States*, No. 88-1207; and *People of Enewetak v. United States*, No. 88-1208. The United States files this consolidated brief pursuant to the Court's order.

Related appeals are currently pending in the Ninth Circuit and District of Columbia Circuit addressing issues identical to those raised by the instant appeals. *Cathelina Antolok v. Brookhaven National Laboratories*, 9th Cir. No. 88-5749; *Cathelina Antolok v. United States*, D.C. Cir. No. 87-5324. The district court decisions in those cases are found in the Joint Appendix at 1406-1421 and 1322-1330, respectively. Most plaintiffs in the *Nitol* appeal are also plaintiffs in the *Antolok* actions. The opening brief in the District of Columbia Circuit *Antolok* appeal is due in October. The Ninth Circuit has stayed proceedings pending the District of Columbia Circuit's decision.

IN THE

# United States Court Of Appeals

FOR THE FEDERAL CIRCUIT

Nos. 88-1206, -1207, -1208

PEOPLE OF BIKINI, ENEWETAK, RONGELAP
UTRIK and OTHER MARSHALL ISLANDS ATOLLS,

*Plaintiffs-Appellants*

v.

THE UNITED STATES

*Defendant-Appellee*

**ON APPEAL FROM THE UNITED STATES CLAIMS COURT**
**Honorable Kenneth R. Harkins**

**CONSOLIDATED BRIEF OF APPELLEE THE UNITED STATES**

## OPINIONS BELOW

The opinions of the Claims Court are reported at *Juda v. United States*, 13 Cl. Ct. 667 (1987), also in the Joint Appendix at page 1 ("App. 1"); *Nitol v. United States*, 13 Cl. Ct. 690 (1987) (App. 27); and *Peter v. United States*, 13 Cl. Ct. 691 (1987) (App. 25).[1]

## ISSUES PRESENTED

1. Whether a challenge to claims settlement provisions negotiated between the United States and Republic of the Marshall Islands as an integral part of a Compact of Free Association, establishing formal diplomatic relations and treaty obligations be-

---

[1] The *Juda* appeal is docketed in this Court as *People of Bikini v. United States*, No. 88-1206; the *Nitol* appeal as *Limojwa Nitol, et al. v. United States*, No. 88-1207; and the *Peter* appeal as *People of Enewetak v. United States*, No. 88-1208.

tween those governments, presents a non-justiciable political question.

2. Whether the Claims Court correctly held that Congress, in ratifying the Compact, did not condition the claims settlement and concurrent withdrawal of federal court jurisdiction on a determination by United States courts that the Republic of the Marshall Islands validly espoused and settled its citizens' claims.

3. Whether the Claims Court correctly held that the Compact's settlement structure, providing a $150 million compensation program, including a claims tribunal, meets the requirements of the Fifth Amendment's Just Compensation Clause.

4. Whether the Republic of the Marshall Islands properly exercised its sovereign right under international law to espouse and settle the claims of its nationals.

5. Whether the Fifth Amendment's just compensation clause extends to citizens of the Marshall Islands for claimed takings while the Marshall Islands were administered by the United States under a United Nations Trusteeship Agreement.

## STATEMENT OF THE CASE

### A. Introduction

These actions contest claims settlement provisions of the Compact of Free Association (the "Compact"), an international agreement negotiated between the United States and the Republic of the Marshall Islands ("Marshall Islands") to comprehensively define the diplomatic relations between the two governments. The Compact, approved by Marshall Islands citizens and by the United States Congress, establishes a relationship of "free association." By its terms, the United States recognizes that the peoples of the Marshall Islands are self-governing, and the Compact explicitly defines the governmental, economic, and security and defense relations between the two sovereigns.

As an integral part of this agreement, the United States "accepts the responsibility for compensation owing to citizens of the Marshall Islands" for loss or damage resulting from the nuclear testing program which the United States conducted in the Northern Marshall Islands from June 30, 1946, to August 18, 1958 (App.

