**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **PEOPLE OF BIKINI, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 06-288C** |
| **v.** | ) | **(Judge Christine O.C. Miller)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **ISMAEL JOHN, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 06-289L** |
| **v.** | ) | **(Judge Christine O.C. Miller)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO THE**
**COURT'S JUNE 6, 2007 ORDERS**

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division

PETER D. KEISLER
Assistant Attorney General
Civil Division

JEANNE E. DAVIDSON
Director

BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0238

KATHRYN A. BLEECKER
Assistant Director
United States Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-6288

Attorneys for Defendant

June 25, 2007

## TABLE OF CONTENTS

DEFENDANT'S RESPONSE TO THE COURT'S JUNE 6, 2007 ORDERS . . . . . . . . . . . . . . . . 1

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. The Law Of The Case Doctrine Applies Only In Continuing Litigation Prior To Final Judgment And, Therefore, Does Not Apply Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. The Fifth Amendment's Just Compensation Clause Does Not Apply To Plaintiffs Or Their Property . . . . . . . . . . . . . . . . . . . . . 8

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**CASES:** **Pages:**

Arizona v. California,
460 U.S. 605 (1983) . . . . . . . . . . 4, 7

Ashkir v. United States,
46 Fed. Cl. 438 (2000) . . . . . . . . . . 14

Atamirzayeva v. United States,
No. 05-1245L (Fed. Cl. June 20, 2007) . . . . . . . . . . 14

Balzac v. People of Porto Rico,
258 U.S. 298 (1922) . . . . . . . . . . 10

Chiu v. United States,
948 F.2d 711 (Fed. Cir. 1991) . . . . . . . . . . 4, 5

Dorr v. United States,
195 U.S. 138 (1904) . . . . . . . . . . 10, 11

El-Shifa Pharm. Indus. Co. v. United States,
378 F.3d 1346 (Fed. Cir. 2004) . . . . . . . . . . 13, 14

Exxon Corp. v. United States,
931 F.2d 874 (Fed. Cir. 1991) . . . . . . . . . . 4, 5

Fleming v. United States,
352 F.2d 533, 173 Ct. Cl. 426 (1965) . . . . . . . . . . 10

Florida Light & Power Co. v. United States,
66 Fed. Cl. 93 (2005) . . . . . . . . . . 5

Harbor Ins. Co. v. Essman,
918 F.2d 734 (8th Cir. 1990) . . . . . . . . . . passim

Hoffman v. United States,
17 Fed. Appx. 980, 2001 WL 931588 *7 (Fed. Cir. 2001) . . . . . . . . . . 14

Johnson v. Eisentrager,
339 U.S. 763 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Juda v. United States,
6 Cl. Ct. 441 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Juda v. United States,
13 Cl. Ct. 667, 690 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Langenegger v. United States,
756 F.2d 1565 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Little Earth of the United Tribes, Inc. v. United States Dep't. of Hous. & Urban Dev.,
807 F.2d 1433 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

People of Enewetak v. United States,
864 F.2d 134 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

People of Enewetak v. United States,
Nos. 88-1206, 88-1207, 88-1208 (Fed. Cir. June 14, 1988) . . . . . . . . . . . . . . . . . . . . 2, 11

Peter v. United States,
6 Cl. Ct. 786 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Peter v. United States,
13 Cl. Ct. 691 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Porter v. United States,
496 F.2d 583, 204 Ct. Cl. 355 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Seery v. United States,
127 F. Supp. 601, 130 Ct. Cl. 481 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Torres v. Commonwealth of Puerto Rico,
442 U.S. 465 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Turney v. United States,
115 F. Supp. 457 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. 49.01 Acres of Land,
669 F.2d 1364 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. 49.01 Acres of Land, More or Less, Situate in Osage County, Okla.,
802 F.2d 387 (10th Cir. 1986) . . . . . . . . . . 7, 8

United States v. Verdugo-Urquidez,
494 U.S. 259 (1990) . . . . . . . . . . passim

