IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **THE PEOPLE OF BIKINI, *et al.*** <br> Plaintiffs, <br> v. <br> **THE UNITED STATES,** <br> Defendant. | No. 06-288C <br> (Judge Miller) |
| **ISMAEL JOHN, *et al*.** <br> Plaintiffs, <br> v. <br> **THE UNITED STATES,** <br> Defendant. | No. 06-289L <br> (Judge Miller) |

**PLAINTIFFS' JOINT RESPONSE TO THE COURT'S JUNE 6, 2007 ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

PROCEDURAL HISTORY OF THIS ISSUE ........ 3

ARGUMENT ........ 4

I. JUDGE HARKINS'S RULING WAS CORRECT: THE TAKINGS CLAUSE APPLIES. ........ 4

II. THE COURT SHOULD NOT REVISIT JUDGE HARKINS'S RULING. ........ 9

CONCLUSION ........ 11

## INTRODUCTION

In its order dated June 6, 2007, the Court directed the parties to "a potentially dispositive issue that the parties have not yet addressed." Specifically, the Court ordered briefing of the following issues:

1. Their understanding and characterization of the doctrine of the law of the case as it applies to Judge Harkins's holdings in *Juda v. United States,* 6 Cl. Ct. 441 (1984) (*"Juda I"*). *See, e.g., Arizona v. California*, 460 U.S. 605, 618 (1983) (finding that law of case is applied at court's discretion and "does not limit the tribunal's power"); *Chiu v. United States*, 948 F.2d 711, 718 (Fed. Cir. 1991) (finding no legal error when predecessor judge reexamined an issue on remand considered by original trial judge not considered by appellate court).

2. Case law and other guidance on the scope of judicial review of Judge Harkins's determination that the Marshall Islanders were granted the protections of the Bill of Rights in *Juda I* at 456-68. In *Juda I* the court held that the "protections of the Bill of Rights are conveyed to the Marshall Islanders by the force of the Constitution and our system of government." *Id.* at 458. Supplemental briefing revealed that defendant reargued the issue in front of the United States Court of Appeals for the Federal Circuit. In the Consolidated Brief of Appellee the United States, *People of Enewetak v. United States,* Nos. 888-1206, 888-1207, 888-1208, (Fed. Cir. June 24, 1988), defendant moved to dismiss appellants' takings claims on the ground that the Fifth Amendment's just compensation clause does not extend to citizens of the United Nations Trust Territory for the Marshall Islands. The Federal Circuit did not reach this issue in *People of Enewetak v. United States*, 864 F.2d 134 (Fed. Cir. 1988). Reconsideration of Judge Harkins's decision may be appropriate insofar as he held that the Marshall Islanders were granted the protections of the Bill of Rights in *Juda I* at 456-58.

As plaintiffs show in this memorandum, Judge Harkins was correct in ruling that plaintiffs could invoke the Takings Clause as wards of the United States who were subject to its power of eminent domain. *Juda I,* 6 Cl. Ct. at 458; *Turney v. United States*, 115 F. Supp. 457 (Ct. Cl. 1953); *Porter v. United States*, 496 F.2d 583 (Cl. Ct. 1974); *Langenegger v. United* States, 756 F.2d 1565 (Fed. Cir. 1985); *Antolok v. United States*, 873 F.2d 369, 378 (D.C. Cir. 1989) (plaintiffs' remedy for an "uncompensated or inadequately compensated taking is in the Claims Court"). Moreover, there has been no change in the applicable law or facts that would justify revisiting that issue in this continued litigation. *El-Shifa Pharmaceutical Industries Co. v. United States*, 378 F.3d 1346, 1352 (Fed. Cir. 2004) (declining "to hold, as the government asks, that the Takings Clause does not protect the interests of nonresident aliens whose property is located in a foreign country unless they can demonstrate substantial voluntary connections to the United States"). *See generally Banks v. United States*, __Fed. Cl. __ 2007 WL 1300768, *3 (Fed. Cl. May 3, 2007) (discussing law of the case doctrine).