869). The Compact, and related "Section 177 Agreement," establish a comprehensive compensation plan, including a tribunal to adjudicate claims, and obligate the United States to establish a $150 million fund to provide "in perpetuity, a means to address past, present and future consequences of the Nuclear Testing Program" (App. 332). The agreement, in turn, provides that United States courts shall have no jurisdiction to entertain such claims (App. 343). It is this settlement structure which is challenged on appeal.

**B. Proceedings below.**

These actions seek damages on behalf of residents of the Marshall Islands for alleged takings of property and breach of implied-in-fact contract duties said to result from the United States nuclear testing program at Bikini and Enewetak Atolls, which are part of the 29 multi-island atolls and five single islands compromising the Marshall Islands. 13 Cl. Ct. at 668. Plaintiffs in *Juda v. United States* filed their complaint on March 16, 1981, on behalf of inhabitants of Bikini Atoll. The *Peter* complaint, filed on September 15, 1982, is on behalf of inhabitants of Enewetak Atoll. Twelve actions, consolidated under *Limojwa Nitol v. United States*, were filed in 1981 and 1982 on behalf of some of the inhabitants of Rongelap and Utrik, and other areas in the Marshall Islands, downwind from the test sites. *Id.* at 669. All complaints assert jurisdiction under the Tucker Act, 28 U.S.C. 1491(a) (App. 110, 194, 248).

Prior to the Compact's approval, the United States filed motions to dismiss the complaints in all cases. The Claims Court held, in 1984, that the *Juda* complaint stated taking and breach of implied contract claims under the Tucker Act, which were not barred by sovereign immunity or the statute of limitations. *Juda v. United States*, 6 Cl. Ct. 441, 449-458 (Cl. Ct. 1984) (App. 37-46). The court termed "substantial" the United States' argument that the just compensation clause does not apply to residents of the Marshall Islands, but held that the Bill of Rights applies to the United States "wherever it has acted." *Id.* at 458 (App. 46).

In *Peter*, the court found that the complaint stated a claim for breach of implied contract, but held that the statute of limitations barred plaintiffs' taking claim. *Peter v. United States*, 6 Cl. Ct. 768,

775, 778 (Cl. Ct. 1984) (App. 54, 57).[2] The court dismissed a third cause of action alleging a failure to comply with the United Nations Trusteeship Agreement, on the ground that 28 U.S.C. 1502 precludes Claims Court review of claims based on a treaty. *Id.* at 778 (App. 57).[3]

The court held in *Nitol* that plaintiffs could maintain a taking claim, but that the complaint alleged insufficient facts to support an implied-in-fact contract claim. *Nitol v. United States*, 7 Cl. Ct. 405, 415-416 (Cl. Ct. 1985) (App. 70-71). As in *Peter*, the court dismissed a third count alleging a breach of the Trusteeship Agreement. *Id.* at 417 (App. 73).[4] The court also reiterated its holding in *Juda* as to the applicability of the just compensation clause. *Id.* at 414-415 (App. 70-71).

Following approval of the Compact, the United States moved to dismiss on the grounds that the complaints raised non-justiciable political questions, and the Compact and Section 177 Agreement divested the Claims Court of jurisdiction. 13 Cl. Ct. 669-670 (App. 3-4). Following argument on April 23, 1987, the court asked for additional briefing on (1) whether the Compact and Section 177 Agreement were in effect and operative, and (2) whether Congress had withdrawn the consent of the United States to be sued. 13 Cl. Ct. at 670 (App. 4). The court heard additional argument on those issues on August 28, 1987.

The Claims Court held on November 10, 1987, that, under the Compact and Section 177 Agreement, "The consent of the United States to be sued in the Claims Court on plaintiffs' taking claims and breach of contract claims that arise from the United States' nuclear testing program in the Marshall Islands has been

---

[2] The *Peter* plaintiffs have filed a separate brief on the statute of limitations issue in the *People of Enewetak* appeal, pursuant to this Court's order. The Separate Brief of Appellee the United States on that question has been filed today.

[3] Plaintiffs do not challenge that holding on appeal. The Claims Court similarly dismissed a fourth count, also not appealed, claiming third party beneficiary rights from a 1976 agreement between the United States and the Marshall Islands Trust Territory Government. 6 Cl. Ct. at 780 (App. 59).