Wolfchild v. United States,
72 Fed. Cl. 511 (2006) . . . . . . . . . . 5

Zadvydas v. Davis,
533 U.S. 678 (2001) . . . . . . . . . . 11

**MISCELLANEOUS:**

Fifth Amendment Just Compensation Clause . . . . . . . . . . passim

61 Stat. 3301 . . . . . . . . . . 11

RCFC 54 . . . . . . . . . . 9

RCFC 59 . . . . . . . . . . 5

Fed. R. Civ. P. 54 . . . . . . . . . . 5

Fed. R. Civ. P. 59 . . . . . . . . . . 5

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **PEOPLE OF BIKINI, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 06-288C** |
| **v.** | ) | **(Judge Christine O.C. Miller)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **ISMAEL JOHN, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 06-289L** |
| **v.** | ) | **(Judge Christine O.C. Miller)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO THE**
**COURT'S JUNE 6, 2007 ORDERS**

Defendant, the United States, respectfully files the following combined response to the Court's Orders dated June 6, 2007.[1]

## I. INTRODUCTION

In its June 6, 2007 Orders, the Court identified two issues for further briefing:

> 1) [The parties'] understanding and characterization of the doctrine of the law of the case as it applies to Judge Harkins's holdings in Juda v. United States, 6 Cl. Ct. 441 (1984) ("Juda I"). [Citations omitted.]
>
> 2) Case law and other guidance on the scope of the judicial review of Judge Harkins's determination that the Marshall Islanders were

[1] By Order dated June 7, 2007, the Court extended the date for filing these briefs to June 25, 2007, based upon the parties' request.

> granted the protections of the Bill of Rights in Juda I at 456-58. In Juda I the court held that the "protections of the Bill of Rights are conveyed to the Marshall Islanders by the force of the Constitution and our system of government." Id. at 458. Supplemental briefing revealed that defendant reargued the issue in front of the United States Court of Appeals for the Federal Circuit. In the Consolidated Brief of Appellee the United States, People of Enewetak v. United States, Nos. 88-1206, 88-1207, 88-1208, (Fed. Cir. June 14, 1988), defendant moved to dismiss appellants' takings claims on the ground that the Fifth Amendment's just compensation clause does not extend to citizens of the United Nations Trust Territory for the Marshall Islands. The Federal Circuit did not reach this issue in People of Enewetak v. United States, 864 F.2d 134 (Fed. Cir. 1988). Reconsideration of Judge Harkins's decision may be appropriate insofar as he held that the Marshall Islanders were granted the protections of the Bill of Rights in Juda I at 456-58.

In response to the Court's first issue, the law of the case doctrine does not apply here because neither Ismael John nor People of Bikini is the same case. The law of the case doctrine only applies in the same continuing litigation prior to judgment. Because final judgment was entered in both Juda and Peter, and neither of the pending actions is a continuation of those cases, the law of the case doctrine does not apply. Juda v. United States, 13 Cl. Ct. 667, 690 (1987) ("Juda II") (dismissing claims of Bikinians); see also Peter v. United States, 13 Cl. Ct. 691 (1987) ("Peter II") (dismissing claims of people of Enewetak and other atolls). Rather, other rules of repose may apply, such as res judicata and collateral estoppel, as we demonstrate in our motions to dismiss and related papers. See, e.g.,Defendant's Motion to Dismiss, People of Bikini, No. 06-288C, pp. 16-21 ; United States' Motion to Dismiss, Ismael John, No. 06-289L, pp. 18-20, 26-28.

As to the second issue, the United States did not move to dismiss these cases upon the additional ground that Fifth Amendment's Just Compensation Clause does not apply to the

Marshall Islands because Congress properly withdrew jurisdiction from the courts, including from this Court under the Tucker Act, to hear claims arising from or related to the United States' nuclear testing program. See Section 177 Agreement, arts. X and XII. Plaintiffs' claims validly were settled and released as consideration for the various programs and funds established under the Compact Agreements. Id.

The United States continues to believe that the Claims Court erred in holding in Juda I that the Bill of Rights applies to the people of the Marshall Islands. There was no support for such a sweeping ruling at the time the decision was issued, and none was cited in the Court's decision, and the case law developed since that time further supports our position. However, the Court need not reach that issue because, as we demonstrate in our motions to dismiss and related papers and arguments, the Court lacks jurisdiction to entertain these pending claims. Accordingly, the complaints should be dismissed. Should the Court determine that it is appropriate to reach the issue, plaintiffs have no rights under the Just Compensation Clause because they are non-resident aliens and the property right that is alleged to have been taken is not located in the United States.