Before addressing these issues more fully, plaintiffs note that defendant – having argued unsuccessfully before Judge Harkins and the Federal Circuit that the plaintiffs could not invoke the Takings Clause – has not renewed that argument in its motions to dismiss. The issue has therefore been waived for purposes of RCFC Rule 12(b)(6) and should be considered later only if raised by defendant in its answer and in a motion for summary judgment or at trial.[1]

---

[1] To be sure, the Court is obliged to address defects in subject matter jurisdiction *sua sponte*, but the viability of plaintiffs' takings claims is not a jurisdictional issue. The complaints allege claims for money damages based on contracts and the Takings Clause, both of which fall within the Court's subject matter jurisdiction. Judge Harkins treated the issue as a Rule 12(b)(6) question, not as a question of subject matter jurisdiction. *Juda I*, 6 Cl. Ct. at 455 (discussing the issue under the heading "Failure to State a Claim."). *See also Juda v. United States,* 13 Cl. Ct. 667, 677 (1987) ("*Juda II*") (plaintiffs' takings claims "stated claims within the subject matter jurisdiction of this court."). Judge Allegra noted the government's characterization of the applicability of the Takings Clause to the Somali-located property of a Somali national as a

**PROCEDURAL HISTORY OF THIS ISSUE**

Judge Harkins rejected the government's motion to dismiss in *Juda I*,, 6 Cl. Ct. at 457-58. *See also Nitol v. United States*, 7 Cl. Ct. 405, 416 (1985), in which Judge Harkins confirmed that the *Juda I* opinion "concluded that the just compensation clause of the Fifth Amendment would extend to include a taking that resulted from the United States nuclear testing program in the Marshall Islands"; and *Juda II*, 13 Cl. Ct. at 691, stating that "the facts alleged, if accepted as true, are sufficient to state a claim for a taking compensable under the Fifth Amendment within the Tucker Act jurisdiction of the court."

As an alternative ground for affirming Judge Harkins's subsequent dismissal order based on the Compact, the government devoted pages 55-61 of its Federal Circuit brief to arguing that the Takings Clause did not apply in the Trust Territory. The Federal Circuit did not directly

---

matter of "standing" under RCFC 12(b)(2) in *Ashkir v. United States*, 46 Fed. Cl. 438, 439 n.2 (Fed. Cl. 2000), but "believe[d] that the better view is that the issues presented arise under RCFC 12(b)(4)," which applied to failure to state a claim. *Id.*

The Federal Circuit recently discussed the difference between whether a claim is within the court's jurisdiction (*i.e.*, whether the complaint identifies a "money-mandating" source of rights such as a contract or the Takings Clause) and whether it alleges facts sufficient to prevail on the merits (the Rule 12(b)(6) issue). *Greenlee County v. United States*, 2007 WL 1391389, * 2-3 (Fed. Cir. May, 14, 2007). *See also Fisher v. United States*, 402 F.3d 1167, 1175-76 (Fed. Cir. 2005) (en banc). "It is firmly established in [the Supreme Court's cases] that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). The Court continued: "Dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id., quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974). It cannot be argued that the plaintiffs' claims in this case are "completely devoid of merit" in light of Judge Harkins's ruling and the Federal Circuit's determination not to address defendant's arguments on appeal. Indeed, it is hard to imagine that the Federal Circuit would have gone to such lengths to leave open future recourse to this Court if it had been persuaded by the government's arguments about the applicability of the Takings Clause. *See People of Enewetak*, 864 F.2d 134, 136 (Fed. Cir. 1988).

address that argument in its opinion, but rejected it by implication. *People of Enewetak v. United States*, 864 F.2d 134, 136-37 (Fed. Cir. 1988). The government did not rely on that argument in its brief in opposition to the petition for a writ of certiorari.