[4] The *Nitol* plaintiffs have not appealed from dismissal of their contract and Trusteeship Agreement claims.

withdrawn." 13 Cl. Ct. at 690 (App. 24). The court entered final judgment in all actions on November 12, 1987 (App. 74-76).

## STATEMENT OF FACTS

### A. The nuclear testing program.

These actions arise from the United States' program to test nuclear weapons in the Marshall Islands from June 30, 1946, to August 18, 1958, conducted pursuant to statutory authority set forth in the Atomic Energy Act of 1946, Pub. L. 79-585, Ch. 724, 60 Stat. 755 *et seq*. The program included detonation of 23 atomic and hydrogen bombs at Bikini Atoll, and 43 nuclear devices at Enewetak Atoll. 13 Cl. Ct. at 668 (App. 2). The testing resulted in partial or complete vaporization of several islands, severe physical damage to others, and radioactive contamination. *Id.* at 668-669 (App. 2-3).

The inhabitants of various atolls were removed and relocated during the testing program. On March 7, 1946, the United States Navy evacuated the 167 inhabitants of Bikini Atoll to Rongerik Atoll, 150 miles east of Bikini, prior to the first series of tests, known at Operation Crossroads (App. 121). In March 1948, the Navy again moved the people of Bikini to a temporary campsite on Kwajalein Atoll, and in September 1948 to the Island of Kili, 400 miles southeast of Bikini (App. 123).

On August 12, 1968, President Johnson announced that the major islands of Bikini Atoll were safe for human habitation, and approximately 150 Bikinians, out of a population that had grown to some 400 people, began to return in 1969 and the early 1970's. 6 Cl. Ct. at 447 (App. 35). Radiation tests in 1977 and 1978, however, showed that, as a result of local foods, consumed in addition to foods supplied by the United States, the Bikini settlers experienced "an 'incredible' 1-year 75 percent increase in body burdens of radioactive cesium-137, causing U.S. scientists to conclude that the people likely had ingested the largest amounts of radiation of any known population." *Ibid.* As a result, the United States, in August 1978, relocated the 150 Bikini settlers back to Kili Island and Marjuro Atoll. *Id.* at 448 (App. 36). No one has resided permanently at Bikini since that time. *Ibid.*

The Navy removed inhabitants of Enewetak Atoll to Ujelang Atoll, 124 miles to the southwest, in December 1947, prior to the commencement of Operation Sandstone, authorized by President Truman to develop a new series of nuclear weapons (App. 209). From 1972 to 1980, the United States conducted rehabilitation, at a cost of some $100 million, and in April 1980, the Enewetak people returned to the Atoll for permanent residence. 6 Cl. Ct. at 773 (App. 52).

Inhabitants of three atolls downwind from the Bikini and Enewetak tests, who are plaintiffs in the *Nitol* actions, were relocated for periods ranging from several months to three years, in conjunction with specific tests. 7 Cl. Ct. at 410-411 (App. 66-67).

**B. The United Nations Trusteeship Agreement.**

The direct political relationship between the United States and the Marshall Islands traces to the end of World War II, when the United States liberated the islands from Japan, which had administered them under a League of Nations Mandate. 13 Cl. Ct. at 671 (App. 5). United States military authorities governed the Marshall Islands from that time until 1947, when the islands were brought within the United Nations trusteeship system. At that time, the United States and United Nations Security Council approved a Trusteeship Agreement that designated the United States as "administering authority" over the Pacific Islands of the Trust Territory.[5]

The agreement was approved by congressional resolution on July 18, 1947. Trusteeship Agreement for the Former Japanese Mandated Islands, 61 Stat. 3301, T.I.A.S. No. 1665 (1947) (App. 277).[6]

[5] The Trust Territory was comprised of the Marshall Islands, the Mariana Islands and the Caroline Islands, and commonly referred to as Micronesia. 6 Cl. Ct. at 444 (App. 32).