## II. ARGUMENT

### A. The Law Of The Case Doctrine Applies Only In Continuing Litigation Prior To Final Judgment And, Therefore, Does Not Apply Here

The law of the case doctrine does not require this Court to follow Juda here because that was a different case that has long been concluded. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in

subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983) (emphasis added). The Supreme Court observed that the

> doctrine was understandably crafted with the course of ordinary litigation in mind[, which] proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which after appeal, the binding finality of res judicata and collateral estoppel will attach.

Id. at 618-19.[2] Accordingly, the law of the case doctrine only applies in the same, continuing litigation before a final judgment has been entered. After judgment has been entered, other rules of repose, such as res judicata and collateral estoppel, may apply.

In its June 6, 2007 Order, the Court also cited Chiu v. United States, but Chiu involved the same case on remand and, therefore, is not applicable. See Chiu v. United States, 948 F.2d 711, 712-13 (Fed. Cir. 1991) (describing the procedural background). Nevertheless, the Federal Circuit held that the law of the case doctrine did not apply to the trial court because the Federal Circuit did not consider the same issues on appeal prior to remand. Id. at 718. Thus, the Federal Circuit concluded that the trial judge on remand was not bound by the law of the case and was as free to reassess the record as would be his predecessor. Chiu, 948 F.2d at 717-18.

The Federal Circuit in Chiu cited its earlier decision in Exxon Corp. v. United States, 931

---

[2] In Arizona v. California, certain Indian tribes sought reconsideration of a prior Supreme Court decision involving the same property and the same parties. The Court previously resolved the amount of practicably irrigable acreage on the tribes' reservations, which would determine their allocation of water from the Colorado River. Arizona, 460 U.S. at 610, 615. The Supreme Court did not apply the law of the case doctrine, which was before the Court on its original jurisdiction under Art. III, § 2, Cl. 2 of the Constitution. Id. at 608. According to the Supreme Court, adopting wholesale the law of the case doctrine in actions of original jurisdiction, where jurisdiction is often retained to accommodate changed circumstances, would weaken the Court's decrees. Id. at 619. Nevertheless, based upon principles grounded in the Court's practice in original cases, "and the strong res judicata interests involved," the Supreme Court refused to reconsider the amount of practicably irrigable land on the reservations. Id. at 620-26.

F.2d 874, 877 (Fed. Cir. 1991). Chiu, 948 F.2d at 717-18. In Exxon, the court of appeals stated that the law of the case doctrine

> does *not* constrain the trial court with respect to issues not actually considered by an appellate court, . . . and thus has long been held not to require the trial court to adhere to its own previous rulings if they have not been adopted, explicitly or implicitly, by the appellate court's judgment.

Id. (citations omitted) (emphasis as in original). The court held that, **upon remand**, this Court could reexamine findings that "were not examined in, relied on, or otherwise necessary to" the decision on appeal. Id. at 878. This holding is not applicable here because the law of the case doctrine only applies in the same case.

Similarly, in Florida Light & Power Co. v. United States, 66 Fed. Cl. 93, 98. (2005), this Court rejected an earlier determination made by another judge in the same case as being based upon an incorrect legal conclusion. The Court first determined that the earlier ruling was not a final judgment and that the "the strict rules governing motions to amend and alter final judgments under Rule 59 do not apply." Id. at 95 (discussing and comparing Fed. R. Civ. P. 54 and 59 and RCFC 54 and 59).[3/] Because the earlier order was interlocutory in nature, and had not been converted into a final appealable order, the Court determined it could reconsider the matter. Id. at 97; see also Wolfchild v. United States, 72 Fed. Cl. 511, 524 (2006) (reconsidering prior dismissal of claims in collective action in context of considering subsequent motions in same case ).

---

[3/] The Court noted that the standard for determining whether to grant a motion for reconsideration under RCFC 59 are: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) so that a party may present newly discovered or previously unavailable evidence; (3) to present manifest injustice; or (4) when there is an intervening change in the controlling law. Id. at 96 (citations omitted).