## ARGUMENT

### I. Judge Harkins's Ruling Was Correct: the Takings Clause Applies

The Takings Clause of the Fifth Amendment requires the payment of just compensation whenever and wherever the United States exercises its power to take private property for a public use. The clause is a limitation on the federal government's power to appropriate private property. As such, the constitutional duty to provide just compensation is necessarily co-extensive with the governmental power it restricts.

The Takings Clause applies to property taken by the United States that is located outside U.S. borders. *Langenegger v. United States*, 756 F.2d 1565, 1570 (Fed. Cir. 1985) (El Salvador); *Medina Construction, Ltd. v. United States*, 43 Fed. Cl. 537, 559 n.17 (1999) (U.S. military base in the Azores, Portugal); *Turney v. United States*, 126 Cl. Ct. 202 (Ct. Cl. 1953) (Philippines); *Wiggins v. United States*, 3 Ct. Cl. 412 (1867) (Costa Rica). These cases demonstrate that it is the nature of the governmental power being exercised, not the place, that determines whether the Takings Clause requires just compensation. For example, no one would dispute that if the federal government had appropriated an American-owned ship or building located in Bikini or Enewetak that it would owe just compensation to the owner.[2] There is no serious question as to whether the Fifth Amendment applies to takings in the Marshall Islands. *Cf. Thompson v.*

---

[2] The United States conceded in its *El-Shifa* brief that, "[t]he Takings Clause applies to foreign-owned property located within the United States and to property abroad owned by U.S. citizens." Brief of Appellee, *El-Shifa Pharmaceutical Co. v. United States*, No. 03-5098, at 37, 2003 WL 24305565 (Fed. Cir.) (citations omitted).

*Kleppe*, 424 F.Supp. 1263, 1268 (D. Hawaii 1976) (allowing U.S. citizens to bring constitutional claim for actions at the Kwajalein Missile Range in the Trust Territory).

There is also no serious question about whether the *people* of the Marshall Islands may seek just compensation from the United States, despite the absence of United States citizenship. The Supreme Court squarely decided that the Takings Clause was not limited to United States citizens in *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931) (resident aliens). If citizens of another nation are entitled to just compensation, then surely wards of the United States are as well. In short, neither the plaintiffs' nationality nor the location of the property taken by the United States is an impediment to recovery of just compensation in this Court.[3]

In *Ashkir v. United States*, 46 Fed. Cl. 438 (Fed. Cl. 2000), Judge Allegra acknowledged but resisted the temptation "to conflate the lines of authority . . . and thereby conclude that standing ought to be conferred on nonresident aliens alleging the taking of foreign property," but concluded that there must be "some substantial connection between the United States and either the claimant or the property involved in a taking claim." *Id.* at 440. Judge Allegra derived the "substantial connections" requirement from language in *United States v. Verdugo-Urdiquez*, 494

[3] It should be noted that courts have applied the Takings Clause to takings of property owned by non-US citizens outside the United States. *See, e.g., Turney v. United States*, 126 Ct.Cl. 202, 115 F.Supp. 457, 464-65 (Ct. Cl. 1953) (applying the Takings Clause to the seizure by the United States of radar equipment located in the Philippines, owned at the time by a Philippine corporation); *Medina Construction, Ltd. v. United States*, 43 Fed. Cl. 537, 559 n. 17 (1999) (explaining, in a case involving a Canadian corporation alleging that its property had been taken by actions of the U.S. government related to a U.S. "joint use" air base in the Azores, Portugal, that "[t]he just compensation clause has been enforced outside the United States in situations in which the United States takes property," but ruling, on the facts of this case, that the claim was not yet ripe because the corporation had not exhausted its administrative remedies); *Anderson v. United States*, 7 Cl. Ct. 341 (1985) (recognizing that the United States may be liable for taking property in a foreign country when it has the requisite control); *Gasser v. United States*, 14 Cl. Ct. 476 (1988) (ruling that Mexican citizen in Baja California, Mexico, was entitled to recover compensation under the Taking Clause for actions by the U.S. government that resulted in taking of subterranean flowage easement in his Mexican lands), *judgment vacated after approval of stipulated settlement*, 22 Cl. Ct. 165 (1990).