[6] The Trusteeship was established pursuant to Articles 75 through 91 of the United Nations Charter, which govern the International Trusteeship System (App. 273-276). Article 76(b) obligates the administering authority "to promote the political, economic, social, and educational advancement of the inhabitants of the trust territories, and their progressive development towards self-government or independence * * *" (App. 273).

The Trusteeship Agreement granted the United States "full powers of administration, legislation, and jurisdiction over the territory," with discretion to apply "such of the laws of the United States as it may deem appropriate to local conditions and requirements" (Art. 3, App. 278).[7] Consistent with Article 76(b) of the United Nations Charter, and subject to the specific authorities set forth in the Trusteeship Agreement, Article 6 obligated the United States to promote the development of self-government, economic advancement and self-sufficiency (Art. 6, App. 278).[8]

During the 1960's, the United States initiated steps, in accordance with Article 6, to prepare the Micronesians for constitutional self-government, including the formation in 1965 of a Congress of Micronesia. 13 Cl. Ct. 672 (App. 6). At that time, the United States encouraged, and the Micronesian leaders explored, the possibility of granting commonwealth status for the various island groups. *Ibid.* The Micronesians determined, however, to form four separate political entities for the development of self-government, including the Republic of the Marshall Islands. *Ibid.*[9] The Marshall Islands approved a constitution, by referendum, on March 1, 1979, and began parliamentary constitutional government on May 1, 1979. 13 Cl. Ct. at 672 (App. 6, 310). On

[7] Article 7 specified those "fundamental freedoms" which the administering authority must guarantee, including "freedom of conscience, and, subject only to the requirements of public order and security, freedom of speech, of the press, and of assembly; freedom of worship, and of religious teaching; and freedom of migration and movement" (App. 279).

[8] The President delegated authority for civil administration of the Trust Territory to the Secretary of the Interior, who vested executive authority in a High Commissioner, appointed by the President with the advice and consent of the Senate. Department of the Interior Secretarial Order No. 2876, 29 Fed. Reg. 1855 (1964), superceded by Secretarial Order No. 2918, 34 Fed. Reg. 157 (1969) (App. 295).

[9] The other three political entities included the Federated States of Micronesia, the Republic of Palau, and the Commonwealth of the Northern Mariana Islands. 13 Cl. Ct. at 672 (App. 6). The latter entered into a "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America," approved by the United States on March 24, 1976. Pub. L. 94-241, 90 Stat 263 (1976) (codified as amended at 48 U.S.C. 1681 n.(1982)) (App. 289).

April 25, 1979, the Secretary of the Interior, on behalf of the United States, recognized the Republic of the Marshall Islands, and delegated certain executive, legislative and judicial functions, referred to in Article 3 of the Trusteeship Agreement, to the new constitutional government, subject to retained residual authority for trusteeship compliance. 13 Cl. Ct. at 672 (App. 6).

### C. The Compact of Free Association.

Following lengthy government-to-government negotiations, the Republic of the Marshall Islands and the United States signed the Compact of Free Association on June 25, 1983. The Compact redefines the full bilateral relationship between the two governments, including governmental relations (Title One, App. 858), economic relations (Title Two, App. 870), security and defense obligations (Title Three, App. 879), and dispute resolution, amendment and termination procedures (Title Four, App. 884).

Most relevant to this appeal is Title One, which memorializes the political relationship negotiated by the two governments. Title One recognizes that the "peoples of the Marshall Islands," acting through the Government established under their Constitution, "are self-governing" (App. 858). It also recognizes that the Marshall Islands "have the capacity to conduct foreign affairs and shall do so in their own name and right, except as otherwise provided in this Compact" (App. 858). That authority includes the capacity "to enter into, in their own name and right, treaties and other international agreements with governments and regional and international organizations" (App. 858). Title One requires consultation between the two governments on matters of mutual concern (App. 859), and provides for the exchange of diplomatic representatives (App. 863).

As part of Title One's comprehensive restructuring of political relations, Section 177(a) states (App. 869):

> The Government of the United States accepts the responsibility for compensation owing to citizens of the Marshall Islands * * * for loss or damage to property and person * * * resulting from the nuclear testing program which the Government of the United States