The law of the case doctrine does not apply in a subsequently filed action between the same parties and asserting the same claim. See Harbor Ins. Co. v. Essman, 918 F.2d 734, 736-38 (8th Cir. 1990). In 1982, the Harbor Insurance Company ("Harbor") brought suit in the Eastern District of Missouri against its insured's accountants, Grant, alleging negligent and fraudulent misrepresentation. Id. at 736. The Grant partners moved to dismiss arguing that Harbor was not within the limited class of persons that might be expected to rely upon the financial statements it prepared for the insured, Tiffany Industries, Inc. Id. The district court denied the motion, finding that the complaint sufficiently stated a claim that Harbor was among those who foreseeably might have relied on Grant's audits. Id. Subsequently, Harbor and Grant agreed to dismiss Harbor's action, stipulating that the district court's decision would apply in any subsequently filed action. Id.

After Harbor was found liable to its insured, Harbor filed another action against Grant in 1988, again alleging negligent and intentional misrepresentation, among other new claims. Harbor Ins. Co., 918 F.2d at 737. Grant moved to dismiss arguing, again, that the insurer was not a member of the limited group of persons for whose benefit the accountant intended to supply Tiffany's financial information. Id. This time, the district court agreed with Grant and dismissed the 1988 complaint. Id. Harbor appealed.

On appeal, Harbor argued that the district court's decision in the 1982 action was binding as the law of the case. Harbor Ins. Co., 918 F.2d at 738. The Eighth Circuit noted that the law of the case doctrine "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Id. at 738 (quoting Little Earth of the United Tribes, Inc. v. United States Dep't. of Hous. & Urban Dev., 807 F.2d

1433, 1440-41 (8th Cir. 1986) (quoting Arizona v. California, 460 U.S. 605, 618 (1983))) (emphasis as in original) (internal quotation marks omitted). The Eighth Circuit thus disagreed with Harbor, finding that, "[b]ecause the instant case is not the same case as the [prior action], the law of the case doctrine does not apply."[4/] Id. Accordingly, the law of the case doctrine does not apply even where the subsequent action is between the same parties and asserts the same claim.

Moreover, the law of the case doctrine does not apply in subsequent proceedings that were severed from the original action. See United States v. 49.01 Acres of Land, More or Less, Situate in Osage County, Okla., 802 F.2d 387, 389-90 (10th Cir. 1986) ("Alexander-Frates"). In Alexander-Frates, the land at issue, 0.6 acres owned by the Alexander-Frates Co. and on which a flowage easement was taken, was originally part of a suit affecting another parcel known as the Anderson Unit. Id. at 389. The United States contended that the court's decision not to award an enhanced value for the Anderson Unit was law of the case, precluding reconsideration of the issue with respect to the Alexander-Frates parcel. Id. (citing United States v. 49.01 Acres of Land, 669 F.2d 1364 (10th Cir. 1982)). The Tenth Circuit disagreed. Noting that the law of the case doctrine applies only within the same litigation, the Tenth Circuit concluded that, "once the litigation over the [Alexander-Frates] Unit was severed from [the] litigation over the Anderson Unit, the cases proceeded independently," so "the law of the case doctrine is inapplicable." Alexander-Frates, 802 F.2d at 389-90.[5/]

---

[4/] The Eighth Circuit also concluded that Harbor and Grant could not bind the court on the applicable law by stipulation. Harbor Ins. Co., 918 F.2d at 738.

[5/] On the merits, the Tenth Circuit found that the factual distinctions between the cases did not warrant a different result, holding that Alexander-Frates also was not entitled to the enhanced

While the pending actions before this Court are between the same parties and may assert some of the same claims as in the prior litigation, they are not the same cases. Both Juda and Peter were dismissed long ago. See Juda, 13 Cl. Ct. at 690; Peter, 13 Cl. Ct. 691 see also Defendant's Motion to Dismiss, People of Bikini, pp. 7-10; United States' Motion to Dismiss, Ismael John, pp. 8-9. The law of the case doctrine simply does not apply in this situation. Harbor Ins. Co., supra. Even if the Court viewed any of the current claims as severed from the prior actions, the law of the case doctrine still would not apply. See 49.01 Acres of Land, supra. Nevertheless, other rules of repose, such as res judicata and collateral estoppel, appropriately apply, as we explain in our papers. See Defendant's Motion to Dismiss, People of Bikini, pp. 16-21; see also United States' Motion to Dismiss, Ismael John, pp. 18-20, 26-28.