U.S. 259, 271 (1990), a case involving constitutional tort claims by a Mexican citizen regarding acts occurring in Mexico. While plaintiffs think the court's analysis in *Ashkir* was flawed, nothing in *Ashkir* (or *Verdugo-Urdiquez*) calls into question Judge Harkins's ruling in *Juda I*. *See* 46 Fed. Cl. at 444 and n. 12 (discussing and distinguishing *Juda*).

The United States clearly had "substantial connections" to the Trust Territory of the Pacific Islands, which it administered pursuant to statute and treaty, and to the residents of the Trust Territory, who were wards of the United States. *Ralpho v. Bell*, 569 F.2d 607, 619 (D.C. Cir. 1977) (holding the Due Process Clause applicable to the Trust Territory); *Al Odah v. United States*, 321 F.3d 1134, 1144 (D.C. Cir. 2003) (describing *Ralpho* as treating "Micronesia as if it were a territory of the United States" and its residents "as much American subjects as those in the American territories"). Similarly, the Court of Claims assumed that the Takings Clause applied to Saipan as part of the Trust Territory in *Fleming v. United States*, 352 F.2d 533 (Ct. Cl. 1965). And in *Castro v. United States*, 500 F.2d 436 (Ct. Cl. 1974), the Court awarded just compensation for the United States' use and occupancy from 1944 to 1968 of land in Saipan owned by Trust Territory citizens. Although in plaintiffs' view the Takings Clause applies to U.S. takings regardless of the location of the property or the nationality of the owner, there is no need for this Court in this case to define the outer limits of the Takings Clause because this case fits comfortably within the "substantial connections" test applied in *Ashkir*.

The complaints filed in these cases, which must be taken as true for purposes of a motion to dismiss, amplify the factual basis for substantial connections to the United States. In paragraphs 52-54 of the Amended Complaint in the *John* case, No. 06-289L, plaintiffs explain that President Truman stated in his November 25, 1947 directive ordering the removal of the Enewetak people that they "will be accorded all rights which are the normal constitutional rights

of citizens under the Constitution." *John* Amended Complaint, ¶ 53; Exhibit C. On December 5, 1947, this commitment was reconfirmed by Admiral Ramsey, who summarized the obligations of the United States by stating that "the inhabitants of the [Enewetak] atoll would be accorded the normal constitutional rights accruing to U.S. citizens under the constitution." *John* Amended Complaint, ¶ 54; Exhibit D.

The Amended Complaint in the *People of Bikini*, No. 06-288C, explains further that the United States stated in 1947 that it was "the policy of the United States that . . . [Trust Territory] owners of private property required for public use shall be properly compensated for the loss of property taken," *People of Bikini* Amended Complaint, ¶ 41, and that the United States told the U.N. Security Council that:

> My Government feels that it has a duty towards the people of the trust territory to govern them with no less consideration than it would govern any part of its sovereign territory. It feels that the laws, customs and institutions of the United States form a basis for the administration of the trust territory compatible with the spirit of the Charter. For administrative, legislative and jurisdictional convenience in carrying out its duty towards the peoples of the trust territory, *the United States intends to treat the trust territory as if it were an integral part of the United States*.

*People of Bikini* Amended Complaint, ¶ 42, *quoting from* U.N. Security Council Off. Rec., 116th Meeting, March 7, 1947, at 473, *as reprinted* in 1 Whiteman, *Digest of International Law* 778 (1963) (emphasis added).