**B. The Fifth Amendment's Just Compensation Clause Does Not Apply To Plaintiffs Or Their Property**

One of the grounds upon which the United States initially moved to dismiss the complaints of the plaintiffs in Juda, as well as in Peter, was that Congress has not extended the Fifth Amendment's Just Compensation Clause to property located in the Marshall Islands that was owned by citizens of the United Nations Trust Territory. See Juda I, 6 Cl. Ct. at 455. In Juda I, the Court denied the Government's motion to dismiss, concluding that Marshall Islanders, non-resident aliens with respect to the United States, possessed rights under the Bill of Rights to the United States Constitution. Id. at 458. In Peter I, the Court granted the Government's motion to dismiss in part, and denied it in part. 6 Cl. Ct. 768, 781 (1984) (dismissing the plaintiffs' takings claims as time barred, but allowing the claims based upon an implied-in-fact contract).

---

value of its land because, from inception, the Government project at issue encompassed its land. id. at 390-91.

Obviously, these interlocutory rulings in Juda I and Peter I did not fully dispose of the cases and were not final judgments. See RCFC 54(a) (defining "judgment" as "a decree and any order from which an appeal lies").

The Claims Court's subsequent dismissal of the complaints was based upon our amended motions to dismiss as a result of the withdrawal of jurisdiction and the espousal and settlement of claims as provided in the Compact Agreements, in particular the Section 177 Agreement. See generally Juda II, 13 Cl. Ct. 667 (1987). The Court of Appeals for the Federal Circuit affirmed the dismissals.[6] People of Enewetak, supra. The court of appeals also adopted the Claims Court's ruling in Juda II, "relating to the issues discussed above," id. at 137, but noted that, "[b]ecause we affirm the decision of the Claims Court to dismiss appellants' complaints for lack of subject matter jurisdiction, we need not address other issues." Id. at 136 n.4. Although, as noted in the Court's June 6, 2007 Order, we reargued in our appellate brief that the Fifth Amendment does not apply to the people of the Marshall Islands, the court of appeals did not specifically address that issue.

As discussed above, the Bikini and John cases currently pending before the Court are not the same cases that were before the Claims Court in Juda or in Peter. Therefore, the law of the case doctrine does not apply. The Claims Court's decision extending Fifth Amendment protections to the Marshall Islanders in Juda I was erroneous as a matter of law. In response to the Court's question, we address below the scope of review and the case law demonstrating why the Claims Court's ruling that the Bill of Rights extends to the Marshall Islands is in error.

---

[6] The plaintiffs in Juda dismissed their appeal, with prejudice, following the additional appropriation and expressly waived their claims. See People of Enewetak, 864 F.2d at 135 n.1.

In Juda I, the Claims Court properly distinguished cases cited by the plaintiffs in opposition to our motion to dismiss, in which the Claims Court had considered but not decided whether the takings clause could be applied to property located outside of the United States. See id. (citing Porter v. United States, 496 F.2d 583, 204 Ct. Cl. 355 (1974), and noting that because, on the facts, no taking was shown, "the court did not have to reach the constitutional issue;" Fleming v. United States, 352 F.2d 533, 173 Ct. Cl. 426 (1965), noting plaintiffs failed to establish title to the disputed property; and Seery v. United States, 127 F. Supp. 601, 130 Ct. Cl. 481 (1955), property allegedly taken was owned by a United States citizen). The Court also distinguished Turney v. United States, 115 F. Supp. 457, 126 Ct. Cl. 202 (1953), in which the Court found a taking had occurred after the government of the Phillippines placed an embargo on the removal of property from that country resulting from the "irresistible pressure" of the United States, after discovering that certain United States military radar equipment inadvertently had been provided to the Phillippines government and then sold to plaintiffs. 115 F.Supp. at 463-64, 126 Ct. Cl. at 214-15. As the Court stated in Juda I, "[t]he decision in Turney, on the facts, does not control the issue of this court's jurisdiction over a taking in the Trust Territory." 6 Ct. Cl. at 456.