This Court can safely disregard the so-called "Insular cases," which concerned the application of various procedural rights in criminal cases in U.S. territories, as these cases cannot be reconciled with more recent decisions that make it clear that the Constitution does not stop at the water's edge. *See Ashkir*, 46 Fed. Cl. at 440-441 (noting that "[t]his view of the Constitution was largely repudiated by *Reid v. Covert*, 354 U.S. 1, 6 (1957)") (internal citation abridged). *See also Torres v. Commonwealth of Puerto Rico*, 442 U.S. 465, 475-76 (1979) (Brennan, J.,

concurring, joined by Stewart, Blackmun and Marshall, JJ.). At the time the Insular cases were decided, the Supreme Court had not yet decided that most of the procedural protections of the Bill of Rights applied to state criminal prosecutions under the Fourteenth Amendment, and it is not surprising that the Court was reluctant to extend to non-citizens in the territories the constitutional protections in local criminal cases that were not then extended to citizens in state prosecutions in the United States. The cases before this Court concern only the Takings Clause and thus present no occasion to consider the applicability of procedural safeguards in nonexistent criminal prosecutions by the United States in the Marshall Islands, in any event.

Some of the confusion about the applicability of the Takings Clause also undoubtedly results from efforts to recast injuries inflicted by the United States in the course of military action against hostile groups as takings. Both *El-Shifa*, which involved the bombing of a pharmaceutical plant in Sudan because of Al-Queda links, and *Ashkir*, which involved the U.S. military occupation of Somali property during military operations in Mogadishu under UN auspices, are illustrative. *See Ashkir*, 46 Fed. Cl. 445 n.13 (reserving whether a taking was alleged); *El-Shifa*, 378 F.3d at 1355-61 (discussing applicability of Takings Clause to enemy property). Takings – even for military purposes – are, by definition, a lawful exercise of sovereign power, not acts of war. But the people of Bikini and Enewetak were wards of the United States, not enemies, and their property was under U.S. control. Moreover, their property was taken for the important public purpose of developing the arsenal that contributed to the United States' eventual victory in the Cold War. Their claims for just compensation are thus no different in principle from the claims of the factory owners whose property was taken by the government during World War II. *E.g., Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949); *accord Argent v. United States*, 124 F.3d 1277 (Fed. Cir. 1997) (military overflights).

## II. The Court Should Not Revisit Judge Harkins's Ruling

As this Court stated at the April 23 oral arguments on the motions to dismiss, these cases are continuations of the claims that were suspended while the plaintiffs exhausted the remedies available to them under the Compact Section 177 Agreement. The doctrine of the law of the case is designed to bring order and finality to litigation and is related to the doctrines of res judicata or claim preclusion and of collateral estoppel or issue preclusion. Each of these doctrines requires courts to adhere to decisions made in earlier, related litigation between the parties. The rationale of the law of the case doctrine applies here with just as much force as if the cases had the same captions as *Peter* and *Juda* from the 1980s. Otherwise, the plaintiffs would be penalized by the suspension of their claims while they exhausted remedies before the Nuclear Claims Tribunal.

The Federal Circuit's disposition of the *People of Enewetak* appeal is incompatible with the notion that the plaintiffs could not possibly have a valid takings claim. The status of this issue under the doctrine of the law of the case is thus dramatically different from the status of Judge Harkins's ruling that the *John* plaintiffs' takings claim was barred by the statute of limitations which, as the *John* plaintiffs explained at pages 39-41 of their Opening Memorandum in Opposition, was explicitly not addressed by the Federal Circuit on appeal and hence cannot be binding under the doctrines of collateral estoppel/issue-preclusion or the law of the case. With regard to issues that were fully litigated and addressed on appeal, it would be totally unfair to the Marshallese plaintiffs, and contrary to the purposes of the law-of-the-case doctrine, to require them to re-litigate issues on which they had previously prevailed.

This court has explained recently that:

> The doctrine of law of the case, like stare decisis, deals with the circumstances that permit reconsideration of issues of law. The difference is that while stare decisis is concerned with the effect of a final judgment as establishing a legal

principle that is binding as a precedent in other pending and future cases, the law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages.

*Banks v. United States*, __Fed. Cl. __ 2007 WL 1300768, *3 (Fed. Cl. May 3, 2007). This opinion explains that lower courts are bound by decisions made by appellate courts, are "bound by the decree as the law of the case; and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it . . . ." *Id., quoting from In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895). The only exceptions to this rule are "when there is '[1] discovery of new and different material evidence that was not presented in the prior action, or [2] an intervening change of controlling legal authority, or [3] when the prior decision is clearly incorrect and its preservation would work a manifest injustice.' *Id., quoting from Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001).