The Claims Court similarly correctly determined that the so-called "insular cases" were not applicable because they arose from the United States' acquisition of territories, such as Puerto Rico, by treaty and "regulated by Congress under Article IV, section 3" of the Constitution. Id. at 456-57 (discussing Torres v. Commonwealth of Puerto Rico, 442 U.S. 465 (1979); Balzac v. People of Porto Rico, 258 U.S. 298 (1922); Dorr v. United States, 195 U.S. 138 (1904)); see also United States v. Verdugo-Urquidez, 494 U.S. 259, 268 (1990) (describing the

Court's decisions in the insular cases as holding "that not every constitutional provision applies to governmental activity even where the United States has sovereign power"); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (explaining that "certain constitutional protections available to persons inside the United States are unavailable to aliens outside our geographic borders...."). As the Claims Court recognized, in contrast to the treaty territories in those cases, the "United States authority in the Trust Territory implements a Trusteeship Agreement with the United Nations, and the United States administration of the Trust Territory is based upon the President's treaty power conferred in Article II, section 2, clause 2 of the Constitution." Id. at 456. The Claims Court recognized the "unique relationship" between the Trust Territory government and the United States, and that the United States did not exercise sovereignty over the territory or its people.[7] Id. at 457.

---

[7] As we explained before the Court of Appeals for the Federal Circuit in People of Enewetak, the unique relationship between the United States and the Trust Territory is defined by the Trusteeship Agreement between the United States and the United Nations. Consolidated Brief of Appellee the United States, People of Enewetak v. United States, Nos. 88-1206, 88-1207, 88-1208 (Fed. Cir. June 14, 1988) at 57-58. Pursuant to the Trusteeship Agreement, the United States, as administering authority, had "full powers of administration, legislation, and jurisdiction over the territory subject to the provisions of this agreement." Trusteeship Agreement for the Former Japanese Mandated Islands, art. 3, see 61 Stat. 3301. The Agreement further provided that the United States may apply to the Trust Territory, "subject to any modifications which the administering authority may consider desirable, such of the laws of the United States as it may deem appropriate to local conditions and requirements." Id. The discretionary authority provided in article 3 was limited by article 7, which provided "the administering authority shall guarantee to the inhabitants of the trust territory freedom of conscience, and, subject only to the requirements of public order and security, freedom of speech, of the press, and of assembly; freedom of worship, and of religious teaching; and freedom of migration and movement." Id., art. 7. These guaranteed freedoms did not make applicable the Fifth Amendment's Just Compensation Clause or any similar provision requiring compensation for the taking of property.

While concluding that our arguments regarding plaintiffs' standing - that the Marshall Islanders cannot invoke the Just Compensation Clause of the Fifth Amendment - "are substantial," the Claims Court answered in the affirmative the question "whether the protections of the Bill of Rights are conveyed to the Marshall Islanders by the force of the Constitution and our system of government." Id. at 457-58. And, in a sweeping conclusion, the Court determined that "[a]ll of the restraints of the Bill of Rights are applicable to the United States wherever it has acted." Id. at 458. Not only was that determination overly broad and unsupported by any legal authority, it was contrary to the case law as it existed at the time of the decision, as well as subsequent case law that applies here to these newly-filed cases.

In a case decided after the appeal in People of Enewetak, the Supreme Court specifically rejected the notion "that every constitutional provision applies wherever the United States Government exercises its power." United States v. Verdugo-Urquidez, 494 U.S. at 268-69. In Verdugo-Urquidez, the Supreme Court held that the Fourth Amendment does not apply to a search and seizure by United States agents of property owned by a non-resident alien located in a foreign country. Id. at 261. At the time of the search, Mr. Verdugo-Urquidez was a citizen and resident of Mexico, with no voluntary attachment to the United States. Id. at 274; see also id. at 271 (respondent had no previous significant voluntary connection with the United States). The Court concluded that "the text of the Fourth Amendment, its history, and our cases discussing the application of the Constitution to aliens and extraterritorially require rejection of respondent's claim." Id. at 274.

The Supreme Court in Verdugo-Urquidez cited its earlier decision in Johnson v. Eisentrager, 339 U.S. 763 (1950), as having emphatically rejected "the claim that aliens are

entitled to Fifth Amendment rights outside the sovereign territory of the United States." Verdugo-Urquidez, 494 U.S. at 269. In Eisentrager, the Court found that German nationals in custody of the United States Army and held overseas, who had been convicted by a military commission of engaging in activities against the United States during war-time, had no right to writ of habeas corpus pursuant to the Fifth Amendment. 399 U.S. at 765-67, 785. "[I]n extending constitutional protections beyond the citizenry, the Court has been at pains to point out that it was the alien's presence within its territorial jurisdiction that gave the Judiciary power to act." Id. at 771. The Supreme Court refused to extend such protections to nonresident aliens, especially when acting within service of the enemy. Id. at 776.