None of these justifications for departing from the doctrine of the law of the case is applicable to the rulings of Judge Harkins and the Federal Circuit on appeal that the Marshallese plaintiffs can bring claims for takings of their property that occurred during the trusteeship period. No new evidence has been presented, and such evidence would not be relevant in any event with regard to a motion to dismiss. No new legal authority has emerged, and, in fact, subsequent decisions, as explained above in Section I, recognize the prior rulings related to the Marshall Islanders and do not in any way suggest that they were incorrect.[4] The Federal

---

[4] This Court is not bound by the law of the case with regard to Judge Harkins's ruling concerning the application of the statute of limitations to the people of Enewetak. The controlling legal authority has changed since Judge Harkins ruled, *see Applegate v. United States*, 25 F.3d 1579 (Fed. Cir. 1994); *Banks v. United States*, 314 F.3d 1304 (Fed. Cir. 2003);

Circuit's refusal to overrule *Turney* in *El-Shifa*, 378 F.3d at 1352, disposes of any argument that changes in the law justify reconsideration of Judge Harkins's decision. Following the previous ruling of Judge Harkins and the Federal Circuit on this issue would certainly not work a "manifest injustice," and the United States has never argued that Marshall Islanders cannot invoke the Takings Clause with regard to property losses they have suffered.

**CONCLUSION**

Judge Harkins's ruling that the plaintiffs could bring claims under the Takings Clause for destruction of property was adopted by the Federal Circuit and is consistent with decisions made before and afterwards. Under the doctrine of the law of the case, it thus remains binding and applicable to the present proceeding.

Respectfully submitted,

/s/ Jonathan M. Weisgall
Jonathan M. Weisgall

Jonathan M. Weisgall, Chartered
1200 New Hampshire Avenue, N.W., Suite 300
Washington, D.C. 20036-6812
Telephone: (202) 828-1378
Facsimile: (202) 828-1380
E-mail: jmweisgall@midamerican.com

Attorney for People of Bikini Atoll

---

*see also* Section 177(a) of the Compact ("Under Section 177 of the Compact, the United States Government accepted responsibility for the just compensation owing for loss or damage resulting from its nuclear testing program." *People of Enewetak v. United States*, 864 F.2d at 135).

In light of *Applegate* and *Banks*, as well as defendant's acknowledgment in Section 177(a) of the Compact of its responsibility to compensate the people of the Marshall Islands for harms resulting from nuclear weapons testing, it would also be manifestly unjust to deny the people of Enewetak relief on their takings claims. Moreover, in contrast to the Federal Circuit's endorsement of Judge Harkins's ruling that the Takings Clause applies, the Federal Circuit did not endorse or address Judge Harkins's statute of limitations ruling.

Of Counsel:

Robert K. Huffman
Akin, Gump, Strauss, Hauer & Feld, LLP
1333 New Hampshire Ave., N.W.
Washington, DC 20036
Telephone: (202) 887-4530
Facsimile: (202) 887-4288
E-mail: RHuffman@akingump.com

Elizabeth Langer
Law Offices of Elizabeth Langer
3712 Ingomar Street, N.W.
Washington, D.C. 20015
Telephone: (202) 244-0456
Facsimile: (202) 244-0456
E-mail: el@elizabethlanger.com

/s/ Davor Pevec
Davor Pevec
Law Offices of Davor Pevec
Bishop Street Tower
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Telephone: (808) 599-5655
Facsimile: (310) 402-5983
E-mail: dzpevec@aol.com
Attorney for plaintiffs in *Ismael John*

Of Counsel:

Jon Van Dyke
2515 Dole Street
Honolulu, Hawaii 96822
Telephone: (808) 956-5569
Facsimile: (808) 956-8509
E-mail: jvandyke@hawaii.edu

June 25, 2007