In El-Shifa Pharm. Indus. Co. v. United States, 378 F.3d 1346 (Fed. Cir. 2004), the Court of Appeals for the Federal Circuit

> decline[d] to hold, as the government asks, that the Takings Clause does not protect the interests of nonresident aliens whose property is located in a foreign country unless they can demonstrate substantial voluntary connections to the United States.

Id. at 1352. In that case, a Sudanese corporation brought a takings action against the United States after a United States missile destroyed a pharmaceutical plant in a retaliatory attack on terrorist-related facilities. Id. at 1349. The appellate court determined that the takings claim presented a nonjusticiable political question and, therefore, affirmed this Court's dismissal of the complaint. Id. at 1352.[8] Further, the Federal Circuit declined to decide whether the Supreme Court in Verdugo-Urquidez extended the "substantial connections" test to the Takings Clause.

---

[8] As we demonstrate in our motions to dismiss, plaintiffs' claims here also are barred by the political question doctrine. See People of Bikini, Defendant's Motion to Dismiss at 21-25; see also Ismael John, United States' Motion to Dismiss at 20-25.

El-Shifa, 378 F.3d at 1352; see also Langenegger v. United States, 756 F.2d 1565, 1566-67, 1571 (Fed. Cir. 1985) (finding justiciable takings claim upon the "narrow issue" of whether there was "sufficient direct and substantial involvement of United States" in expropriation of United States citizen's property in El Salvador by El Salvadorian government, but dismissing on other grounds). In an unpublished non-precedential decision, the Federal Circuit held, among other things, that non-resident aliens who failed to establish substantial connections to the United States could not maintain a takings claim with respect to the Army's war-time seizure outside of the United States of art objects. Hoffman v. United States, 17 Fed. Appx. 980, 2001 WL 931588 *7 (Fed. Cir. 2001) (citing Verdugo-Urquidez); accord Atamirzayeva v. United States, No. 05-1245L (Fed. Cl. June 20, 2007); Ashkir v. United States, 46 Fed. Cl. 438 (2000).

Therefore, judicial precedent supports our position that the Fifth Amendment's Just Compensation Clause does not apply to the people and property of the Marshall Islands. Plaintiffs do not have standing because they cannot establish sufficient "substantial connection" to the United States to invoke this Clause. However, the Court does not need to reach this issue. As demonstrated in our motions to dismiss these cases, the Court does not possess jurisdiction to entertain plaintiffs' claims. Congress withdrew jurisdiction of the courts to hear claims arising from the nuclear testing program; in addition, plaintiffs' claims are barred by the statute of limitations, the political question doctrine, the doctrines of res judicata and collateral estoppel; and plaintiffs' claims were fully settled and released pursuant to the Section 177 Agreement and also, with respect to the Bikini plaintiffs, the $90 million additional appropriations. Many of the issues involved in considering the applicability of the Fifth Amendment's Just Compensation Clause here are subsumed in arguments raised in our pending motions to dismiss.

## III. CONCLUSION

For the reasons stated above, the law of the case doctrine does not apply in these cases. Additionally, the Court need not reach the question of whether the Fifth Amendment's Just Compensation Clause applies to these cases because, as we demonstrate in our earlier papers and are oral argument, the Court should dismiss plaintiffs' amended complaints for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. Should the Court determine that it is appropriate to reach the issue, plaintiffs have no rights under the Just Compensation Clause because they are non-resident aliens and the property right that is alleged to have been taken is not located in the United States.

Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
Environment & Natural Resources Division

PETER D. KEISLER
Assistant Attorney General
Civil Division

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Bruce K. Trauben
BRUCE K. TRAUBEN
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Tel.: (202) 305-0238
Fax: (202) 305-0267
E-mail: bruce.trauben@usdoj.gov

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director
United States Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 307-6288
Fax: (202) 514-8640
E-mail: kathryn.bleecker@usdoj.gov

Attorneys for Defendant

June 25, 2007